1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Claude M. Stern (Bar No. 96737)
2    claudestern@quinnemanuel.com
   Margret M. Caruso (Bar. No. 243473)
3    mmc@quinnemanuel.com
   Mark Tung (Bar No. 245782)
4    marktung@quinnemanuel.com
   Michael F. LaFond (Bar No. 303131)
5    michaellafond@quinnemanuel.com
   555 Twin Dolphin Dr., 5th Fl.
6  Redwood Shores, California  94065
   Telephone:     (650) 801-5000
7  Facsimile:     (650) 801-5100

8  Attorneys for NetEase, Inc., NetEase Information
   Technology Corporation, and Hong Kong
9  NetEase Interactive Entertainment, Ltd.

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12               OAKLAND DIVISION

13

14 | PUBG Corporation and PUBG Santa Monica, Inc. | Case No. 4:18-cv-02010-JSW |
| | |
| Plaintiffs, | **DEFENDANTS NETEASE, INC., NETEASE INFORMATION TECHNOLOGY CORPORATION, AND HONG KONG NETEASE INTERACTIVE ENTERTAINMENT, LTD.'S JOINT NOTICE OF MOTION AND MOTION TO DISMISS** |
| v. | |
| NetEase, Inc., NetEase Information Technology Corporation, and Hong Kong NetEase Interactive Entertainment, Ltd. | |
| Defendants. | |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 31, 2018 at 9:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Jeffrey S. White, in Courtroom 5 located at 1301 Clay Street, Oakland, California 94612, Defendants NetEase Inc., NetEase Information Technology Corporation, and Hong Kong NetEase Interactive Entertainment Ltd. (collectively "NetEase") will, and hereby do, move the Court to dismiss (i) Claim One of the Second Amended Complaint, which purports to allege a violation of the Copyright Act, 17 U.S.C. § 101, *et seq.*, (ii) Claim Two of the Second Amended Complaint, which purports to allege a violation of the Lanham Act, 15 U.S.C. § 1125(a), (iii) Claim Three of the Second Amended Complaint, which purports to allege a violation of California Business and Professions Code § 17200, and (iv) Claim Four of the Second Amended Complaint which purports to allege common law unfair competition, each of which were brought against NetEase, with respect to NetEase's popular video games *Rules of Survival* and *Knives Out*.  This motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6).

This motion is based on this notice of motion and supporting memorandum of points and authorities, the declaration filed in support of this motion and exhibits thereto, the request for judicial notice filed with this motion, the records and papers on file in this action, the devices and media filed with the Court, and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

1    DATED: July 18, 2018                   QUINN EMANUEL URQUHART & SULLIVAN,
                                            LLP
2

3

4                                    By  /s/ Claude M. Stern
                                         Claude M. Stern (Bar No. 96737)
5                                        claudestern@quinnemanuel.com
                                         Margret M. Caruso (Bar. No. 243473)
6                                        mmc@quinnemanuel.com
                                         Mark Tung (Bar No. 245782)
7                                        marktung@quinnemanuel.com
                                         Michael F. LaFond (Bar No. 303131)
8                                        michaellafond@quinnemanuel.com
                                         QUINN EMANUEL URQUHART &
9                                        SULLIVAN, LLP
                                         555 Twin Dolphin Dr., 5th Fl.
10                                       Redwood Shores, California  94065
                                         Telephone:     (650) 801-5000
11                                       Facsimile:     (650) 801-5100

12                                       *Attorneys for NetEase, Inc., NetEase Information
                                         Technology Corporation, and Hong Kong
13                                       NetEase Interactive Entertainment Limited*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      ISSUES TO BE DECIDED ..................................................................................V

II.     SUMMARY OF ARGUMENT ........................................................................... VI

III.    INTRODUCTION ................................................................................................1

IV.     FACTUAL BACKGROUND ...............................................................................1

V.      ARGUMENT .......................................................................................................2

      A.    Claim One For Copyright Infringement Must Be Dismissed For Lack Of Sufficient Similarity Of Protectable Elements. ..........................................2

            i.    Games Mechanics, Rules, and Scenes a Faire Must Be Filtered Out. ..........4

            ii.   "Winner Winner Chicken Dinner" Is Not Protectable. ...............................7

            iii.  Elements Common to the Battle Royale Genre Must Be Filtered Out. ...............................................................................................7

            iv.   PUBG Cannot Show Sufficient Similarity In Any Creative Expression. ............................................................................................8

      B.    Claim Two For Lanham Act Infringement Must Be Dismissed. ............................11

            i.    PUBG's Trade Dress Claim Improperly Invades The Copyright Act. ........11

            ii.   PUBG Fails To Plead The Protectability Of Its Asserted Trade Dress. ...........................................................................................12

      C.    Claim Three For Unfair Competition Claim Pursuant to § 17200 Fails. .................13

      D.    Claim Four Is Preempted Under 17 U.S.C. § 301 And Inadequately Pled. .............15

VI.     CONCLUSION ..................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Allen v. Acad. Games League of Am., Inc.*,
    89 F.3d 614 (9th Cir. 1996)..................................................................... vi, 5, 6

*Anti-Monopoly, Inc. v. Gen. Mills Fun Grp.*,
    611 F.2d 296 (9th Cir. 1979)......................................................................... 5

*Apple Computer, Inc. v. Microsoft Corp.*,
    35 F.3d 1435 (9th Cir. 1994)................................................................... vi, 3, 4

*Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*,
    2018 WL 1805516 (N.D. Cal. Apr. 16, 2018) ................................................ 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 2

*Atari, Inc. v. Amusement World, Inc.*,
    547 F. Supp. 222 (D. Md. 1981) ................................................................... 6

*Aurora World, Inc. v. Ty Inc.*,
    719 F. Supp. 2d 1115 (C.D. Cal. 2009)..................................................... 8, 13

*Avoy v. Turtle Mountain, LLC*,
    2014 WL 587173 (N.D. Cal. Feb. 14, 2014)................................................. 15

*Bank of the W. v. Superior Court*,
    2 Cal. 4th 1254 (1992)............................................................................... 15

*Batjac Prods. Inc. v. GoodTimes Home Video Corp.*,
    160 F.3d 1223 (9th Cir. 1998)...................................................................... 2

*Capcom Co. v. MKR Grp., Inc.*,
    2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) .................................... vi, 3, 4, 5, 6

*Capcom U.S.A., Inc. v. Data E. Corp.*,
    1994 WL 1751482 (N.D. Cal. Mar. 16, 1994) ...................................... vi, 5, 7

*Cavalier v. Random House, Inc.*,
    297 F.3d 815 (9th Cir. 2002)...................................................................... 3, 6

*Cel-Tech Communic'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999)................................................................................ 14

