1  Steven S. Baik (SBN 184622)
   sbaik@sidley.com
2  Ryuk Park (SBN 298744)
   ryuk.park@sidley.com
3  SIDLEY AUSTIN LLP
   1001 Page Mill Road, Building 1
4  Palo Alto, CA 94304
   Telephone: +1 650 565 7074
5  Facsimile: +1 650 565 7100

6  Rollin A. Ransom (SBN 196126)
   rransom@sidley.com
7  SIDLEY AUSTIN LLP
   555 West Fifth Street
8  Los Angeles, CA 90013
   Telephone: +1 213 896 6047
9  Facsimile: +1 213 896 6600

10 Ketan V. Patel (*pro hac vice*)
   ketan.patel@sidley.com
11 SIDLEY AUSTIN LLP
   787 Seventh Avenue
12 New York, NY 10019
   Telephone: +1 212 839 5300
13 Facsimile: +1 650 839 5599

14 (Additional Counsel listed on signature page)

15 *Attorneys for Plaintiffs*
   *PUBG Corporation and PUBG Santa Monica, Inc.*

16

17                    UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19                                OAKLAND

20 | PUBG CORPORATION AND PUBG SANTA MONICA, INC., | Case No.  4:18-cv-02010-JSW |
21 |                                                | **PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS** |
22 |                     Plaintiffs,                |                             |
23 |                         v.                     | Assigned to: Hon. Jeffrey S. White |
24 | NETEASE, INC., NETEASE INFORMATION TECHNOLOGY CORPORATION, AND HONG KONG NETEASE INTERACTIVE ENTERTAINMENT LIMITED, | Date:   September 7, 2018<br>Time:   9:00 a.m.<br>Place:  Courtroom 5, 2nd Floor |
25 |                                                |                             |
26 |                     Defendants.                |                             |
27
28

# **TABLE OF CONTENTS**

**Page**

I.  STATEMENT OF ISSUES TO BE DECIDED ................................................................. vi

II. SUMMARY OF ARGUMENT ................................................................................ vii

III. ARGUMENT ................................................................................................. 1

    A.  PUBG Adequately Alleges Copyright Infringement. .................................. 1

        1.  The Court May Not Consider Extrinsic Materials on a Motion to Dismiss. ................................................................................ 2

        2.  Defendants Misstate and Misapply the Relevant Standard. ........................... 3

        3.  PUBG's Complaint Alleges Substantial Similarity of Protected Expression. ................................................................................ 4

            a.  Defendants Ignore Multiple Substantially Similar Elements. .............. 4

            b.  The Elements that Defendants Do Address Likewise Reflect Substantial Similarity of Protectable Creative Expression. ................. 6

            c.  The Alleged "Dissimilarities" Are Both Irrelevant and Incorrect. .... 10

        4.  Alternatively, PUBG Has Adequately Alleged Substantial Similarity of the Overall Selection, Arrangement, and Combination of Elements in BATTLEGROUNDS. ................................................................ 11

    B.  PUBG'S Trade Dress Claims Are Adequately Alleged. ........................................... 12

        1.  PUBG's Trade Dress Claim Does Not Invade the Copyright Act. ................ 12

        2.  PUBG Adequately Alleges the Protectability of Its Trade Dress. ................ 13

    C.  PUBG Adequately Alleges Statutory Unfair Competition. ....................................... 14

    D.  PUBG Adequately Alleges Common Law Unfair Competition. .............................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Acad. Games League of Am., Inc.,*
  89 F.3d 614 (9th Cir. 1996) ...........................................................................................7

*Am. Economy Ins. Co. v. Reboans, Inc.,*
  900 F. Supp. 1246 (N.D. Cal. 1994) .............................................................................15

*AngioScore, Inc. v. TriReme Med., LLC,*
  70 F. Supp. 3d 951 (N.D. Cal. 2014) ............................................................................15

*Apple Computer, Inc. v. Microsoft Corp.,*
  35 F.3d 1435 (9th Cir. 1994) ........................................................................................11

*Aquawood, LLC v. Toys "R" Us-Delaware, Inc.,*
  2016 WL 10576620 (C.D. Cal. Mar. 10, 2016)............................................................15

*Atl. Rec. Corp. v. Serrano,*
  2007 WL 4612921 (S.D. Cal. Dec. 28, 2007)................................................................1

*Capcom USA, Inc. v. Data East Corp.,*
  1994 WL 1751482 (N.D. Cal. March 16, 1994)..................................................3, 4, 7, 8

*Capcom Co. v. MKR Grp., Inc.,*
  2008 WL 4661479 (N.D. Cal. Oct. 20, 2008)................................................................7

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*
  20 Cal. 4th 163 (1999) ..................................................................................................14

*Craigslist Inc. v. 3Taps Inc.,*
  942 F. Supp. 2d 962 (N.D. Cal. 2013) ..........................................................................13

*Dahl v. Toyota Motor Sales USA, Inc.,*
  2015 WL 1034342 (D. Nev. Mar. 10, 2015) ..................................................................2

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
  539 U.S. 23 (2003)............................................................................................. vii, 12, 13

*Deckers Outdoor Corp. v. J.C. Penney Co.,*
  45 F. Supp. 3d 1181 (C.D. Cal. 2014) ..........................................................................13

*Diamond Foods v. Hottrix, LLC,*
  2016 WL 3880797 (N.D. Cal. Jul. 18, 2016).................................................................14

*DocMagic, Inc. v. Ellie Mae, Inc.,*
  745 F. Supp. 2d 1119 (N.D. Cal. 2010) .........................................................................13

*EKB Textiles, Inc. v. Target Corp.*,
    2011 WL 13085924 (C.D. Cal. June 21, 2011) ..............................................................5

*English & Sons, Inc. v. Straw Hat Restaurants Inc.*,
    2015 WL 4314364 (N.D. Cal. Jul. 15, 2015) ................................................................14

*First Brands Corp. v. Fred Meyer, Inc.*,
    809 F.2d 1378 (9th Cir. 1987) .....................................................................................15

*Fitbug Ltd. v. Fitbit, Inc.*,
    78 F. Supp. 3d 1180 (N.D. Cal. 2015) ..........................................................................15

*French W., Inc. v. Macy's Inc.*,
    2013 WL 12133844 (C.D. Cal. Jan. 29, 2013) ................................................................3

*Frybarger v. Int'l Bus. Machines Corp.*,
    812 F.2d 525 (9th Cir. 1987) .....................................................................................3, 4