*Coffen v. Home Depot U.S.A. Inc.*,
    2016 WL 4719273 (N.D. Cal. Sept. 9, 2016)................................................ 14

*Comedy III Prods., Inc. v. New Line Cinema*,
    200 F.3d 593 (9th Cir. 2000)....................................................................... 15

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) ......................................................................... vi, 11, 12

*Data E. USA, Inc. v. Epyx, Inc.*,
862 F.2d 204 (9th Cir. 1988) ............................................................................. 5

*DaVinci Editrice S.R.L. v. ZiKo Games, LLC*,
2014 WL 3900139 (S.D. Tex. Aug. 8, 2014) ................................................... 4, 5

*Deckers Outdoor Corp. v. J.C. Penney Co. Inc.*,
45 F. Supp. 3d 1181 (C.D. Cal. 2014) ............................................................. 11

*Eastman v. Quest Diagnostics Inc.*,
108 F. Supp. 3d 827 (N.D. Cal. 2015) ............................................................. 14

*Epic Games, Inc. v. Mendes*,
2018 WL 2926086 (N.D. Cal. June 12, 2018) .................................................. 12

*Epikhin v. Game Insight N. Am.*,
2015 WL 2412357 (N.D. Cal. May 20, 2015) .................................................. 14

*Fitbug Ltd. v. Fitbit, Inc.*,
78 F. Supp. 3d 1180 (N.D. Cal. 2015) ............................................................. 14

*Frybarger v. Int'l Bus. Machs. Corp.*,
812 F.2d 525 (9th Cir. 1987) ................................................................. vi, 3, 6, 8

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
462 F.3d 1072 (9th Cir. 2006) ........................................................................... 3

*Geovector Corp. v. Samsung Elecs. Co.*,
2016 WL 6662996 (N.D. Cal. Nov. 10, 2016) ................................................. 12

*Glassybaby, LLC v. Provide Gifts, Inc.*,
2011 WL 2218583 at *2 (W.D. Wash. June 6, 2011) ...................................... 12

*Gorski v. The Gymboree Corp.*,
2014 WL 3533324 (N.D. Cal. July 16, 2014) .................................................... 7

*Hall v. Swift*,
2018 WL 2317548 (C.D. Cal. Feb. 13, 2018) .................................................... 7

*Helman v. Alcoa Glob. Fasteners, Inc.*,
637 F.3d 986 (9th Cir. 2011) ........................................................................... 15

*Incredible Techs., Inc. v. Virtual Techs., Inc.*,
400 F.3d 1007 (7th Cir. 2005) ........................................................................... 7

*Jonathan Browning, Inc. v. Venetian Casino Resort LLC*,
816 F. Supp. 2d 793 (N.D. Cal. 2009) ............................................................. 14

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc.*,
170 F. Supp. 3d 1249 (C.D. Cal. 2016) ........................................................... 15

*Meribear Prods., Inc. v. Vail*,
2014 WL 12597609 (C.D. Cal. Aug. 5, 2014) ................................................. 12

*Monet v. JPMorgan Chase Bank, N.A.*,
    2017 WL 3895790 (N.D. Cal. Sept. 5, 2017)......................................................... 13

*O'Connor v. Uber Techs., Inc.*,
    58 F. Supp. 3d 989 (N.D. Cal. 2014) ...................................................................... 15

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018) .................................................................. vi, 3, 11

*Rice v. Fox Broad. Co.*,
    330 F.3d 1170 (9th Cir. 2003) ................................................................................ 3

*Satava v. Lowry*,
    323 F.3d 805 (9th Cir. 2003) ...................................................................... vi, 3, 8

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ............................................................................. 14

*Spry Fox LLC v. LOLApps Inc.*,
    2012 WL 5290158 (W.D. Wash. Sept. 18, 2012) .................................................. 4

*Summit Mach. Tool Mfg. v. Victor CNC Sys's*,
    7 F.3d 1434 (9th Cir. 1993).......................................................................... vi, 6, 11

*Touchpoint Commc'ns, LLC v. Dentalfone, LLC*,
    2015 WL 5918400 (W.D. Wash. Oct. 9, 2015) ........................................... 11, 12

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
    532 U.S. 23 (2001) ........................................................................................ vi, 13

*TV One LLC v. BET Networks*,
    2012 WL 13012674 (C.D. Cal. Apr. 2, 2012) ...................................................... 12

*Zella v. E.W. Scripps Co.*,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007)................................................................. 4

### Statutory Authorities

15 U.S.C. § 1125(a)....................................................................................................... i

15 U.S.C. 1125(a)(3) ................................................................................................... 13

17 U.S.C. § 101 ............................................................................................................ i,

17 U.S.C. § 301 ...................................................................................... i, vi, vii, 14, 15

Cal. Bus. & Prof. Code § 17200............................................................... i, v, vi, 13

### Rules and Regulations

Fed. R. Civ. P. 12(b)(6) ................................................................................................. i

# I.        ISSUES TO BE DECIDED

1.        Should Plaintiffs' copyright infringement claim, asserted as Claim One in the Second Amended Complaint, be dismissed on the grounds that the allegations of substantial similarity arise from unprotectable elements, such as game rules, ideas, merger, scenes a faire, and real world items and experiences for which Plaintiffs' expression lacks sufficient originality, and/or Defendants' expression is not virtually identical?

2.        Should Plaintiffs' Lanham Act claim, asserted as Claim Two in the Second Amended Complaint, be dismissed on the grounds that it improperly conflicts with both (i) the Copyright Act because it is based on a communicative, non-tangible work and alleges no rights protectable under the Lanham Act that are distinct from its allegations of copyright infringement, and (ii) the Patent Act, because its pleads a functional trade dress?

3.        Should Plaintiffs' statutory unfair competition claim under California Business and Professions Code § 17200, *et seq.*, asserted as Claim Three in the Second Amended Complaint, be dismissed on the ground that it fails to allege a violation of a federal or state antitrust policies or injuries, as required for "unfair" competition claims between direct competitors, fails to adequately plead reliance, as required for a "fraudulent" claim, is based on its deficient copyright and Lanham Act claims, which therefore cannot support an "unlawful" claim, and/or is preempted by the Copyright Act?

4.        Should Plaintiffs' common law unfair competition claim, asserted as Claim Four in the Second Amended Complaint, be dismissed on the grounds that it is preempted by the Copyright Act?

## II.     SUMMARY OF ARGUMENT

PUBG's attempt to monopolize the popular "battle royale" genre of videos games fails under the Copyright Act, the Lanham Act, and California's unfair competition law.