*Gilligan v. Jamco Dev. Corp.*,
    108 F. 3d 246 (9th Cir. 1997) ........................................................................................1

*Heartland Payment Sys., Inc. v. Mercury Payment Systems, LLC*,
    2015 WL 3377662 (N.D. Cal. Feb. 24, 2015) ..............................................................15

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002) .................................................................................................14

*LA Printex Indus. v. Aeropostale, Inc.*,
    676 F.3d 841 (9th Cir. 2012) ...................................................................................2, 10

*Law Offices of Mathew Higbee v. Expungement Assistance Servs.*,
    214 Cal. App. 4th 544 (2013) ......................................................................................15

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) .................................................................................. vii, 2

*Luxul Tech. Inc. v. Nectarlux, LLC*,
    78 F. Supp. 3d 1156 (N.D. Cal. 2015) ..........................................................................14

*Mercado Latino, Inc. v. Indio Products, Inc.*,
    2017 WL 1356315 (C.D. Cal. Apr. 11, 2017) ..............................................................14

*Metcalf v. Bochco*,
    294 F.3d 1069 (9th Cir. 2002) ........................................................................ vii, 1, 5, 11

*Morton & Bassett, LLC v. Organic Spices, Inc.*,
    2017 WL 1425908 (N.D. Cal. Apr. 21, 2017) ..............................................................14

*In re Network Equip. Techs., Inc., Litig.*,
    762 F. Supp. 1359 (N.D. Cal. 1991) ....................................................................... vii, 2

iii

*O'Connor v. Uber Techs., Inc.,*
  58 F. Supp. 3d 989 (N.D. Cal. 2014) ...............................................15

*OHC Group LLC v. Blip, LLC,*
  2010 WL 1151227 (C.D. Cal. Jun. 7, 2010) ......................................14

*Openwave Messaging, Inc. v. Open-Xchange, Inc.,*
  2016 WL 6393503 (N.D. Cal. Oct. 28, 2016).....................................15

*People v. E.W.A.P., Inc.*
  106 Cal. App. 3d 315 (1980) .............................................................14

*Rentmeester v. Nike Inc.,*
  883 F.3d 1111 (9th Cir. 2018) .............................................................1

*Salt Optics, Inc. v. Jand, Inc.,*
  2011 WL 13055856 (C.D. Cal. 2011)..................................................13

*Sambonet Paderno Industrie, S.P.A. v. Sur La Table, Inc.,*
  2015 WL 4498795 (C.D. Cal. Jul. 23, 2015) .......................................13

*Satava v. Lowry,*
  323 F.3d 805 (9th Cir. 2003) .........................................................4, 11

*Shaw v. Lindheim,*
  919 F.2d 1353 (9th Cir. 1990) .................................................2, 12, 13

*Sheldon v. MGM Pictures Corp.,*
  81 F.2d 49 (2d Cir. 1936) ...................................................................10

*Silas v. Home Box Office, Inc.,*
  2016 WL 4251599 (C.D. Cal. July 25, 2016).......................................2

*Spry Fox LLC v. LOLApps Inc.,*
  2012 WL 5290158 (W.D. Wash. Sep. 18, 2012)........................ *passim*

*Swirsky v. Carey,*
  376 F.3d 841 (9th Cir. 2004) ...................................................1, 3, 4, 11

*Touchpoint Comms., LLC v. Dentalfone, LLC,*
  2015 WL 5918400 (W.D. Wash. Oct. 9, 2015) ...................................12

*Williams v. Cavalli,*
  2015 WL 1247065 (C.D. Cal. Feb. 12, 2015)........................ vii, 12, 13

*Zella v. E.W. Scripps Co.,*
  529 F. Supp. 2d 1124 (C.D. Cal. 2007) ................................................7

**Statutes**

15 U.S.C. § 43(a) ..........................................................................................................................12, 15

Cal. Bus. & Prof. Code § 17200 .....................................................................................................14

Fed. R. Civ. Proc. 12(b)(6) ..........................................................................................................1, 2

I.      **STATEMENT OF ISSUES TO BE DECIDED**

1.      Does PUBG's Second Amended Complaint ("SAC") state a claim for copyright infringement where the SAC includes numerous allegations of substantial similarity of protectable expressive elements, and where Defendants' motion to dismiss (i) relies on evidence not properly considered on a MTD or judicially noticeable, (ii) mischaracterizes and misapplies copyright law, and (iii) offers no response whatsoever to several allegations of substantial similarity?

2.      Does the SAC state a claim for trade dress infringement where it is based upon a "passing off" theory and is therefore distinct from PUBG's claim under the Copyright Act?

3.      Does the SAC state a claim for statutory unfair competition where the allegations of injury plainly satisfy UCL standing and underlying violations of law, unfair practices, and fraudulent practices are adequately alleged?

4.      Does the SAC state a claim for common law unfair competition where it is premised on a viable trade dress infringement claim and thus not preempted by the Copyright Act?

1

## II.     SUMMARY OF ARGUMENT

2          Defendants' attack on PUBG's complaint is baseless.  PUBG is not seeking "to monopolize

3   the popular 'battle royale' genre of video games," Defs.' Mem. at 1:2-3 – instead, it seeks to protect

4   its *creative* expression of *unique* and *distinctive* elements within its BATTLEGROUNDS game.

5   Those distinctive and protectable elements have been blatantly copied by Defendants in not one, but

6   two, competing games.  Copyright law protects both these individual elements and the overall

7   selection and combination of these elements against such flagrant misappropriation.

8          Defendants' motion to dismiss PUBG's copyright infringement claim fails because it

9   depends entirely upon material that is outside the scope of the complaint and not subject to judicial

10  notice.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *In re Network Equip. Techs.,*

11  *Inc., Litig.*, 762 F. Supp. 1359, 1363 (N.D. Cal. 1991) ("The Court should not use judicial notice to

12  generate an evidentiary record and then weigh evidence…to dismiss plaintiffs' complaint.").

13  Defendants' motion fails on the merits as well, because PUBG's SAC more than amply alleges that

14  each of the numerous BATTLEGROUNDS elements identified in the SAC are protectable "specific

15  details of an author's rendering of ideas."  *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002);

16  *Spry Fox LLC v. LOLApps Inc.*, 2012 WL 5290158, at *5 (W.D. Wash. Sep. 18, 2012).  Defendants

17  conveniently, and fatally, ignore the SAC's identification of several protectable features that are

18  substantially similar in RoS and KO, and their attempted reliance on alleged differences between the

19  works is both improper (as many were created after PUBG initiated this lawsuit) and irrelevant (as

20  copyright infringement is evaluated based on substantial similarity, not on ancillary differences).