PUBG's copyright claim must be dismissed.  Copyright only protects against the copying of original expression—not ideas, not expression so inherent to an idea that it "merges" with the idea, not elements borrowed from another creator or the public domain, and not scenes a faire that flows from any idea, merged expression, or stock treatments of a given genre.  *E.g. Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443-46 (9th Cir. 1994); *Capcom Co. v. MKR Grp., Inc.*, 2008 WL 4661479, at *6 (N.D. Cal. Oct. 20, 2008).  Accordingly, PUBG's copyright in *Battlegrounds* does not preclude other game developers from creating competing games based on the same underlying ideas, rules, or expression that flows from the game idea itself.  *E.g., Allen v. Acad. Games League of Am., Inc.*, 89 F.3d 614, 617-18 (9th Cir. 1996).  When comparing the games for a non-infringement determination, the Court must "filter out" all unprotectable expression.  *Capcom*, 2008 WL 4661479, at *6; *see also Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018); *Capcom U.S.A., Inc. v. Data E. Corp.*, 1994 WL 1751482, at *5 (N.D. Cal. Mar. 16, 1994).  Once these elements are removed, the Court should compare the two works using the "virtual identity" standard applied both to games in the same genre and to works that express real-world objects.  *See Frybarger v. Int'l Bus. Machs. Corp.*, 812 F.2d 525, 530 (9th Cir. 1987); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003).  PUBG cannot show substantial similarity, much less the required virtual identity.  Accordingly, its claim fails.

PUBG's Lanham Act claim identifies no trade dress distinct from its copyright claim, and alleges functionality of claimed elements.  It must be dismissed because it improperly conflicts with copyright and patent law.  *See, e.g., Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003); *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001); *Summit Mach. Tool Mfg. v. Victor CNC Sys's*, 7 F.3d 1434, 1438 (9th Cir. 1993).

PUBG fails to allege necessary elements to state a claim under California Business and Professions Code §17200, its predicate "unlawful" acts fail with its Copyright and Lanham Act claims, and it, along with PUBG's common law claim, is preempted by 17 U.S.C. § 301.

### III.   INTRODUCTION

This litigation is a shameless attempt by the PUBG Plaintiffs to monopolize the "battle royale" genre of video games and inhibit legitimate competition.  Plaintiffs' copyright claim is premised on alleged similarities in ideas, merger of ideas and expression, scenes a faire, and game rules and mechanics.  Copyright does not protect any of these aspects of PUBG's game.  In those few instances where PUBG identifies protectable expression, differences abound—as reflected in the complaint, as well as the works at issue.  This is particularly the case for real-world products, such as weapons and vehicles, which PUBG did not create in the first instance, and which are entitled to thin protection, at most.  As no discovery can improve PUBG's position regarding substantial similarity, it is evident now that Plaintiffs' copyright claim cannot survive.

PUBG's Lanham Act claim, which is based on an ill-defined trade dress consisting of the entirety of its copyrighted game, is likewise doomed.  Supreme Court and Ninth Circuit precedent prohibit extending the Lanham Act to allow such claims, which are at odds with the Copyright Act.  Independently, PUBG's claim must also be dismissed because the complaint concedes functionality of the asserted game's functional features, and therefore fails to plead non-functionality, as required by the Lanham Act to ensure it does not conflict with the Patent Act—the exclusive means of protecting functional intellectual property.

Finally, Plaintiffs' add-on state statutory and common law unfair competition claims also fail.  Both claims are preempted by the Copyright Act and unsupported by necessary factual assertions.  Accordingly, the entirety of the complaint should be dismissed.

### IV.   FACTUAL BACKGROUND

Defendants NetEase, Inc., NetEase Information Technology Corporation, and Hong Kong NetEase Interactive Entertainment, Ltd. (collectively "NetEase") are three corporations in the NetEase family, which has specialized in the development of video games and electronic entertainment for more than 15 years.  SAC ¶¶4-6, Ex. 22.  (The abbreviation "Ex." refers to exhibits to the Declaration of Michael LaFond, filed herewith.)  By December 31, 2017, NetEase had distributed over 100 mobile games of various genres.  *Id*.  NetEase primarily derives revenue from its mobile games through the sale of "in-game" virtual items, including avatars, skills,

privileges or other in-game consumables, features, or functionality within its games.  *Id.*  In 2017, NetEase introduced *Rules of Survival* and *Knives Out*, two online games in the battle royale genre. SAC ¶¶51, 83; Exs. 6-9.  That genre, rooted in a novel first published in 1999, has since increased in popularity and spawned movies and video games.  Exs. 6-9.  Among the myriad battle royale games is *Battlegrounds,* developed by Plaintiffs PUBG Corporation and PUBG Santa Monica, Inc. (collectively "PUBG").  *Id.*; SAC ¶¶2, 3, 17-18.

Plaintiffs filed suit against NetEase's competitive games, *Rules of Survival* and *Knives Out*, claiming simultaneous copyright and trade dress protection over game mechanisms, rules, real-world objects, and elements that, by PUBG's own admission, have appeared in other games. *E.g.* SAC ¶¶62, 64, 68.[1]

## V.   ARGUMENT

### A.   Claim One For Copyright Infringement Must Be Dismissed For Lack Of Sufficient Similarity Of Protectable Elements.

PUBG's asserted copyright in its videogame exceeds the Copyright Act's protection:

> Copyright does not protect the idea for a game, its name or title, ***or the method or methods for playing it***.  Nor does copyright protect any ***idea, system, method***, device, or trademark material involved in developing, merchandising, or playing a game.  ***Once a game has been made public, nothing in the copyright law prevents others from developing another game based on similar principles***.

Ex. 23 (Copyright Office Circular FL-108) (emphasis added); *see Batjac Prods. Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1230 (9th Cir. 1998) (recognizing judicial deference to Register's reasonable interpretations of copyright law).  Contrary to this clear direction, PUBG seeks to punish NetEase for "developing another game based on similar principles."

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).  In the context of a copyright claim, "[d]ismissal is appropriate [w]here [] the two [works] . . . are properly before [the court] and thus capable of

---

[1]   NetEase has lodged with the Court the games at issue, which are incorporated by reference in the complaint.  The other facts relevant to this motion are set forth in the complaint, NetEase's Request For Judicial Notice, and the Declaration of Michael LaFond, filed herewith.

1  examination and comparison" and no infringement is found as a matter of law.  *Rentmeester v.*

2  *Nike, Inc.*, 883 F.3d 1111, 1123 (9th Cir. 2018) (internal quotation marks, citation omitted).