21         Defendants' motion to dismiss PUBG's Lanham Act claim fails because it is based upon a

22  misinterpretation of *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), which

23  does not apply to allegations (like those here) of "passing off," *see, e.g.*, *Williams v. Cavalli*, 2015

24  WL 1247065, at *5 (C.D. Cal. Feb. 12, 2015), and because PUBG adequately alleges the

25  protectability of its trade dress.  And finally, Defendants' motion as to PUBG's statutory and

26  common law unfair competition claims fails because their arguments rely entirely on their ability to

27  defeat the Lanham Act claim, which as set forth herein, clearly survives Defendants' challenge.

28

1    III.    ARGUMENT

2            Dismissal of a claim under Rule 12(b)(6) is proper only in "extraordinary" cases. *Atl. Rec.*

3    *Corp. v. Serrano*, 2007 WL 4612921, at 2 (S.D. Cal. Dec. 28, 2007) (citing *U.S. v. Redwood City*,

4    640 F.2d 963, 966 (9th Cir. 1981)); *Gilligan v. Jamco Dev. Corp.*, 108 F. 3d 246, 249 (9th Cir. 1997)

5    (motions to dismiss are "viewed with disfavor" and are to be granted rarely).  The court must

6    "assume the truth of all of the complaint's factual allegations and credit all reasonable inferences

7    arising from its allegations." *Spry Fox LLC v. LOLApps Inc.*, 2012 WL 5290158, at *2 (W.D. Wash.

8    Sept. 18. 2012).  When a plaintiff alleges facts sufficient to state a claim, "its complaint survives

9    dismissal as long as there is 'any set of facts consistent with the allegations in the complaint' that

10   would entitle the plaintiff to relief."  *Id.* at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568

11   (2007), and *Ashcroft v. Iqbal*, 550 U.S. 662, 679 (2009)).

12   **A.    PUBG Adequately Alleges Copyright Infringement.**

13           To state a claim for copyright infringement, a plaintiff must allege (1) that it owns the

14   copyright in a particular work, and (2) that defendant copied original elements in the work.  *Metcalf*

15   *v. Bochco*, 294 F. 3d 1069, 1072 (9th Cir. 2002).  Copying may be established by showing that

16   defendant had access to the copyrighted work and that there is substantial similarity between the two

17   works. *Id.*  To determine whether two works are substantially similar, the Ninth Circuit applies a

18   two-part analysis: "an objective extrinsic test and a subjective intrinsic test."  *Swirsky v. Carey*, 376

19   F.3d 841, 845 (9th Cir. 2004). "The extrinsic test considers whether two works share a similarity of

20   ideas and expression as measured by external, objective criteria." *Id.* The intrinsic test then considers

21   whether "subjectively[,] the ordinary, reasonable person would find the total concept and feel of the

22   [two works] to be substantially similar." *Id.* at 847.  "Only the extrinsic test's application may be

23   decided by the court as a matter of law, so that is the only test relevant…on a motion to dismiss."

24   *Rentmeester v. Nike Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018) (citation omitted).

25           Here, the only question raised by Defendants' motion to dismiss is whether PUBG has

26   adequately alleged substantial similarity between BATTLEGROUNDS and Defendants' video

27   games Rules of Survival ("RoS") and Knives Out ("KO").  However, the Ninth Circuit has warned

28   that a dismissal is "not highly favored on questions of substantial similarity in copyright cases."

*Shaw v. Lindheim*, 919 F.2d 1353, 1355 (9th Cir. 1990).  Thus, Defendants' motion to dismiss must be denied if PUBG's complaint identifies ***any*** set of "articulable similarities" between "specific expressive elements" of works.  *LA Printex Indus. v. Aeropostale, Inc.*, 676 F.3d 841, 848 (9th Cir. 2012).  PUBG's complaint readily meets this standard.

      1.    The Court May Not Consider Extrinsic Materials on a Motion to Dismiss.

      Defendants' motion fails before it even begins, because it depends entirely upon material outside the scope of the complaint.  Courts generally "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  Defendants seek to avoid this limitation by asking that the Court take judicial notice of extrinsic materials submitted with the LaFond Declaration.  While materials that are *properly* subject to judicial notice fall within a narrow exception to the above rule, a court must proceed with caution:

> The Court should not use judicial notice to generate an evidentiary record and then weigh evidence – which plaintiffs have not had the opportunity to challenge – to dismiss plaintiffs' complaint. While defendants' arguments on the facts may ultimately prevail upon a motion for summary judgment or at trial, they do not create a basis for dismissing plaintiffs' complaint.

*In re Network Equip. Techs., Inc., Litig.*, 762 F. Supp. 1359, 1363 (N.D. Cal. 1991).  This warning is particularly apt here.  As set forth in PUBG's Opposition to Defendants' Request for Judicial Notice (the "RJN Opp."), and incorporated herein by reference, most of the materials proffered by Defendants are not properly subject to judicial notice, and therefore cannot be considered in connection with Defendants' motion.

      For example, Defendants proffer several third-party articles that Defendants contend set forth the "elements" of the relatively new "battle royale genre."  *See* Defs.' RJN, 1:16–24, 5:14–6:13; LaFond Decl. Exs. 6–9.  Defendants then rely upon these extrinsic materials in an effort to define a "genre" and to "filter out" numerous similar elements that Defendants claim are "common" elements of such a "genre."  *See, e.g.*, Defs.' Mem., 5:10–15, 7:16–8:3.  Defendants' reliance on these materials is improper and must be rejected.  *See, e.g.*, *Silas v. Home Box Office, Inc.*, 2016 WL 4251599, at *6–7 (C.D. Cal. July 25, 2016) (alleged "elements common to prior works" not properly subject to judicial notice); *Dahl v. Toyota Motor Sales USA, Inc.*, 2015 WL 1034342, at *3 (D. Nev. Mar. 10, 2015) (refusing to take judicial notice of allegedly common storyline:  website contents "do

2

1    not conclusively establish that the storyline...is common and prevalent") (internal quotations

2    omitted); *French W., Inc. v. Macy's Inc.*, 2013 WL 12133844, at *2 (C.D. Cal. Jan. 29, 2013)

3    (denying motion to dismiss where "threshold understanding of what elements are 'stock' and

4    therefore unprotectable…[requires] further development of the record to inform us of the scope"); *cf.*

5    *Frybarger v. Int'l Bus. Machines Corp.*, 812 F.2d 525, 527–28 (9th Cir. 1987) (considering "several

6    affidavits from videogame, programming, and software experts submitted by each side" on summary

7    judgment before addressing scope of copyright protection in videogame elements).