3  To survive the pleading stage, a plaintiff must show that the defendant's work is

4  "substantially similar" to the plaintiff's work, or, as to works based on real-world characteristics or

5  the same genre of video games, "virtually identical."  *E.g.*, *Rentmeester*, 883 F.3d at 1117; *Satava*

6  *v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003); *Frybarger v. Int'l Bus. Machs. Corp.*, 812 F.2d 525,

7  530 (copyright in a video game protected "only against virtually identical copying").  When ruling

8  on a motion to dismiss, courts must apply the Ninth Circuit's "extrinsic test" for assessing

9  similarity.  *Rentmeester*, 883 F.3d at 1118.  The extrinsic test "is objective in nature[, i]t depends

10 not on the responses of the trier of fact, but on [comparing] specific criteria which can be listed

11 and analyzed."  *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir.

12 2006) (internal quotation omitted).

13 "[W]hen applying the extrinsic test, a court must filter out and disregard the non-

14 protectable elements in making its substantial similarity determination."  *Cavalier v. Random*

15 *House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).  "[T]he party claiming infringement may place **no**

16 reliance upon any similarity in expression resulting from unprotectable elements."  *Apple*

17 *Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) (internal quotation

18 omitted); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003) (same).

19 [T]he elements which the Court must filter out as unprotectable are:

20 (1) 'ideas' as opposed to the 'expression' of those ideas; (2) facts, historical events,
    or other information over which no party is entitled to claim a monopoly; (3)

21 elements borrowed from another creator or from the 'public domain'; (4) instances
    in which a particular 'expression' at issue 'merges' with the 'idea' being expressed;

22 and (5) a similar instance in which the form of the 'expression' is so standard in the
    treatment of a given 'idea' that it constitutes scenes a faire.

23

24 *Capcom Co. v. MKR Grp., Inc.*, 2008 WL 4661479, at *6 (N.D. Cal. Oct. 20, 2008) (internal

25 quotation omitted) (analyzing video game) ("*Capcom II*"); *see also Apple*, 35 F.3d at 1443-46

26 (describing categories of unprotectable elements).

27 Because plaintiffs may not rely on unprotectable elements, dismissal at the pleading stage

28 is appropriate even if there is substantial overlap between the works.  For example, this District

dismissed a copyright claim accusing the video game *Dead Rising* of copying George Romero's *Dawn of the Dead*, even though both works (i) take place in "rural two-story mall[s] with [] helipad[s] on top and a gun shop," (ii) depict the plight of survivors during a zombie outbreak, (iii) star men "with short brown hair, [who] wear leather jackets, and undertake activities connected to journalism," and "tall athletic African-Americans who know how to handle weapons," and (iv) the main characters make use of "comedic weapons," such as pies, to fight the zombies. *Capcom II*, 2008 WL 4661479, at *6-10. These multiple extensive similarities were "filtered out" because they flow from "the wholly ***unprotectable*** [idea] of humans battling zombies in a mall during a zombie outbreak," or consist of "stock" features of everyday life (such as undeveloped characters wearing average clothing, or a shopping mall). *Id.* at *7-11. After filtering these elements out, no remaining actionable similarities were left, and dismissal was appropriate.

Similarly, in *Zella v. E.W. Scripps Co.*, the court dismissed a copyright claim accusing the celebrity cooking television show *Rachel Ray* of infringing the treatment of an earlier celebrity cooking show entitled *Showbiz Chefs*, even though both had similar formats, including "[a] host, guest celebrities, an interview, and a cooking segment," "discussion of the celebrity's current projects … [and] a tour of the celebrity's home[.]" 529 F. Supp. 2d 1124, 1133-35 (C.D. Cal. 2007). These elements are common to "every talk show to some extent," and the plaintiff could not monopolize the talk show genre. *See, id* at 1135.[2]

### i.   Games Mechanics, Rules, and Scenes a Faire Must Be Filtered Out.

PUBG's complaint alleges that the rules of *Battlegrounds*, as well as gameplay mechanics and procedures implementing those rules, are "copyrightable audiovisual aspects." SAC ¶¶23-49. This is wrong as a matter of law. "Game mechanics and the rules are not entitled to protection … [nor are] procedures, including the winning conditions, that make up a []game[.]" *DaVinci*, 183 F.

---

[2]  PUBG will likely point to non-binding decisions denying motions to dismiss. *E.g. DaVinci Editrice S.R.L. v. ZiKo Games, LLC*, 2014 WL 3900139, at *9 (S.D. Tex. Aug. 8, 2014); *Spry Fox LLC v. LOLApps Inc.*, 2012 WL 5290158, at *1 (W.D. Wash. Sept. 18, 2012). But the works at issue in those actions involved fanciful and highly fictionalized elements. *Id.* In contrast, PUBG's allegations are premised on non-fictional representations of real-world objects. *E.g.* SAC ¶32 ("PUBG created a realistic combat environment, including realistic weapons").

Supp. 3d at 830 (S.D. Tex. 2016) (internal quotation omitted); *accord Allen v. Acad. Games League of Am., Inc.*, 89 F.3d 614, 617-18 ("abstract rules and play ideas," as well as "premises or ideas underlying … games" are not protectable); *Anti-Monopoly, Inc. v. Gen. Mills Fun Grp.*, 611 F.2d 296, 300 n.1 (9th Cir. 1979) ("business ideas, such as a game concept, cannot be copyrighted").  Moreover, pursuant to the doctrine of scenes a faire, any expression that necessarily flows from an idea—like the rules defining a game—is also unprotectable.  *E.g., Capcom II*, 2008 WL 4661479 at \*10.

To differentiate between unprotectable ideas embodied in rules of a game (and related scenes a faire) and protectable expression, courts begin by describing the games "in [] appropriately simple terms."  *Capcom I*, 1994 WL 1751482 at \*10.[3]  In simple terms, *Battlegrounds* is "a battle royale game, wherein a large group of players are dropped together onto an island, forced to scrounge for equipment scattered on the island, and encouraged, by external forces, to kill each other until only one survives."  *See* Exs. 1, 2; *see also* NetEase's Request for Judicial Notice at pp. 4-6.  Based on this simple description, at least the following features are unprotectable game rules, or scenes a faire flowing from the underlying game idea:

**Character Attributes/Character Movement.**  The idea of a "health" status bar, as well as energy "boosts," and the ability of human characters to "stand, walk, run, take a prone position, crawl in a prone position or take a kneeling position" in a combat situation, are all simply mechanics that flow from the idea of forcing players to kill each other.  *See* SAC ¶¶29, 44, 49; *Capcom I*, 1994 WL 1751482, at \*7-8 ("a vitality bar that . . . changes color to indicate the percentage of strength the fighter has left" and the "natural flow of the fighter's body" are unprotectable rules and scenes a faire).  Similarly, "Down But Not Out" (SAC ¶49) is just an

---

[3]  *See, e.g., Data E. USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir. 1988) ("[*Karate Champ* is] a martial arts karate combat game conducted between two combatants, and presided over by a referee, all of which are represented by visual images, and providing a method of scoring accomplished by full and half point scores for each player, and utilizing dots to depict full point scores and half point scores."); *Capcom I*, 1994 WL 1751482, at \*11 ("[*Street Fighter II*] is a one-on-one fight game that allows players to select from a host of human characters, each with their own unique appearance and fighting style, to do battle using a variety of realistic and 'special' or unreal moves and combination attacks."); *Capcom II*, 2008 WL 4661479, at \*10 ("*Dead Rising* is an adventure/mystery [game] where the main character attempts to enter a quarantined area to uncover in three days why a small town is infested with insects that turn the dead into zombies.").