8         Defendants also ask that the Court take judicial notice of the *current* versions of RoS and

9    KO, and of videos and screenshots of gameplay from those current releases.  RJN, 1:7–14, 4:17–23,

10   8:11–17; LaFond Decl. Exs. 3–5, 16–21.  Defendants then rely upon these materials in an effort to

11   establish differences between the parties' respective games.  Defs.' Mem., 9:11–11:2.  While the

12   Court may take judicial notice of works referenced in a complaint, the materials submitted with the

13   RJN *differ from the versions referenced in the complaint*.  As set forth in greater detail in the RJN

14   Opp., since PUBG filed its complaint, Defendants have made changes to both games in an effort to

15   create alleged dissimilarities that did not exist at the time of PUBG's original filing.  RJN Opp. at 6–

16   7.  Whatever the bounds of the "incorporation by reference" doctrine, it does not extend to works

17   that were changed relative to versions depicted in the complaint, solely to fabricate dissimilarities.

18        Once the Court disregards the material improperly submitted in connection with the RJN,

19   Defendants' motion is left empty.  The motion should be denied for that reason alone.

20        2.     Defendants Misstate and Misapply the Relevant Standard.

21        Defendants also mischaracterize and misapply relevant principles of copyright law.

22   Defendants appear to contend that whenever "two works in the same genre" are to be compared, a

23   plaintiff must show not just substantial similarity, "but the higher standard of 'virtual identity.'"

24   Defs.' Mem., 8:5–7.  This is wrong.  The "substantial similarity" test is *de riguere* in copyright

25   infringement analysis, including when two works in the same genre are evaluated.  *See, e.g.*,

26   *Swirsky*, 376 F.3d at 843–44 (using substantial similarity test in evaluating "alleged similarity

27   between the choruses of two popular and contemporary rhythm and blues ('R&B') songs").

28        Although Defendants rely on *Capcom USA, Inc. v. Data East Corp.*, 1994 WL 1751482

1    (N.D. Cal. March 16, 1994) ("*Capcom I*"), that case invoked the "virtual identity" standard solely in

2    connection with the "intrinsic test," in considering a motion for preliminary injunction. *Id.* at *13.

3    However, the "intrinsic test" plays no role on a motion to dismiss, *Swirsky*, 376 F.3d at 845, and

4    *Capcom I* is therefore inapposite. Moreover, *Capcom I* recognized that the "virtual identity"

5    standard is relevant only "[w]here the alleged similarities in a plaintiff's work consists primarily of

6    elements that are unprotectable, or are capable of only a narrow range of expression." 1994 WL

7    1751482, at *13. The same is true of Defendants' other cases. *See Satava v. Lowry*, 323 F.3d 805,

8    812–13 (9th Cir. 2003) (because the range of expression of animals is narrow, requiring virtual

9    identity for infringement of jellyfish sculpture in preliminary injunction analysis, but that numerous

10   elements, including "the pose, attitude, gesture, muscle structure, facial expression, coat, or texture

11   of animal" could be protectable); *Frybarger*, 812 F.2d 525, 527, 529–30 (9th Cir. 1987) (on

12   summary judgment, invoking "virtual identity" standard only as to the "*indispensable* expression of

13   [] ideas, based on the technical requirements of the videogame medium") (emphasis in original).

14          These principles have no application here. As discussed further below, as to each of the

15   numerous elements identified in the complaint, there was a wide range of expression from which to

16   choose. The choices made by PUBG – and copied by Defendants in RoS and KO – were not

17   dictated by "technical requirements of the videogame medium," or by the merger of "idea" into

18   "expression," or by *scenes a faire* that necessarily flow from the alleged "battle royale genre," or by

19   any other utilitarian or mechanical consideration. Instead, as the SAC alleges, the elements in

20   BATTLEGROUNDS was driven by creative, original considerations, PUBG's expressions of which

21   are entitled to the full extent of copyright protection. *Spry Fox*, 2012 WL 5290158, at *5

22          3.    PUBG's Complaint Alleges Substantial Similarity of Protected Expression.

23                a.    *Defendants Ignore Multiple Substantially Similar Elements.*

24          Defendants' motion conveniently omits any discussion of most of the substantially similar

25   elements of BATTLEGROUNDS that are identified in the SAC. Even a cursory review of those

26   elements demonstrates the baselessness of Defendants' motion. To take just one example,

27   Defendants have simply copied multiple buildings depicted in BATTLEGROUNDS and

28   incorporated them into RoS and/or KO. Examples from the complaint (and ignored by Defendants)

4

1    appear below.  In the first, the buildings have an octagonal shape and identical point of access

2    directly to the second floor via a unique stairway to the right of the building.  In the second, the

3    buildings have identical shapes, structure, and door placement.  While there are modest differences

4    (*e.g.*, in color), these "minor differences serve only to emphasize the extent to which a defendant has

5    deliberately copied."  *EKB Textiles, Inc. v. Target Corp.*, 2011 WL 13085924, at *3 (C.D. Cal. June

6    21, 2011).  More importantly, and contrary to Defendants' claim, there is *nothing* about the "game

7    mechanics," "rules," or "genre" that required PUBG to adopt these particular building formations, or

8    that required Defendants to copy them.  Instead, they constitute protectable expression because they

9    are "specific details of an author's rendering of ideas." *Metcalf v.* Bochco, 294 F.3d 1069, 1074 (9th

10   Cir. 2002); (SAC ¶¶ 63–64, 94–95):



BATTLEGROUNDS



Knives Out



BATTLEGROUNDS



Rules of Survival

Another feature copied by Defendants in their games, identified by PUBG in its complaint,

and ignored by Defendants in their motion, is the frying pan weapon/"butt armor."  *See* SAC ¶ 73.

There is no way to characterize the frying pan as "indispensable" to the idea of last-man-standing

games, and no reason – other than by copying – that it would appear in Defendants' game, in the

5

1  same essential form and with the same qualities (including as posterior armor when not in use):

   

*BATTLEGROUNDS*          *Rules of Survival*          *BATTLEGROUNDS*          *Rules of Survival*

Numerous other discretionary creative elements appear in BATTLEGROUNDS, are copied in RoS and/or KO, are alleged in the complaint, and are ignored by Defendants.  These include multiple elements in the game environment, such as (among many others in the complaint):

- the shape and nature of the play map ("a large island in a square-ish shape with a canal leading to a large city, along with a smaller unconnected island") (SAC ¶¶ 62, 93);
- scenes and locations in the play area, including rural aqueducts, shipping containers, and water cooling towers that players parachute over when transporting into the play space (SAC ¶¶ 63, 94), and numerous physical venues in the play area, including a shooting range, ruins, roof decks, and observation towers (SAC ¶¶ 63–64, 94–95).