1   implementation of the unprotectable health bar mechanic, and thus also not protectable.

2       **Pre-Game Lobby and Waiting Area.**  PUBG's lobby and waiting area is nothing more

3   than an in-game tutorial that allows players to learn the rules of the game before gameplay begins.

4   SAC ¶26.  Features that exist to teach players the rules of the game are not protectable.  *E.g. Allen*,

5   89 F.3d at 618 (manual of game rules not protectable because it was indistinguishable from "the

6   idea of the rules themselves."); *see also Atari, Inc. v. Amusement World, Inc.*, 547 F. Supp. 222,

7   229 (D. Md. 1981) (idea that a "game must be easy at first and gradually get harder, so that bad

8   players are not frustrated and good ones are challenged" is unprotectable).

9       **Air Jump.**  Inherent in the idea of dropping players on an island together for the purpose

10  of killing each other is a means of accomplishing the drop.  Parachuting onto the island (SAC ¶27)

11  flows directly from that idea.  *E.g. Cavalier*, 297 F.3d at 823 (idea of a dinosaur park

12  encompassed "electrified fences, automated tours, dinosaur nurseries, and uniformed workers,"

13  which were not protectable expression).

14      **Equipment Acquisition/Weapon, Vehicle, and Equipment Spawning.**  Basic rules such

15  as players "start with nothing" (SAC ¶¶30, 42) are not protectable.  *E.g. Capcom II*, 2008 WL

16  4661479, at *2 (idea of "characters . . . visit[ing] numerous abandoned shops in search of clothes,

17  food, and weapons" in zombie movie and game are not protectable elements).

18      **Air Drops/Bombardment/Shrinking Gameplay.**  The idea of last-one-standing-wins

19  games in which players are forced to kill each other requires game mechanics to drive players

20  together.  This is the purpose of *Battlegrounds*' air drops, bombardment, and shrinking gameplay.

21  *See* SAC ¶¶46-48.  Game mechanics of this sort are not protectable.  *See Frybarger*, 812 F.2d at

22  530 n.2 (videogame mechanics encouraging protagonist to move in a manner so as to "trap"

23  antagonists was unprotectable as a matter of law).

24      **Weapons/Vehicles/Consumables/Clothing/Equipment/Configuration.**  Players using

25  real-world weapons, wearing everyday clothing, and having limited choices of weapons, clothing,

26  and related equipment (SAC ¶¶32-41) is not protectable.  Such scenes a faire elements stem from

27  the use of stock characters (*e.g.*, humans with no backstory wearing plain clothing) and real-world

28  weapons.  *E.g. Capcom II*, 2008 WL 4661479, at *8 (no protection for "male[s] with short brown

hair, [who] wear leather jackets, and undertake activities connected to journalism").

PUBG could have chosen to express the ideas and rules discussed above in original and creative ways, such as through fanciful creatures, weapon, vehicle, or settings.  But its complaint identifies no such elements.  Similarly, while PUBG makes repeated references to the overall "look and feel" of its game (SAC ¶¶ 23, 59, 90, 91), the only aspects it identifies are real-world based unprotectable elements.  Indeed, the actual "look and feel" of the parties' games is quite different, with *Battlegrounds* having dark and muted tones, and NetEase's games being notably brighter and lighter.  *See, e.g.*, SAC ¶¶58, 63, 64, 66, 78, 90, 94, 95, 97, 109, 111.

### ii.   **"Winner Winner Chicken Dinner" Is Not Protectable.**

"Short phrases, no matter how distinctively arranged, are not protectable elements" in copyright.  *Gorski v. The Gymboree Corp.,* 2014 WL 3533324, at \*5 (N.D. Cal. July 16, 2014) (no protection for phrase "lettuce turnip the beet"); *see also Hall v. Swift*, 2018 WL 2317548, at \*7 (C.D. Cal. Feb. 13, 2018) (no protection for phrase "Playas, they gonna play/And haters, they gonna hate").  The short phrase "Winner winner chicken dinner" (SAC ¶50) is therefore unprotectable.  *Id*.; *see also* Ex. 24; Request for Judicial Notice at pp. 8-9.

### iii.   **Elements Common to the Battle Royale Genre Must Be Filtered Out.**

Because the works at issue are all in the battle royale genre, under the scenes a faire doctrine, PUBG cannot claim protection over any elements found throughout that genre.  "[T]he scenes a faire doctrine excludes from copyright protection expressions that are … standard in the treatment of a given" genre.  *E.g., Capcom U.S.A., Inc. v. Data E. Corp.*, 1994 WL 1751482, at \*6 (N.D. Cal. Mar. 16, 1994) ("*Capcom I*").  "For instance, the mazes, tunnels, and scoring tables in Atari's PAC-MAN were scenes a faire."  *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1012 (7th Cir. 2005).

The battle royale genre is well recognized.  RJN at pp. 4-6; Exs. 6-9.  Its elements include a large group of "people drop[ping] onto an island empty-handed" where they "must search for armor, gear, and weapons," which are "randomized" or scattered over the map, including in "caches" or "chests."  RJN at 5-6; Exs. 6, 7, 9.  The island is defined by a "massive map[] that feature[s] abandoned towns, lush environments, and numerous explorable buildings," but the

1   actual area of gameplay shrinks over time, and players are driven together by an "external threat."

2   RJN at 6; Exs. 6-9.  *Battlegrounds* does not receive copyright protection for expression of these

3   elements found throughout the genre.  *Cf.* SAC ¶¶ 27-37, 39, 40, 42-44, 47-48.[4]

4             **iv.**       **PUBG Cannot Show Sufficient Similarity In Any Creative Expression.**

5        When comparing two works in the same genre, or two works that depict real-world

6   objects, the plaintiff must show that parties' works are not just substantially similar, but the higher

7   standard of "virtual identity."  *See Capcom I*, 1994 WL 1751482, at *13 (virtual identity standard

8   applied to two video games in the same genre); *see also Satava*, 323 F.3d at 812 ("virtual identity"

9   standard applied to allegations of copying real-world animals); *Frybarger*, 812 F.2d at 530

10  (copyright in a video game protected "only against virtually identical copying").  Under the virtual

11  identity standard, even small differences, such as colors, facial features, or clothing, are sufficient

12  to support a finding of non-infringement.  *E.g., Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d

13  1115, 1137 (C.D. Cal. 2009); *Capcom I*, 1994 WL 1751482, at *13.