PUBG's choices of buildings and surroundings constitute "protectable expressive elements."  *Spry Fox*, 2012 WL 5290158, at *5.  As the *Spry Fox* court noted:

> Spry Fox expressed the idea underlying Triple Town in its own way.  It chose an object hierarchy that progresses from grass to bushes to trees to houses and beyond.  It chose a bear as the antagonist object and a 'bot' as the object with the power to destroy others.  It chose its own visual depiction of each of these objects.  It placed all of these objects on a field of play that resembles a field or meadow.  These are protectable expressive elements….  These objective elements of expression are within the scope of Spry Fox's copyright.

*Id.*  The same analysis applies with equal force here.

> b.    *The Elements that Defendants Do Address Likewise Reflect Substantial Similarity of Protectable Creative Expression.*

PUBG's protectable expression (and Defendants' infringement of it) is not limited to the elements that Defendants have ignored.  On the contrary, as discussed further below, *every one* of

6

1   the elements identified by Defendants likewise includes protectable expression copied by

2   Defendants.  These numerous similarities (and the many others alleged in the complaint) render the

3   cases upon which Defendants rely readily distinguishable; the number and nature of similarities in

4   those cases (even as described by Defendants) is dwarfed by those in BATTLEGROUNDS and RoS

5   and KO.  *Cf.* Defs.' Mem. at 3:28–4:18 (citing *Capcom Co. v. MKR Grp., Inc.*, 2008 WL 4661479

6   (N.D. Cal. Oct. 20, 2008), and *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124 (C.D. Cal. 2007)).

7   **Character Attributes.**  The energy boost bar and health status features in

8   BATTLEGROUNDS are not unprotectable "mechanics that flow from the idea of forcing players to

9   kill each other."  Defs.' Mem. at 5:18–19.  Instead, they reflect protectable expression that

10  Defendants copied.  Defendants cite *Capcom I* in support of their argument, but that case addressed a

11  more generic and "commonplace" allegation that "tracking a fighter's vitality" was copied.  *Capcom*

12  *I*, 1994 WL 1751482, at *7–8.  Here, as the SAC alleges, Defendants have copied a more specific

13  and unique expression of the idea of health status and energy from BATTLEGROUNDS.  *See* SAC

14  ¶ 60 ("ROS includes a health (hit points) bar with symbols located over it: a heart with a plus

15  symbol, which indicates regeneration, and a running symbol indicating increased speed, very similar

16  to BATTLEGROUNDS' boost bar.").  Defendants have likewise copied the features of the boost

17  items themselves, both in type (energy drink and syringe), effect (energy drink=hit points+speed;

18  syringe=health+speed), and source (syringe is available only via air drop).  *Id.*[1]

19  **Pre-Game Lobby and Waiting Area.**  Defendants contend that BATTLEGROUNDS'

20  lobby and waiting area is a "feature[] that exist[s] to teach players the rules of the game," but PUBG

21  has alleged that the pre-game lobby and waiting area serve multiple purposes and thus are

22  necessarily "[]distinguishable from the idea of the rules themselves."  *Cf.* Defs.' Mem. at 6:5–6.  The

23  pre-game lobby is unique because, while it may allow players to practice the controls, it serves a

24  distinct purpose of allowing and encouraging players to "talk to and interact with each other, practice

25  firing their weapon, and roam around the scene."  SAC ¶ 26.  *See Allen v. Acad. Games League of*

26  ───────────────
    [1] Similarly, the "Down But Not Out" element (Defs. Mem. at 5:22) reflects a unique and protectable
27  expression. Far from merging with the idea of "forcing players to kill each other," this feature allows
    players to *save* teammates that have been killed by crouching next to the fallen player for a pre-
    determined period of time.  *See* SAC ¶ 49.  In fact, this expression actually runs counter to the
28  general "last player standing" theme, where each player's death is final and irreversible.

7

1   *Am., Inc.*, 89 F.3d 614, 618 (9th Cir. 1996) (recognizing that copyright protection is warranted where

2   "it is possible to distinguish the expression of the rules…from the idea of the rules themselves").  In

3   short, the pre-play lobby reflects creative and expressive choices that are entirely distinct from the

4   idea of any particular rule in the game, and that Defendants directly copied (SAC ¶¶ 61, 92).

5   **Air Jump.**  Defendants assert that "[i]nherent in dropping players on an island …is a means

6   of accomplishing the drop."  Defs.' Mem. at 6:9–10.  However, Defendants' argument starts from a

7   false premise – there is nothing "inherent" in the nature of "battle royale" games that requires

8   "dropping players on an island."  On the contrary, the SAC alleges that there are various ways in

9   which players may appear in a "battle royale" game:

10          In other shooter games, players "spawn" or just appear on the game play map in
            either a pre-designated or random location.  Rather than the typical spawning
11          mechanic, BATTLEGROUNDS has created an interactive approach that allows the
            player to choose where to begin play on the game play map.
12
    SAC ¶ 27.   In other words, "dropping players on an island" – particularly in a manner that allows
13
    the *player* control over where she or he lands – constitutes PUBG's unique and protectable
14
    expression of this element.  *See, e.g., Capcom I*, 1994 WL 1751482, at *7–8 (recognizing that where
15
    "other ways of expressing the same idea were available to competitors," a copyright owner is
16
    "entitled to have its particular expression protected").  These allegations must be taken as true.
17
        **Equipment Acquisition/Weapon, Vehicle, and Equipment Spawning.**  Defendants' claim
18
    that "start with nothing" is a "[b]asic rule[]" is both unsupported (the case they cite says nothing of
19
    the sort) and impermissibly contradicts the SAC's allegation that "starting with nothing" and "mix of
20
    random[] and fixed spawn locations" constitute PUBG's unique expression. (SAC ¶¶ 30, 42).
21
        **Air Drops/Bombardment/Shrinking Gameplay.**  Defendants reference "Air Drops," but do
22
    not discuss that feature.  As depicted in the complaint (SAC ¶¶ 78, 109), and reprinted below, PUBG
23
    elected to have its supplies dropped in a large square crate, with a tarp covering the top portion and
24
    straps securing the tarp; once it lands, a plume of red smoke reflects its location.  None of those
25
    expressive elements is required by the "idea" of a supply mechanism (it could be a barrel, a bag, or a
26
    shapeless bundle; it could be pre-existing, delivered by truck, or simply spawn; it could be marked
27

28

by a mylar balloon or an audio signal); *all* of them were copied by Defendants in *both* games.