14       This standard applies here, where *Battlegrounds*, *Knives Out*, and *Rules of Survival* are all

15  within the battle royale video game genre (*see* Exs. 1 - 9) and where PUBG has admitted that most

16  of its game mimics real-world objects, sounds, and movement.  SAC ¶¶32, 44,  45, 64.

17  Accordingly, PUBG must show that NetEase's expression is virtually identical to that of

18  *Battlegrounds* to establish infringement.  But NetEase's expression is not virtually identical to

19  *Battlegrounds*.  For example, PUBG alleges NetEase copied its Thompson submachine gun.  SAC

20  ¶68.  But real-world elements of the gun, such as those shown in the now-expired patent for that

21  very gun, must be filtered out:

| *Battlegrounds* (SAC ¶68) | US Patent 1,425,808 | *Rules of Survival* (SAC ¶68) |
|---|---|---|
|  | |  |

25  As shown, PUBG's gun has appropriated the design and configuration of the sight, barrel, grip,

26  magazine, and numerous other features from a century-old gun design; once those elements are

27  [4]  As explained in NetEase's Request for Judicial Notice ("RJN"), the Court may take notice of the
games at issue, common elements of a genre, and similar facts.  However, because the games are

28  not similar, PUBG's complaint should be dismissed even if notice is denied.

removed, there is no virtual identity.

Other patent drawings confirm that PUBG is asserting myriad unprotectable, real-world guns, weapons, and equipment. *Compare, e.g.* Exs. 11-13 (patents covering ghillie suit, M16 rifles, and fragmentation grenade) *with* SAC ¶¶69, 71, 74, 105. After filtering out that which PUBG has taken from many other creators, so little expression is left that only wholesale, identical replication of *Battlegrounds* could infringe PUBG's copyright. But PUBG failed to allege any virtually identical expression. SAC, *passim*. The complaint's comparison images confirm the lack of substantial similarity, much less virtual identity, in the expression of land masses, rivers, roads, structures, or other features (SAC ¶¶62, 63, 64), aircraft from which players parachute (SAC ¶¶65, 96), and the weapons and equipment (SAC ¶¶68-77; 98-108).

**The mood, themes, and settings of the games are different.** The artwork in *Battlegrounds* has a dark tone, with harsh contrasts against a barely tinted sky. *See, generally* SAC ¶¶58, 63, 64, 66, 78, 90, 94, 95, 97, 109, 111; Ex. 15. The structures and environment look war-torn and long abandoned: buildings are falling apart, peeling, and pocked with bullet holes; dried-out patches of grass and sun-bleached ground are common; long-disabled vehicles are rusting, rubbish is strewn across room interiors, and long-gone window panes are replaced with bars. *See* Ex. 15. The overall effect is consistent with the grim purpose of the game. By contrast, NetEase's games have a visual feel ironically at odds with the deadly objective. *Knives Out* uses a broader range of colors, with ample use of purples and pinks; it has white snow in some areas and green grass in others; and its settings suggest recent human presence, such as equipment on tables and books on shelves. Ex. 19; Ex. 21. The interiors of abandoned buildings and even ancient ruins do not contain the sort of rubbish seen in *Battlegrounds*. *Id.* at 05:14:05. *Rules of Survival* is different as well, with meadows of flowers, use of bright turquoise and yellow, and futuristic elements not seen in the other games. *E.g.* Ex. 17 (glowing objects, plasma and beam effects, a giant robot, and futuristic flying craft); Ex. 20.

**The air jumps are different in art and interface.** The air jump in *Battlegrounds* begins on a propeller plane, the player jumps out wearing ordinary clothing and a parachute, the chute displays a *Battlegrounds* logo, and the player must press a second button to "cut" the parachute

and be released.  Ex. 15 at 00:00:00-01:12:28.  During the same sequence in *Knives Out*, the plane is either jet-driven (SAC ¶90) or depicted as a group of helicopters, the parachute displays a *Knives Out* logo, and there is no separate button to cut it away.  Ex. 19 at 00:00:00 - 01:36:13.  In *Rules of Survival* the aircraft is a VTOL design, the parachute has no logo, and there is no second button to cut it away.  Ex. 17 02:03:24 – 03:36:06.  In every protectable way (logo on the chute, design of the aircraft, interface), the games are different.

**The games have "selected and arranged" different real-world weapons.**  PUBG's complaint devotes several pages to unprotectable similarities in fewer than ten firearms, some appearing in *Battlegrounds*, some appearing in *Rules of Survival*, and some appearing in *Knives Out*.  SAC ¶¶68, 99.  But PUBG hides the fact that each game contains twice that many weapons, most of which do not appear in the other games.  *E.g.* Ex. 16 at 03:53:13 – 04:58:18; Ex. 18 at 02:32:05 – 02:48:28).  As an example, all of the shotguns used in *Rules of Survival* differ from those in *Battlegrounds*.  *Compare* Ex. 16 with Ex. 14.  Selecting which real-world weapons to incorporate in the games can be expressive (unlike the real-world weapons themselves), and it is different for each game.

**The games contain dissimilar fanciful expression.**  PUBG's complaint hides what the works themselves show: all three games contain fanciful expression not found in the other games, including unique costumes and fictionalized gun designs—for which there is no similarity.  Players of all three games are permitted to buy new styles of clothing, weapons, or equipment before playing the game.  Ex. 14 at 02:58:11-03:49:21; Ex. 18 at 01:17:08-02:30:16; Ex. 16 at 02:10:01-05:40:10.  When a player buys a new style of weapon, clothing, or gear, that style then appears instead of the original art in-game.  *E.g.,* Ex. 19 at 07:16:20-07:22:29 (when player picks up standard "Damascus Knife" it is replaced with a glowing purple katana).  These creative designs include: gold and silver plated guns in *Battlegrounds* (Ex. 14 at 03:06:01-03:14:00), flaming dragon themed guns in *Knives Out* (Ex. 18 at 01:53:15-02:25:27), and glowing science fiction-esque guns in *Rules of Survival*.  Ex. 16 at 02:46:20-02:50:12.  But PUBG does not allege any similarity in these fanciful expressions; it relies on only unprotectable stock weapon designs.

**Side-by-side comparisons of the works show no similarity in protectable expression.**

Side-by-side comparison screenshots for each element accused in PUBG's complaint reveal that none of the accused elements are substantially similar, much less virtually identical.  Exs. 20, 21.