 

BATTLEGROUNDS

 

Rules of Survival

 

Knives Out

Defendants also misapply the idea/expression dichotomy with respect to "shrinking gameplay." While Defendants contend that the genre "requires game mechanics to drive players together," Defs.' Mem. at 6:18–19, there is nothing inherent in that idea that requires that players be driven together by a shrinking white circle superimposed on the gameplay map (SAC ¶¶ 78–80, 109–111), as opposed to some other mechanism (*e.g.*, a gradually expanding radioactive storm, to take one example). It is BATTLEGROUNDS' unique and particular approach to forcing players together that is protectable, and which Defendants copied in RoS and KO.

**Weapons/Vehicles/Consumables/Clothing/Equipment/Configuration.** Defendants claim that these elements constitute *scenes a faire*, but ignore the SAC's allegations that identify unique,

1   creative choices that PUBG made respecting these elements, which Defendants then flagrantly

2   copied.  *See, e.g.*, SAC ¶ 69 ("cheek pads" as attachments to weapons and with the "exact same

3   position" of the adjustments "despite the fact that this type of cheek pad is highly uncommon");

4   *supra* § III.A.3.a (discussing frying pan weapon/butt armor); *see generally* SAC ¶¶ 67–71, 98–102.

5        **"Winner Winner Chicken Dinner."**  While short phrases may not be independently

6   copyrightable, Defendants' copying of that phrase – uniquely associated with Defendants (SAC

7   ¶ 50) – is relevant to the infringement analysis, as it clearly reflects that Defendants were *copying*

8   BATTLEGROUNDS.  *See Spry Fox*, 2012 WL 5290158, at *6 ( "It is at least plausible to infer that

9   6Waves chose the title 'Yeti Town' because it was copying 'Triple Town,' and the trier of fact can

10   consider this inference as it considers the similarity between the two games.").

11        In sum, both as to elements that Defendants addressed and those that they ignored, the SAC

12   is replete with allegations reflecting protectable expression – choices that PUBG made from a wide

13   array of options, and that Defendants copied.  The SAC states a claim for copyright infringement.

14              *c.      The Alleged "Dissimilarities" Are Both Irrelevant and Incorrect.*

15        Defendants' argument that differences between the parties' respective games supports

16   dismissal (Defs.' Mem. at 9:11–10:27) fails for at least three reasons.  First, it is entirely based upon

17   extrinsic materials that should not even be considered on a motion to dismiss.  *See supra* § III.A.1.

18        Second, the argument is irrelevant.  It is well established that copyright infringement is based

19   on similarities between works; differences provide no defense.  *See, e.g.*, *L.A. Printex Indus.*, 676

20   F.3d at 851 (noting that "[i]t is entirely immaterial that, in many respects, plaintiff's and defendant's

21   works are dissimilar, if in other respects, similarity as to a substantial element of plaintiff's work can

22   be shown").  As Learned Hand wrote, "no plagiarist can excuse the wrong by showing how much of

23   his work he did not pirate."  *Sheldon v. MGM Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936).

24        Finally, many of Defendants' claimed "dissimilarities" are a fallacy, strategically inserted by

25   Defendants *after* this lawsuit was filed, in a clear attempt to mask Defendants' blatant infringement.

26   As set forth in greater detail in the RJN Opp. and incorporated herein, elements that Defendants

27   added *after* the original complaint was filed in this action are now cited as "dissimilarities" allegedly

28   relating to the "mood, themes, and settings" (including addition of snow and lavender color), "air

jumps" (including addition of helicopters), "real-world weapons" (including addition of multiple weapons), and "fanciful expression" (including addition of new clothing, "Damascus Knife," and "science fiction-esque guns").  *See* RJN Opp. at 4, 6.  Defendants cannot escape liability for infringement by creating differences after they've been caught.

        4.    <u>Alternatively, PUBG Has Adequately Alleged Substantial Similarity of the Overall Selection, Arrangement, and Combination of Elements in BATTLEGROUNDS.</u>

      For the reasons discussed above, PUBG has more than adequately alleged substantial similarity between protectable elements in BATTLEGROUNDS and parallel elements in RoS and KO.  But even if the court were to find that the common elements are not protectable, Defendants' motion to dismiss must be denied.  Courts have repeatedly held that the selection, arrangement and combination of *even unprotectable* elements may be protectable when taken as a whole.  *See, e.g.*, *Swirsky*, 376 F.3d at 848 ("substantial similarity can be found in a combination of elements, even if those elements are individually unprotected").

      In *Metcalf v. Bochco*, 294 F.3d 1069 (9th Cir. 2002), the Ninth Circuit reversed summary judgment, finding a triable issue of fact as to whether a script for a television show was substantially similar to the plaintiff's work, even though the individual elements were unprotectable:

> [T]he similarities proffered by the Metcalfs are not protectable when considered individually; they are either too generic or constitute "scenes a faire."… However, the presence of so many generic similarities and the common patterns in which they arise do help satisfy the extrinsic test. The particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element.

*Id.* at 1074.  The same principle is articulated (but ignored by Defendants) in cases that Defendants cite.  *See, e.g.*, *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1445 (9th Cir. 1994) (stating that "original selection and arrangement of otherwise uncopyrightable components may be protectable"); *Satava*, 323 F.3d at 811 (9th Cir. 2003) (noting that "a *combination* of unprotectable elements may qualify for copyright protection") (emphasis in original).[2]

      This standard is readily satisfied here.  The complaint contains literally dozens of similarities

---

[2] This fact renders irrelevant Defendants' reliance on various weapons patents.  Defs.' Mem. at 8:19–9:4.  Even if the individual weapon design is not protected by copyright, the selection and combination of *dozens* of weapons, accessories, helmets, and other armor (SAC ¶¶ 67–74, 98–105), *as well as* unique qualities and characteristics associated with them (*e.g.*, SAC ¶¶ 72, 103 (same three "levels" of armor in each game)), that Defendants elected to copy is protectable under copyright.

between BATTLEGROUNDS and RoS and KO.  *See* SAC ¶¶ 51–81 (RoS); ¶¶ 83–111 (KO).  The similarities commence at the outset of the game, and continue unabated through its conclusion, covering elements both large and small.  Even if the individual elements are unprotectable, PUBG's selection, arrangement, and combination of those elements qualifies for copyright protection.