PUBG's claim must be dismissed because "[n]othing disclosed during discovery could strengthen [its] arguments on this [similarity] score." *Rentmeester*, 883 F.3d at 1124 (affirming dismissal at the pleading stage for failure to show sufficient similarity of protected elements).

**B.      Claim Two For Lanham Act Infringement Must Be Dismissed.**

**i.      PUBG's Trade Dress Claim Improperly Invades The Copyright Act.**

PUBG's Lanham Act claim incorporates by reference all of its copyright allegations and alleges no separately identifiable trade dress.  SAC ¶¶126-128.  It must be dismissed because the Lanham Act does not protect works within "the spheres protected by, or intentionally left unprotected by, copyright and patent law."  *Summit Mach. Tool Mfg. v. Victor CNC Sys's*, 7 F.3d 1434, 1438 (9th Cir. 1993); *accord Touchpoint Commc'ns, LLC v. Dentalfone, LLC*, 2015 WL 5918400, at *4 (W.D. Wash. Oct. 9, 2015) ("[C]ourts have long limited application of the Lanham Act so as not to encroach on copyright interests.") (citations, internal quotations omitted).

PUBG cannot circumvent the limits of the Lanham Act through its allegation that NetEase essentially plagiarized *Battlegrounds* and is confusing consumers about the "origin" of NetEase's games.  *E.g.* SAC ¶128.  This is because the Lanham Act's protection of consumers against confusion as to "origin of goods … refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003); *see also id.* at 36 (refusing to "read[] § 43(a) of the Lanham Act as creating a cause of action for, in effect, plagiarism").  Based on these principles, courts reject attempts to assert Lanham Act claims where (i) "the exact same copyrighted design … 'embodies' [the plaintiff's] alleged protectable trade dress," *Touchpoint Commc'ns*, 2015 WL 5918400, at *3 (dismissing Lanham Act claim), or (ii) the plaintiff allegedly "originated the ideas or communications that [defendants'] 'goods' embody or contain."  *Deckers Outdoor Corp. v. J.C. Penney Co. Inc.*, 45 F. Supp. 3d 1181, 1186 (C.D. Cal. 2014) (quoting *Dastar*, 539 U.S. at 32, and dismissing Lanham Act claim without leave to amend).  PUBG's Lanham Act claim suffers both fatal defects.

First, far from differentiating between its copyright and Lanham Act claims, PUBG alleged that all of its "copyrightable" expression has taken on "secondary meaning" qualifying it for trade dress protection. *See* SAC ¶¶26-27, 29, 31, 38-39, 41, 46-50. PUBG identifies no elements of its trade dress that it does not also allege to be copyrightable. *Id.*, SAC ¶¶ 127-28.

Second, PUBG's Lanham Act claim fails because it is predicated upon the appropriation of communicative works, concepts, and ideas in downloadable video games—not tangible goods. SAC ¶¶56, 88. This is not a permissible claim. *See Dastar*, 539 U.S. at 31, 33 (rejecting Lanham Act claim based on a "communicative product—one that is valued not primarily for its physical qualities, such as a hammer, but for the intellectual content that it conveys").[5] Like the doomed Lanham Act claim in *Dastar*, PUBG's complaint does not allege that NetEase sold "repackaged" tangible copies of its work, 539 U.S. at 31, but that NetEase makes a separate, allegedly similar, game available for download. SAC ¶¶56, 88. Its claim therefore must be dismissed.

### ii.    PUBG Fails To Plead The Protectability Of Its Asserted Trade Dress.

Separately, PUBG's Lanham Act claim should be dismissed because it fails to allege a protectable trade dress. *E.g. Touchpoint Commc'ns*, 2015 WL 5918400, at *3-4 (dismissing Lanham Act claim where complaint "provides no indication of what trade dress is being protected outside of its copyright claim; [and] provides no facts that support the non-functionality of its phantom trade dress"); *see also Glassybaby, LLC v. Provide Gifts, Inc.*, 2011 WL 2218583 at *2 (W.D. Wash. June 6, 2011) ("Plaintiff must plead with at least some detail what the purported design is and how it is nonfunctional"). Because it is asserting a non-registered trade dress, PUBG "must carry the heavy burden of showing that the claimed trade dress is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device." *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1069 (N.D. Cal. 2015) (citation, internal

---

[5]   *See also, e.g., Epic Games, Inc. v. Mendes*, 2018 WL 2926086, at *3, 10 (N.D. Cal. June 12, 2018) (plaintiff's claim not viable against defendant who had allegedly created derivative versions of the plaintiff's *Fortnite* video game and uploaded a video of his gameplay because plaintiff failed to allege the defendant "offered any tangible goods for sale."); *Geovector Corp. v. Samsung Elecs. Co.*, 2016 WL 6662996, at *4 (N.D. Cal. Nov. 10, 2016) (product designs for augmented reality system not "tangible"); *TV One LLC v. BET Networks*, 2012 WL 13012674, at *9 (C.D. Cal. Apr. 2, 2012) (television broadcast not a tangible good); *Meribear Prods., Inc. v. Vail*, 2014 WL 12597609, at *3 (C.D. Cal. Aug. 5, 2014) (photographs on a website not "tangible").

1  alterations omitted) (granting motion to dismiss trade dress claim on functionality grounds); *see*

2  *also* 15 U.S.C. 1125(a)(3).  "This burden of proof gives force to the well-established rule that

3  trade dress protection may not be claimed for product features that are functional." *TrafFix*

4  *Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001); *see also, e.g., Aurora World,*

5  *Inc.*, 719 F. Supp. 2d at 1146 (explaining that only patent law protects the utility of an invention

6  from competition).  PUBG has not even pled non-functionality of its trade dress.  *Cf.* SAC ¶127

7  (conclusorily asserting that only certain elements are not functional).  This is insufficient to plead

8  that the entirety of the game over which it claims trade dress protection—primarily made up of

9  rules, game mechanics, and realistic objects, as opposed to fanciful or purely ornamental visual

10  aspects like color tone and art style—is not functional.

11      It would be futile for PUBG to argue otherwise because its complaint establishes that the

12  asserted trade dress *is* functional.  Indeed, it expressly concedes certain supposedly protected

13  elements "are functional."  SAC ¶36.  In other instances, it identifies the specific function of an

14  element in the game play.  *E.g. id.* ¶46 ("red smoke wafts up from the landing site, drawing the

15  attention of players to the location of the supply box"); ¶47 ("The bombardment is an artistic

16  catalyst to create further interaction between the players."); ¶76 ("each game offers a drink that

17  boosts health").  Further, the complaint alleges that elements are designed to serve the function of

18  emulating realistic experiences.  *E.g. id.* ¶32 ("BATTLEGROUNDS includes realistic weapons to

19  simulate real life combat. PUBG created a realistic combat environment, including realistic

20  weapons action (*e.g.*, recoil) and sounds."); *id.* ("To add further realism, items that modify the

21  operation of the firearms can also be found"); ¶41 ("The automobiles exhibit realistic handling.");

22  ¶43 ("the variety and types of buildings create a realistic environment").  Thus, the allegations of

23  the complaint contradict any argument by PUBG that its trade dress is nonfunctional.