**B.     PUBG'S Trade Dress Claims Are Adequately Alleged.**

1.     PUBG's Trade Dress Claim Does Not Invade the Copyright Act.

Defendants claim that PUBG's Lanham Act claim is precluded by the Copyright Act, relying principally upon *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), and *Touchpoint Comms., LLC v. Dentalfone, LLC*, 2015 WL 5918400 (W.D. Wash. Oct. 9, 2015), which relies on *Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir. 1990).  However, these cases are inapplicable.

In *Dastar*, Dastar copied and edited a television series that had been broadcast by Fox, but which had fallen into the public domain; Dastar then sold the program on videotape as its own product.  *Dastar*, 539 U.S. at 27.  Fox claimed that sale of the videos "without proper credit" to the original series constituted "reverse passing off" in violation of the Lanham Act (*i.e.*, when "the producer misrepresents someone else's goods or services as his own").  *Id.* at 28.  The Court held that, in reverse passing off cases, the phrase "origin of goods" in section 43(a) of the Lanham Act refers to the producer of goods, not the author of the content.  *Id.* at 37.  The Court therefore rejected Fox's claim, explaining that allowing a Lanham Act claim for copying without attribution would "create[] a species of perpetual patent and copyright, which Congress may not do."  *Id.*

However, district courts in California have narrowly construed *Dastar* (and its predecessor, *Shaw*), applying them only to "reverse passing off" cases, and not to "passing off" cases (*i.e.*, when a producer misrepresents his own goods or services as someone else's).  For example, in *Williams v. Cavalli*, 2015 WL 1247065 (C.D. Cal. Feb. 12, 2015), defendants had placed imagery from plaintiffs' mural on a collection of their clothing.  *Id.* at *1.  In addition to asserting a copyright infringement claim, one of the plaintiffs alleged that defendants' "use of his…imagery created the 'false and deceptive impression that [defendants' clothes] are associated with and/or manufactured by…Plaintiffs,'" and sought relief under the Lanham Act.  *Id.* at *5.  The court found that because the plaintiff was asserting "passing off," rather than "reverse passing off," his claim was beyond the

1   reach of *Dastar* and could co-exist with plaintiffs' copyright infringement claim.  *Id.*; *see also*

2   *Sambonet Paderno Industrie, S.P.A. v. Sur La Table, Inc.*, 2015 WL 4498795, *5 (C.D. Cal. Jul. 23,

3   2015) (same).  In short, "a regular 'passing off' claim[] does not raise the 'perpetual patent and

4   copyright' concerns that the Supreme Court identified in *Dastar*." *Craigslist Inc. v. 3Taps Inc.*, 942

5   F. Supp. 2d 962, 978 (N.D. Cal. 2013).[3]

6       Here, PUBG alleges a "passing off" claim: the SAC alleges that Defendants' ROS and KO

7   games are likely to cause customer confusion as to the origin of Defendants' ROS and KO games,

8   "including whether they were developed by PUBG, are associated with PUBG or PUBG's

9   BATTLEGROUNDS game or were sponsored and/or approved by PUBG." (SAC ¶ 128.).  Thus,

10   Plaintiffs' Lanham Act claims are not precluded by the ruling in *Dastar* or the Copyright Act.[4]

11       2.   <u>PUBG Adequately Alleges the Protectability of Its Trade Dress.</u>

12       Defendants assert that PUBG has not adequately alleged that its trade dress is non-functional.

13   This argument fails both legally and factually.  As a legal matter, "the question of whether

14   [plaintiff's] trade dress is functional or nonfunctional is a factual one that cannot be resolved on a

15   motion to dismiss." *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1141 (N.D. Cal. 2010)

16   (citing *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1258 (9th Cir.2001)).

17       As a factual matter, PUBG *has* pled the non-functionality of its trade dress.  For example,

18   PUBG has listed various aspects of its trade dress that illustrate "elements of ornamental flair that

19   are **not functional** but have acquired secondary meaning" (SAC ¶ 127), none of which is discussed

20   by Defendants.  In addition, PUBG has included numerous images showing the elements and

21   combinations of elements of its trade dress, in addition to the "total image and overall appearance"

22   _____

23   [3] Although this distinction was not credited in *Deckers Outdoor Corp. v. J.C. Penney Co.*, 45 F. Supp. 3d 1181, 1185 (C.D. Cal. 2014), that court failed to identify *any* copyright interest implicated by the products at issue (boots), rendering it inapposite.  The remaining cases cited by Defendants (Defs.' Mem. at 12 n.5) do not even address this critical distinction, which applies regardless of whether the products at issue are "tangible" or not.

24   [4] Moreover, the principle invoked by Defendants applies only (if at all) to the extent "the Federal Copyright Act provides an adequate remedy." *Shaw*, 919 F.2d at 1364–65.  While PUBG contends that *no* aspect of Defendants' motion is meritorious, PUBG surely cannot have it both ways:  if any aspect of PUBG's BATTLEGROUNDS game is not copyrightable, PUBG's trade dress claim as to that aspect survives.  *Salt Optics, Inc. v. Jand, Inc.*, 2011 WL 13055856, *3 (C.D. Cal. 2011) ("There can be no 'adequate remedy,' however, if a work cannot be copyrighted…. A Lanham Act claim is thus permissible.").

of BATTLEGROUNDS.  These allegations more than suffice.  *See Mercado Latino, Inc. v. Indio Products, Inc.*, 2017 WL 1356315, at *2 (C.D. Cal. Apr. 11, 2017) ("Plaintiffs' relatively detailed description of its claimed trade dress is adequate to put defendant on notice, particularly in light of Plaintiff's inclusion of images of the claimed trade dress in the SAC."); *Diamond Foods v. Hottrix, LLC*, 2016 WL 3880797, at *12 (N.D. Cal. Jul. 18, 2016) (allegations that total image and overall appearance were not merely functional sufficient to state claim).[5]

### C.   PUBG Adequately Alleges Statutory Unfair Competition.

Defendants' attacks on PUBG's UCL claim are meritless.  The "unlawful" prong makes a violation of an underlying law a *per se* violation of the UCL.  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002). Thus, virtually any law or regulation – federal or state, statutory or common law – can serve as predicate for a § 17200 "unlawful" violation.  *People v. E.W.A.P., Inc*. 106 Cal. App. 3d 315, 319 (1980).  Because PUBG has adequately alleged a trade dress infringement claim, its UCL "unlawful" claim is likewise cognizable. *See, e.g.*, *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1174 (N.D. Cal. 2015) (UCL "unlawful" claim could not be dismissed when underlying Lanham Act claim was sufficiently pled); *Morton & Bassett, LLC v. Organic Spices, Inc*., 2017 WL 1425908, at *10 (N.D. Cal. Apr. 21, 2017).