24      **C.    Claim Three For Unfair Competition Claim Pursuant to § 17200 Fails.**

25      California Business and Professions Code § 17200 (the "UCL") "provides a cause of

26  action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent[, and e]ach prong of

27  the UCL provides a separate and distinct theory of liability" with unique requirements.  *Monet v.*

28  *JPMorgan Chase Bank, N.A.*, 2017 WL 3895790, at *7 (N.D. Cal. Sept. 5, 2017).  PUBG claims

-13-                              Case No. 4:18-cv-02010-JSW

1    relief under all three prongs (SAC ¶133), but failed to plead a required element of each; and,

2    PUBG's failure to allege lost sales as a result of NetEase actions eliminates its UCL standing.  *See*

3    *Fitbug Ltd. v. Fitbit*, Inc., 78 F. Supp. 3d 1180, 1197 (N.D. Cal. 2015).

4         First, PUBG offers no facts supporting an "unfair" antitrust allegation.  *See Cel-Tech*

5    *Communic'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999) ("When a

6    plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice

7    invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient

8    violation of an antitrust law[.]").  PUBG's allegation that NetEase has "introduc[ed] … games to

9    the marketplace at or below cost" (SAC ¶133) are too conclusory to state an antitrust UCL

10   violation because the complaint contains no information about NetEase's purported costs (or the

11   pricing of its in-app purchases, *see* ¶82 SAC).  *See*, *e.g., Arena Rest. & Lounge LLC v. S. Glazer's*

12   *Wine & Spirits, LLC*, 2018 WL 1805516, at *11 (N.D. Cal. Apr. 16, 2018) (dismissing below-cost

13   pricing claim because "a plaintiff must plead the cost of the product at issue to the defendant and

14   the defendant's sales prices"); *Eastman v. Quest Diagnostics Inc.*, 108 F. Supp. 3d 827, 838 (N.D.

15   Cal. 2015) (dismissing below-cost pricing claim for failure to plead defendant's costs).

16        Second, PUBG cannot state a claim under the "unlawful" prong of Section 17200.  This

17   prong "'borrows violations of other laws' and makes them independently actionable."  *Coffen v.*

18   *Home Depot U.S.A. Inc.*, 2016 WL 4719273, at *7 (N.D. Cal. Sept. 9, 2016).  The "other laws"

19   must be statutory.  *E.g., Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th

20   Cir. 2010).  But neither the Copyright Act nor the Lanham Act can support PUBG's UCL claim

21   because they both fail as set forth above.  (*See*, *supra* § A, B.)  When a "statutory claim fails, [the]

22   derivative UCL claim also fails."  *Coffen*, 2016 WL 4719273, at *7.  Nor could the Copyright Act

23   form the basis for a UCL claim in any event because the Copyright Act expressly preempts state-

24   law causes of action that are premised on the violation of a copyright—including UCL claims.

25   *See, e.g.,* 17 U.S. Code § 301; *Epikhin v. Game Insight N. Am.*, 2015 WL 2412357, at *5 (N.D.

26   Cal. May 20, 2015) (dismissing claim as preempted under the Copyright Act); *Jonathan*

27   *Browning, Inc. v. Venetian Casino Resort LLC*, 816 F. Supp. 2d 793, 797 (N.D. Cal. 2009) (same).

28   Lacking any viable underlying unlawful action that could support a UCL claim, PUBG's

"unlawful" UCL claim fails.

Third, PUBG's unsupported allegation of "fraudulent" acts by NetEase (SAC ¶133) are inadequate because PUBG has not at all alleged (much less with the particularity Rule 9(b) requires), that it affirmatively relied on any statement NetEase has made. *See O'Connor v. Uber Techs.*, Inc., 58 F. Supp. 3d 989, 1002 (N.D. Cal. 2014) ("UCL fraud plaintiffs must allege their *own* reliance—not the reliance of third parties—to have standing under the UCL."); *Avoy v. Turtle Mountain, LLC*, 2014 WL 587173, at *5 (N.D. Cal. Feb. 14, 2014) (same).

### D. Claim Four Is Preempted Under 17 U.S.C. § 301 And Inadequately Pled.

PUBG's common law unfair competition claim fails both because PUBG has not alleged sufficient facts and because its claim is preempted by the Copyright Act.

A common law unfair competition claim "that is merely a disguised copyright claim will not overcome preemption [under 17 U.S.C. § 301.]" *Aquawood, LLC v. Toys "R" Us-Delaware, Inc.*, 2016 WL 10576620, at *3 (C.D. Cal. Mar. 10, 2016); *accord Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc.*, 170 F. Supp. 3d 1249, 1266-67 (C.D. Cal. 2016). That is exactly what PUBG does: claim unfair competition based on the alleged copying of an entire game—not a trademark. *See* SAC ¶138; *id.* ¶137 (incorporating by reference all copyright allegations). PUBG's repackaged copyright claim does not survive preemption, and it must be dismissed. *E.g., Helman v. Alcoa Glob. Fasteners, Inc.*, 637 F.3d 986, 988 (9th Cir. 2011) (affirming Rule 12(b)(6) dismissal on preemption grounds).

Alternatively, PUBG's claim must be dismissed because it fails to allege "the wrongful exploitation of trade names and common law trademarks." *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1263 (1992). Any argument by PUBG "that [its copyrighted work] is itself a collection of trademarks … is unconvincing." *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 596 (9th Cir. 2000). As PUBG has not alleged that NetEase is actually advertising its games under any name other than NetEase, its claim fails.

### VI. CONCLUSION

PUBG's complaint should be dismissed in its entirety. Because leave to amend would be futile, the dismissal should be with prejudice.

DATED: July 18, 2018

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By  /s/ Claude M. Stern
_____

Claude M. Stern (Bar No. 96737)
claudestern@quinnemanuel.com
Margret M. Caruso (Bar. No. 243473)
mmc@quinnemanuel.com
Mark Tung (Bar No. 245782)
marktung@quinnemanuel.com
Michael F. LaFond (Bar No. 303131)
michaellafond@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, California  94065
Telephone:     (650) 801-5000
Facsimile:       (650) 801-5100

*Attorneys for NetEase, Inc., NetEase Information*
*Technology Corporation, and Hong Kong*
*NetEase Interactive Entertainment Limited*