Case law likewise contradicts Defendants' argument as to the "unfair" prong.  An antitrust violation is not the only way in which unfairness can be alleged – any conduct that "significantly threatens or harms competition" falls within its ambit.  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 187 (1999).  Thus, PUBG's trade dress claim can form the basis of the UCL unfairness claim as well. *English & Sons, Inc. v. Straw Hat Restaurants Inc.*, 2015 WL 4314364, at *13 (N.D. Cal. Jul. 15, 2015).

Finally, Defendants argue that PUBG cannot state a claim under the UCL's "fraudulent" prong because PUBG has not actually relied on any NetEase misstatements.  This, too, is incorrect.  To the extent that reliance is required, consumer confusion (and resulting reliance) arising from

---

[5] Even if certain elements are functional, "the fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress as a whole is functional; rather, functional elements that are separately unprotectable can be protected together as part of a trade dress." *OHC Group LLC v. Blip, LLC*, 2010 WL 1151227, at *4 (C.D. Cal. Jun. 7, 2010) (internal quotations and citation omitted).

1    NetEase's trade dress violations satisfies that requirement. *Openwave Messaging, Inc. v. Open-*

2    *Xchange, Inc.*, 2016 WL 6393503, at *6–7 (N.D. Cal. Oct. 28, 2016).  Defendants' reliance on

3    *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1002 (N.D. Cal. 2014), is inapt, as that case did

4    not involve any trade dress or trademark claims, and at most, it reflects one view on an issue as to

5    which "federal courts sitting in California disagree."  *Heartland Payment Sys., Inc. v. Mercury*

6    *Payment Systems, LLC*, 2015 WL 3377662, at *7 (N.D. Cal. Feb. 24, 2015) (citing *VP Racing Fuels,*

7    *Inc. v. Gen. Petroleum Corp.*, 2010 WL 1611398, at *2 (E.D. Cal.) (customer reliance sufficient to

8    state a competitor's claim under the fraudulent prong of the UCL)).[6]

9    **D.    PUBG Adequately Alleges Common Law Unfair Competition.**

10           Just as the Copyright Act does not preclude PUBG's Lanham Act claim, it does not preempt

11   PUBG's common law unfair competition claim.  Indeed, Defendants' own cases support this

12   conclusion.  For example, in *Aquawood, LLC v. Toys "R" Us-Delaware, Inc.,* 2016 WL 10576620

13   (C.D. Cal. Mar. 10, 2016), the court acknowledged that "well-pleaded passing off claims are not

14   preempted by the Copyright Act," *id.* at *3; the plaintiff had simply failed to "plead a claim akin to

15   passing off." *Id.*  Here, in contrast, PUBG has specifically pled passing off.  *See supra* § III.B.1.

16           To the extent Defendants assert that common law unfair competition claims do not extend to

17   trade *dress* infringement, Defs.' Mem. at 15:20–22, that is also incorrect.  Legions of cases recognize

18   that protections under the Lanham Act and state common law are essentially coextensive, and

19   subject to the same standards.  *See, e.g.*, *First Brands Corp. v. Fred Meyer, Inc.,* 809 F.2d 1378,

20   1381 (9th Cir. 1987) (treating law respecting an "an action for trade dress infringement brought

21   under § 43(a) of the Lanham Act, the common law, or the law of unfair competition" as equivalent);

22   *see also Am. Economy Ins. Co. v. Reboans, Inc.*, 900 F. Supp. 1246, 1254–55 (N.D. Cal. 1994).

23   ---
     [6] Defendants also assert in passing that PUBG's "failure to allege lost sales…eliminates its UCL
24   standing." Defs.' Mem. at 14:2.  This, too, is meritless.  A "plaintiff can satisfy the [UCL] statutory
     standing requirements in innumerable ways."  *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1197
25   (N.D. Cal. 2015) (citation and internal quotations omitted).  Among these are to "have a present or
     future property interest diminished" or to "be deprived of money or property to which [plaintiff] has
26   a cognizable claim."  *Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal.
     App. 4th 544, 561 (2013); *accord AngioScore, Inc. v. TriReme Med., LLC*, 70 F. Supp. 3d 951, 962
27   (N.D. Cal. 2014) (injury to market share is a cognizable injury under the UCL).  Here, PUBG alleges
     that Defendants "introduce[ed] the ROS and KO games to the marketplace at or below cost…to
28   capture mobile gaming market share before PUBG launched its own mobile version."  SAC ¶¶ 56,
     88, 133, 138; *see also* SAC ¶¶ 124, 130, 135, 140 (allegations of monetary damage).

1    Date:  August 7, 2018                      SIDLEY AUSTIN LLP

2

3                                   By:  */s/ Steven S. Baik*

4                                   Steven S. Baik (SBN 184622)
                                   sbaik@sidley.com

5                                   Ryuk Park (SBN 298744)
                                   ryuk.park@sidley.com

6                                   SIDLEY AUSTIN LLP
                                   1001 Page Mill Road, Building 1

7                                   Palo Alto, CA 94304
                                   Telephone: +1 650 565 7074

8                                   Facsimile: +1 650 565 7100

9                                   Rollin A. Ransom (SBN 196126)
                                   rransom@sidley.com

10                                 SIDLEY AUSTIN LLP
                                 555 West Fifth Street

11                                 Los Angeles, CA 90013
                                 Telephone: +1 213 896 6047

12                                 Facsimile: +1 213 896 6600

13                                 Ketan V. Patel (pro hac vice)
                                 ketan.patel@sidley.com

14                                 SIDLEY AUSTIN LLP
                                 787 Seventh Avenue

15                                 New York, NY 10019
                                 Telephone: +1 212 839 5300

16                                 Facsimile: +1 650 839 5599

17                                 Amanda R. Farfel (SBN 288126)
                                 afarfel@sidley.com

18                                 SIDLEY AUSTIN LLP
                                 1999 Avenue of the Stars, 17th Floor

19                                 Los Angeles, CA 90067
                                 Telephone: +1 310 595 9661

20                                 Facsimile: +1 310 595 9501

21                                 *Attorneys for Plaintiffs PUBG Corporation
                                 and PUBG Santa Monica, Inc.*

22

23

24

25

26

27

28