1 | Steven S. Baik (Bar No. 184622)
sbaik@sidley.com
2 | Ryuk Park (Bar No. 298744)
ryuk.park@sidley.com
3 | SIDLEY AUSTIN LLP
1001 Page Mill Road, Building 1
4 | Palo Alto, CA 94304
Telephone: (650) 565-7074
5 | Facsimile: (650) 565-7100

6 | Rollin A. Ransom (Bar No. 196126)
rransom@sidley.com
7 | SIDLEY AUSTIN LLP
555 West Fifth Street
8 | Los Angeles, CA 90013
Telephone: (213) 896-6047
9 | Facsimile: (213) 896-6600

10 | Ketan V. Patel (*pro hac vice*)
ketan.patel@sidley.com
11 | SIDLEY AUSTIN LLP
787 Seventh Avenue
12 | New York, NY 10019
Telephone: (212) 839-5300
13 | Facsimile: (650) 839-5599

*Attorneys for Plaintiffs PUBG Corporation and PUBG Santa Monica, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PUBG CORPORATION AND PUBG SANTA MONICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NETEASE, INC., NETEASE INFORMATION TECHNOLOGY CORPORATION, AND HONG KONG NETEASE INTERACTIVE ENTERTAINMENT LIMITED, <br><br> Defendants. | Case No. 4:18-cv-02010-JSW <br><br> **PLAINTIFFS' OBJECTIONS TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND DECLARATION OF MICHAEL F. LAFOND** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 2

    A. Evidence Depicting Current Gameplay of RoS and KO Is Not Relevant to Any Issues in the Second Amended Complaint ............................................... 2

        1. NetEase Fails to Identify What Changes Have Been Made to the Playable Copies of RoS and KO Submitted to the Court ................................. 3

        2. The Submitted Videos of RoS and KO Rely on Features and Updates Added After the Filing of This Action .............................................................. 6

        3. The Submitted Charts of Video Screenshots Rely on Features and Updates Added After the Filing of This Action .............................................. 7

    B. Articles Describing "Generic" or "Common" Elements of the "Battle Royale" Genre Are Improper For Judicial Notice .......................................................... 8

        1. NetEase Improperly Seeks to Use These Publications as Evidence of the Truth of the Matters Asserted Therein .......................................................... 8

        2. NetEase Improperly Seeks to Use These Publications as Expert Testimony ............................................................................................................ 9

        3. The Elements of the Battle Royale Genre of Video Games is Not Readily Determined From Examining Popular Media .................................... 9

    C. Evidence Demonstrating Use of the Phrase "Winner Winner Chicken Dinner" in an Unrelated Context is Not Relevant to the Issues in the SAC ............................... 11

III. CONCLUSION ................................................................................................................ 12

i

PLAINTIFFS' OBJECTIONS TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND DECLARATION OF MICHAEL F. LAFOND.  CASE NO. 4:18-cv-02010-JSW

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Asetek Danmark A/S v. CMI USA, Inc.*,
   2014 WL 12644295 (N.D. Cal. Nov. 19, 2014) ...............................................................................9

*Campbell v. Walt Disney Co.*,
   718 F. Supp. 2d 1108 (N.D. Cal. 2010) ..........................................................................................5

*Chatman v. Early*,
   389 F. App'x 599 (9th Cir. 2010) ............................................................................................2, 3

*Dahl v. Toyota Motor Sales USA, Inc.*,
   2015 WL 1034342 (D. Nev. Mar. 10, 2015) ................................................................................10

*DuckHole Inc. v. NBC Universal Media LLC*,
   2013 WL 5797204 (C.D. Cal. Sept. 6, 2013) ...............................................................................11

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
   896 F.2d 1542 (9th Cir.1990) ........................................................................................................9

*Harold Lloyd Entm't, Inc. v. Moment Factory One, Inc.*,
   2015 WL 12765142 (C.D. Cal. Oct. 29, 2015)...............................................................................7

*Hawthorne v. Umpqua Bank*,
   2013 WL 5781608 (N.D. Cal. Oct. 25, 2013).................................................................................3

*Doe ex rel. Kristen D. v. Willits Unified Sch. Dist.*,
   2010 WL 890158 (N.D. Cal. Mar. 8, 2010).....................................................................................2

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) .........................................................................................................7

*Silas v. Home Box Office, Inc.*,
   2016 WL 4251599 (C.D. Cal. July 25, 2016).................................................................................9

*Thomas v. Walt Disney Co.*,
   2008 WL 425647 (N.D. Cal. Feb. 14, 2008) .................................................................................5

*Wynn v. Chanos*,
   75 F. Supp. 3d 1228 (N.D. Cal. 2014) ...........................................................................................7

*Zella v. E.W. Scripps Co.*,
   529 F. Supp. 2d 1124 (C.D. Cal. 2007) ........................................................................................11

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)........................................................................................................1, 8, 9

Fed. R. Evid. 201(b)...................................................................................................................2, 9

Fed. R. Evid. 802 ............................................................................................................................8

iii

PLAINTIFFS' OBJECTIONS TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND DECLARATION OF MICHAEL F. LAFOND.  CASE NO. 4:18-cv-02010-JSW

## I.    INTRODUCTION

Plaintiffs PUBG Corporation and PUBG Santa Monica, Inc. (collectively, "PUBG") object to Request Nos. 4-9 and 16-21 of Defendants NetEase, Inc., NetEase Information Technology Corporation and Hong Kong NetEase Interactive Entertainment, Ltd.'s (collectively, "NetEase") Request for Judicial Notice ("RJN"), and to the corresponding paragraphs of and exhibits to the Declaration of Michael F. LaFond filed in support of the same.  *See* Dkt. Nos. 47-2 and 47-3.  PUBG also objects to Exhibit 24 to the LaFond Declaration.

Exhibits 4 and 5 of the LaFond Declaration are a single letter providing instructions for downloading the most recent and only publicly available versions of two infringing applications published by NetEase: *Rules of Survival* ("*RoS*") and *Knives Out* ("*KO*").  Exhibits 16-19 are video files depicting gameplay from these versions of *RoS* and *KO*, and Exhibits 20 and 21 are charts comparing this gameplay to images of the copyrighted works.  However, NetEase fails to explain why the specific versions of *RoS* and *KO* identified in these exhibits – which evidence gameplay that has been subject to numerous modifications and gameplay updates since the filing of this action – are relevant to the versions of *RoS* and *KO* identified in the Second Amended Complaint ("SAC").  Although these versions may indeed be relevant to the SAC, NetEase provides no basis for any such determination in its motion or RJN.  NetEase fails to identify what changes it has made to these applications since the commencement of this action and, in fact, identifies as "dissimilar fanciful expression," elements added to the games after PUBG filed the SAC.  As a result, Exhibits 4, 5 and 16–21 and the corresponding requests in the RJN pertain to facts that are subject to reasonable dispute, not relevant to the claims at issue and should be excluded.

PUBG also objects to Exhibits 6–9 which are Internet articles that purport to identify "common elements" of the "battle royale" genre because these exhibits: (1) are inadmissible hearsay evidence; (2) comprise expert opinions submitted outside of the process prescribed by Fed. R. Civ. P. 26(a)(2); and (3) are not generally known within the Court's territorial jurisdiction and cannot be verified simply by playing a limited number of video games for any length of time.

Finally, PUBG objects to Exhibit 24 – an Internet Movie Database webpage entry for the movie *21* – as irrelevant.  NetEase has offered this exhibit as evidence that the phrase "Winner

Winner Chicken Dinner" was used prior to its irreverent use in PUBG's *BATTLEGROUNDS*. However, PUBG does not contend it coined the phrase. Rather, PUBG was the first to utilize this unique and creative use of the phrase as an acknowledgement of victory in the battle royale genre. Accordingly, the Court should deny NetEase's Request for Judicial Notice.

## II.   ARGUMENT

"Federal Rule of Evidence 201(b) authorizes a court to take judicial notice of facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Doe ex rel. Kristen D. v. Willits Unified Sch. Dist.*, 2010 WL 890158, at *2 (N.D. Cal. Mar. 8, 2010). A court may consider documents alleged in a complaint and whose authenticity no party questions, but that are not physically attached to a complaint. *Id.* (citation omitted). A court may also take judicial notice of "matters of public record," but may not "take judicial notice of a fact that is 'subject to reasonable dispute.'" *Id.* (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001) (citing Fed. R. Evid. 201(b)). Judicial notice is also not proper where the evidence in question is not relevant to matters before the court. *Chatman v. Early*, 389 F. App'x 599, 600 (9th Cir. 2010) (affirming district court denial of request for judicial notice of news articles that "did not contain adjudicative facts relevant to the parties' dispute").

### A.   **Evidence Depicting Current Gameplay of RoS and KO Is Not Relevant to Any Issues in the Second Amended Complaint.**

NetEase requests that the Court take judicial notice of playable copies, videos and comparison charts of *RoS* and *KO* on the grounds that these exhibits are "referenced in the SAC but [are] not physically attached to it." RJN at 4, 8 (requesting judicial notice for Exhibits 4, 5 and 16–21). While the SAC (Dkt. No. 32) references certain NetEase reproductions and derivative works – namely, those versions of *RoS* and *KO* that existed at the time this litigation was filed (*see* Dkt. No. 32 at ¶¶121–22) – Exhibits 4, 5 and 16–21 *do not* depict gameplay from the versions of those works referenced in the SAC. Instead, the gameplay in these exhibits has been subject to numerous modifications and gameplay updates. NetEase's RJN fails, however, to provide any information about what changes and modifications have been implemented to the versions identified in the SAC. Further, NetEase's Motion to Dismiss specifically references aspects of these exhibits that have been

added *during* the course of this litigation.  Consequently, the Court should decline judicial notice of these exhibits.

      1.    <u>NetEase Fails to Identify What Changes Have Been Made to the Playable Copies of *RoS* and *KO* Submitted to the Court.</u>

NetEase first requests that the Court take judicial notice of certain works referenced in the SAC.  RJN at 4.  It contends that the versions of *RoS* and *KO* identified in the RJN "are properly subject to judicial notice…as the content of these audiovisual works are alleged in the SAC, and their authenticity is not questioned.  *Id*.  If the documents are not attached to a complaint, they may be considered if their "authenticity is not contested **and the complaint 'necessarily relies on them**.'"  *Hawthorne v. Umpqua Bank*, 2013 WL 5781608, at *4 (N.D. Cal. Oct. 25, 2013) (emphasis added).  Although NetEase contends that the "contents of [*RoS* and *KO*] are referenced in the SAC" and therefore these applications are incorporated by reference in the SAC (RJN at 4), the versions relied upon in the SAC are not the same as those NetEase has submitted to the Court.

Since the initial publication of *RoS* in November 2017, NetEase has implemented at least 37 updates including 18 updates subsequent to the April 2, 2018 filing of this action.  *See* https://www.facebook.com/pg/RulesofSurvival/notes/.  These revisions range from modification to optimize gameplay (*see* https://www.facebook.com/notes/rules-of-survival/patch-notes_nov-22-2017/1364767880300504/) to the addition of new weapons and armor (*see* https://www.facebook.com/notes/rules-of-survival/patch-notes_july-18-2018/1620506608059962/). These updates demonstrate that earlier versions of *RoS* did not include many (if not all) of the "dissimilar features" NetEase points to in its motion.  For example, NetEase contends that *RoS* is dissimilar to *BATTLEGROUNDS* because *RoS* allows players to buy clothing, weapons or gear that then appear in the game rather than the original art.  Dkt. No. 47 at 10.  This feature, however, was added to the game shortly *after* its initial release.  See https://www.facebook.com/notes/rules-of-survival/patch-notes_nov-22-2017/1364767880300504/.  NetEase also asserts that "each game contains twice [as] many weapons" as identified in the SAC.  Dkt. No. 47 at 10.  NetEase fails to note that many of the weapons in *RoS* were also added *after* its release and even after (as discussed further below) the commencement of this litigation.  *Id*.; *see* https://www.facebook.com/notes/rules-

3

of-survival/patchnotes_feb-7-2018/1442886739155284/ (adding shotguns); https://www.facebook.com/notes/rules-of-survival/patch-notes_july-18-2018/1620506608059962/ (adding crossbow in July 2018 – over three months after the commencement of this litigation); https://www.facebook.com/notes/rules-of-survival/patch-notes_july-25-2018/1631498196960803/ (adding riot shield in July 2018); https://www.facebook.com/notes/rules-of-survival/patch-notes_april-4-2018/1501798429930781/ (adding grenade gun and Damascus knife in April 2018). NetEase also fails to note that the "different" mood, themes and settings in *RoS* were also post-release additions. *See* Dkt. No. 47 at 9; *see also* https://www.facebook.com/notes/rules-of-survival/patch-notes_nov-30-2017/1374527502657875/ (adding weather system that includes "Sunny, Foggy, Dusk and Dawn"); https://www.facebook.com/notes/rules-of-survival/patchnotes_feb-7-2018/1442886739155284/ (adding "new map [which] will include various new areas, including swamps, gardens, and mines"). These updates show that at least *some* versions of *RoS* published to consumers did not contain any of the "dissimilar features" identified in Defendants' motion.

Similarly, since the initial publication of *KO*, NetEase has implemented at least 21 updates to add dissimilarities including 9 updates since the commencement of this litigation. *See* https://www.facebook.com/pg/KnivesOutGame/notes/. These updates range from measures designed to reduce cheating in the game (https://www.facebook.com/notes/knives-out/patch-notes_dec-8-2017/237773343425568/) to the addition of new articles of clothing (https://www.facebook.com/notes/knives-out/july-25-update-note/350998018769766/). However, as with *RoS*, the updates demonstrate that many of the purported differences in creative expression between *BATTLEGROUNDS* and *KO* were added only *after KO*'s initial release. For example, NetEase alleges that the air jump sequence in *KO* is depicted "as a group of helicopters." Dkt. No. 47 at 10. However, as shown in the SAC, this sequence was first depicted using an airplane similar to the one used in *BATTLEGROUNDS*. Dkt. No. 32 at ¶ 90. The use of helicopters was not added until approximately two months after *KO*'s release. *See* https://www.facebook.com/notes/knives-out/ko-santa/244495152753387/. As with *RoS*, NetEase fails to note that many of the *KO* weapons were added after its initial release including after the commencement of this litigation. Dkt. No. 47

4

at 10; *see* https://www.facebook.com/notes/knives-out/january-18-update-notes/256377904898445/ (adding SVD sniper rifle); https://www.facebook.com/notes/knives-out/february-1-update-notes/261986334337602/ (adding QBZ-95 rifle and VAL silenced sniper rifle); https://www.facebook.com/notes/knives-out/february-7-update-notes/264620287407540/ (adding AUG rifle and M27 rifle); https://www.facebook.com/notes/knives-out/may-30-update-note/306800766522825/ (adding QCW-05).  Similarly, although NetEase alleges that "Knives Out uses a broader range of colors, with ample use of purples and pinks[,] white snow in some areas and green grass in others," many of these areas were added after PUBG brought this suit.  *See*, *e.g.*, https://www.facebook.com/notes/knives-out/hurricane-assault-has-arrived/247876605748575/ (revealing new map which includes "a mysterious castle atop a snowy mountain[,] rolling plains to a tropical seaside town [and] a romantic lavender field to a majestic missile launch site").  Although NetEase argues that "[t]he court . . . . must take judicial notice if a party requests it and the court is supplied with the necessary information" (RJN at 3 (quoting Fed. R. Evid. 201)), NetEase makes no mention of these modifications, let alone makes any attempt to supply necessary information – such as when these modifications were implemented – to the Court.

   In support of its position that the Court should take judicial notice of modified versions of the infringing works, NetEase relies on two readily distinguishable cases: *Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1111 n.3 (N.D. Cal. 2010) and *Thomas v. Walt Disney Co.*, 2008 WL 425647, at *2 n.1 (N.D. Cal. Feb. 14, 2008).  Unlike the works here, which are continuously being modified, in each of the cited cases, the court took judicial notice of static works of art – a motion picture and a written screenplay.  *Campbell*, 718 F. Supp. at 1111 n.3 (taking judicial notice of the film "*Cars*" and a copy of the screenplay for "The Challenge" filed with the Copyright Office); *Thomas*, 2008 WL 425647, at *2 n.1 (taking judicial notice of the film "*Finding Nemo*" and the screenplay "*Squisher the Fish*").  In both cases, there was no concern that the works had been changed between their initial release and their consideration by the Court.

   For all of the foregoing reasons, PUBG objects to NetEase's request that the Court take judicial notice of the current releases of *RoS* and *KO*, and thus to the letter in the LaFond Declaration "explaining" how to download those current releases (LaFond Decl., Exs. 4–5).

5

2.  The Submitted Videos of *RoS* and *KO* Rely on Features and Updates Added After the Filing of This Action.

NetEase further relies on video of gameplay taken from current versions of *RoS* and *KO* as evidence of differences between its games and *BATTLEGROUNDS*. RJN at 8. However, in addition to the differences identified above, these videos demonstrate further additions made *during the course of this litigation* that NetEase is now using to claim dissimilarity between the infringing and copyrighted works.

For example, NetEase alleges that each game uses "unique costumes and fictionalized gun designs" and, as evidence, cites a "Damascus Knife" from *RoS* which can be displayed as a "glowing purple katana." Dkt. No. 47 at 10 (citing LaFond Decl., Ex. 19 at 07:16:20–07:22:29). However, neither the Damascus Knife nor the "glowing purple katana" predate this case. https://www.facebook.com/notes/rules-of-survival/patch-notes_april-4-2018/1501798429930781/ ("Added Damascus Knife, a cool new weapon that players can pick up in the game."); https://www.facebook.com/notes/rules-of-survival/patch-notes_june-20-2018/1579137218863568/ (June 20, 2018 announcement of "Shadow Panther" set which includes purple katana). As further evidence of "creative designs" that show dissimilar fanciful expression, NetEase cites "glowing science-fiction-esque guns in *Rules of Survival*." Dkt. No. 47 at 10 (citing LaFond Decl., Ex. 16 at 02:46:20-02:50:12). The specific "science-fiction-esque" gun in question, however, was added to the game a mere two weeks before NetEase filed its motion to dismiss. *See* https://www.facebook.com/RulesofSurvival/photos/a.1355601174550508.1073741829.1349433135167312/1599701920140431/?type=3&theater (announcing the Twilight ACR on July 3, 2018). Exhibit 17 highlights the ability of players to graffiti walls in *RoS*, ostensibly as further evidence of "dissimilar fanciful expression." *See*, *e.g.*, LaFond Decl., Ex. 17 at 2:55:00–3:00:00. As with prior examples, this too is a recent June 2018 modification of *RoS*. *See* https://www.facebook.com/notes/rules-of-survival/patch-notes_june-13-2018/1569437746500182/ ("Spray paint content added."). NetEase similarly attempts to use "clothing, weapons [and] equipment" released in July 2018 to differentiate *KO* from *BATTLEGROUNDS*. Dkt. No. 47 at 10 (citing Lafond Decl., Ex. 18 at 01:17:08–02:30:16 which depicts "Superior Box July Only" clothing,

weapons and equipment); *see also id.* (citing LaFond Decl., Ex. 18 at 01:53:15–02:25:27); https://www.facebook.com/KnivesOutGame/photos/a.227143637821872.1073741827.227051401164429/324964741373094/?type=3&theater (June 28, 2018 announcement that "The July-only Superior Box is here!").

As with the playable copies of the infringing works, NetEase's reliance on case law is unavailing. In *Harold Lloyd Entm't, Inc. v. Moment Factory One, Inc.*, 2015 WL 12765142, at *1 (C.D. Cal. Oct. 29, 2015), the court took judicial notice of a 1923 silent film and the video portion of a multimedia work. *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1235 (N.D. Cal. 2014) addressed judicial notice of a video depicting allegedly defamatory statements. Neither of these cases involved modification of the alleged infringing works. PUBG therefore objects NetEase's request that the Court take judicial notice of the video files allegedly showing gameplay of *RoS* and *KO*, and to the corresponding exhibits to the LaFond Declaration (LaFond Decl., Exs. 16–19).

3. <u>The Submitted Charts of Video Screenshots Rely on Features and Updates Added After the Filing of This Action.</u>

Finally, NetEase has submitted a number of charts depicting what it purports are features from each infringing work that are dissimilar to *BATTLEGROUNDS*. As with Exhibits 4, 5 and 16–19, these images depict elements of gameplay from versions of *RoS* and *KO* that were added to the infringing works during the course of this litigation. *Compare* LaFond Decl., Ex. 20 at 1 (depicting a support droid in *RoS*) and https://www.facebook.com/notes/rules-of-survival/patch-notes_may-23-2018/1548629321914358/ (announcing "New Content – Support Droid" on May 23, 2018); *compare* LaFond Decl., Ex. 21 at 4 (depicting "Superior Box July Only" clothing, weapons and equipment) and https://www.facebook.com/KnivesOutGame/photos/a.227143637821872.1073741827.227051401164429/324964741373094/?type=3&theater (June 28, 2018 announcement that "The July-only Superior Box is here!").

A court may properly consider documents "not physically attached to the complaint . . . if the documents' authenticity is not contested and the plaintiffs' complaint necessarily relies on them." *Lee*, 250 F.3d at 688 (internal quotation marks and ellipses omitted). However, NetEase's attempts

7

PLAINTIFFS' OBJECTIONS TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND DECLARATION OF MICHAEL F. LAFOND. CASE NO. 4:18-cv-02010-JSW

to import modified gameplay into its motion to dismiss – without informing the Court of the extent, nature and timing of these modifications – entirely ignores the requirement that the evidence in question *be referenced in the complaint*.  Defendants' proposal would allow every infringer to attempt to escape liability at the motion to dismiss stage merely by removing or modifying a few infringing features prior to filing the motion.  PUBG therefore objects to NetEase's request that the Court take judicial notice of the screenshots of *RoS* and *KO* and to the corresponding exhibits to the LaFond Declaration (LaFond Decl. Exs. 20–21).

**B.     Articles Describing "Generic" or "Common" Elements of the "Battle Royale" Genre Are Improper For Judicial Notice.**

NetEase's RJN also seeks admission of four articles it alleges "reflect[] the common elements of video games in the 'battle royale' genre." RJN at 5.  These articles seek to define the bounds of what constitutes a "battle royale" game.  In doing so, these articles run afoul of Fed. R. Evid. 802 and Fed. R. Civ. P. 26(a)(2) as they are both hearsay and inadmissible expert opinion.  NetEase seeks judicial notice of the content of these exhibits on the grounds that they identify "generic elements that are prevalent throughout a given genre." RJN at 4 (citing *Fillmore v. Blumhouse Prods., LLC*, 2017 WL 4708018, at *2 (C.D. Cal. July 7, 2017)). Even if these articles were not hearsay or opinion evidence, they do not identify any "generic elements" of which courts can properly take judicial notice.  Accordingly, PUBG objects to NetEase's request that the Court take judicial notice of what it describes as "Generic 'Battle Royale' Video Game Elements", and to the corresponding exhibits to the LaFond Declaration (LaFond Decl., Exs. 6–9).

   1.   NetEase Improperly Seeks to Use These Publications as Evidence of the Truth of the Matters Asserted Therein.

Each of the articles as to which NetEase seeks judicial notice purports to define the scope of the battle royale genre.  *See*, *e.g.*, LaFond Decl., Ex. 6 at 2 ("Though most games that tackle the battle royale game type have their own gimmicks, the basic framework of a match is always the same . . ."); LaFond Decl., Ex. 7 at 1 (ostensibly identifying "elements [that] define the Battle Royale genre"); LaFond Decl., Ex. 8 at 2 ("This simple formula is the basis of Battle Royale games . . ."); LaFond Decl., Ex. 9 at 1 ("Battle-royale games hew to a few core mechanics . . ."). Although NetEase asserts that these articles are admissible "because courts may take judicial notice of

8

PLAINTIFFS' OBJECTIONS TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND
DECLARATION OF MICHAEL F. LAFOND.  CASE NO. 4:18-cv-02010-JSW

1  publications introduced to show what was in the public realm at the time" (RJN at 5), it makes no
2  attempt to use these articles for this purpose.  Instead, NetEase cites (or miscites) these articles as
3  evidence of the matters asserted therein – the authors' individual definitions of the rules that define a
4  battle royale game.  *See*, *e.g.*, RJN at 6 ("Commencing a game by dropping a large number of
5  players into a location is a common element of a video game design . . .") (citing LaFond Decl., Ex.
6  7); *see also* RJN at 7 ("A battle setting with buildings and obstacles for players to overcome is a
7  common element of [battle royale] games") (citing LaFond Decl., Ex. 7).
8     Because these articles are being offered to prove the truth of the matters asserted therein, they
9  are inadmissible hearsay.  *Asetek Danmark A/S v. CMI USA, Inc.*, 2014 WL 12644295, at *2 (N.D.
10  Cal. Nov. 19, 2014) ("Statements reported in magazine articles and newspapers are hearsay if
11  offered to prove the truth of the matter asserted.").  NetEase fails to identify any exception that
12  would allow the consideration of this evidence.  Accordingly, the Court should exclude Exhibits 6–9
13  to the LaFond Declaration and should likewise reject the request for judicial notice and related
14  arguments by NetEase that ostensibly flow from those exhibits.  *See* RJN at 1 (Items 6–9).
15     2. <u>NetEase Improperly Seeks to Use These Publications as Expert Testimony.</u>
16     The submission of Exhibits 6-9 is also improper under Fed. R. Civ. P. 26(a)(2).  Each article
17  provides the author's opinion regarding the rules of the battle royale genre.  NetEase has not
18  produced expert reports for these authors, and extrinsic expert testimony at the motion to dismiss
19  stage would be improper in any event.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d
20  1542, 1555 n.19 (9th Cir.1990) ("Generally, a district court may not consider any material beyond
21  the pleadings in ruling on a 12(b)(6) motion.").  The Court should therefore also exclude these
22  exhibits and any related argument as reflecting inadmissible opinion evidence.
23     3. <u>The Elements of the Battle Royale Genre of Video Games is Not Readily Determined From Examining Popular Media.</u>
24
25     Even if these publications were not inadmissible hearsay or opinion evidence, the Court
26  should nevertheless exclude these exhibits do not reflect generic elements that are prevalent
27  throughout a given genre.  Courts have generally refused to take judicial notice of generic elements
28  that are not "generally known."  *See*, *e.g.*, *Silas v. Home Box Office, Inc.*, 2016 WL 4251599, at *6-7

1  (C.D. Cal. July 25, 2016) (alleged "elements common to prior works" not properly subject to judicial

2  notice, as they were "not 'generally known within the [] court's territorial jurisdiction,' nor would it

3  be possible to 'accurately and readily determin[e]' the existence of these elements by using 'sources

4  whose accuracy cannot reasonably be questioned'") (quoting Fed. R. Evid. 201(b)); *Dahl v. Toyota*

5  *Motor Sales USA, Inc.*, 2015 WL 1034342, at *3 (D. Nev. Mar. 10, 2015) (refusing to take judicial

6  notice of allegedly common storyline: website contents "do not conclusively establish that the

7  storyline...is common and prevalent") (internal quotations omitted).

8        The elements of the battle royale genre are not generally known and cannot be determined by

9  resort to sources whose accuracy cannot reasonable be questioned.  In fact, even the sources

10  provided by NetEase do not identify a common set of factors that define the battle royale genre.  For

11  example, Exhibit 6 defines "the basic framework of a [battle royale] match [as] one big map, a large

12  pool of players, randomized gear to find, and a slowly shrinking battle arena to force combatants into

13  more tense confrontations."  However, Exhibit 7 adds the requirements that (1) the players "[s]tart

14  with nothing;" (2) the game include "[c]aches and chests" that "contain[] high quality gear,

15  weaponry ammo and useful other supplies;" and (3) that "100 people drop onto an island empty

16  handed."  Exhibit 8 requires only "a large group of equal players, a huge map that slowly shrinks

17  over time, and scarce guns and ammo."  Finally, Exhibit 9 requires only "a few core mechanics":

18  (1) helplessness; (2) an ever-growing external threat in order to force all players into a smaller and

19  smaller area; and (3) that a player's death be final.

20        NetEase's proposed list of "generic elements" – (i) a large group of players entering the

21  game setting through a "drop" mechanism; (ii) players starting with nothing, and searching for and

22  acquiring equipment, weapons and ammunitions, armor, and clothing as the game progresses; (iii) a

23  large map that shrinks over time; and (iv) a scene containing buildings and obstacles – is not

24  "'capable of accurate and ready determination by resort to sources whose accuracy cannot

25  reasonably be questioned' because it is inconsistent even with those sources upon which it relies.

26  NetEase's list ignores the requirement from Exhibit 7 that there be "[c]aches and chests . . .

27  containing high quality gear."  RJN at 6; LaFond Decl., Ex. 7 at 1.  However, NetEase's list adds

28  elements not recited in Exhibit 9 including the "drop" mechanism, the requirement for buildings and

obstacles, and the proposition of a "shrinking map" (rather than a more general "external threat" to force players closer together).  LaFond Decl., Ex. 9 at 1.

Relying on case law, NetEase asserts that judicial notice of genre elements is appropriate where the elements "can be readily determined from examining popular media."  RJN at 5 (citing *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1129 (C.D. Cal. 2007)).  However, NetEase misstates the holding in *Zella*.  *Zella* found that generic elements of a television show could be verified "simply by watching television for any length of time."  *Id.* (taking judicial notice that a host, guest celebrities, interview, and cooking are generic elements of television cooking shows because they "can be verified simply by watching television for any length of time"); *see also DuckHole Inc. v. NBC Universal Media LLC*, 2013 WL 5797204, at *4 (C.D. Cal. Sept. 6, 2013) (taking judicial notice that veterinary-themed sitcoms have generic elements including: (1) settings of an operating room, examination room, and lobby; (2) pets; (3) a comedic tone; and (4) romantic relationships, because they "can be verified simply by watching television for any length of time").  In each of these cases, the Court evaluated whether generic elements of a specific medium could be readily determined by a cursory examination *of that medium itself* – not by reviewing the conclusions of third parties as NetEase suggests the Court do here.

NetEase does not suggest that the generic elements of battle royale games "can be verified simply by watching [or playing battle royale games] for any length of time."  Instead, it asks the Court to rely on the selected opinions of limited reviewers and authors in the field.  These elements are not capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, as evidenced by the varying opinions of the various authors regarding common elements.  As a result, NetEase's request for judicial notice should be denied as to LaFond Declaration Exhibits 6–9.

C. **Evidence Demonstrating Use of the Phrase "Winner Winner Chicken Dinner" in an Unrelated Context is Not Relevant to the Issues in the SAC.**

Finally, PUBG objects to Exhibit 24 as irrelevant to the issues in the SAC.  NetEase has offered Exhibit 24 – an Internet Movie Database webpage entry for the movie *21* – as evidence that the phrase "Winner Winner Chicken Dinner" was used prior to its irreverent use in

11

1  *BATTLEGROUNDS*.[1]  However, PUBG does not claim to have coined the phrase.  Instead, the SAC
2  demonstrates that *BATTLEGROUNDS*' incorporation of this lighthearted phrase in contrast with the
3  dark and morbid themes and goals of a "battle royale" game is a unique and creative expression
4  which has since been coopted by NetEase.  SAC ¶ 50 ("The juxtaposition of this lighthearted
5  expression of victory with the survival narrative of the game adds elements of surprise and humor to
6  the work, and the artistic inclusion of this emphatic expression has become particularly beloved by
7  the gaming community. 'Winner Winner Chicken Dinner' in the context of a shooter game is a
8  copyrightable work in combination with other elements of Battleground.").  The phrase's prior use in
9  a movie about "six MIT students who were trained to become experts in card counting" is not
10 relevant to PUBG's claims.  Accordingly, the Court should 0 NetEase's request for judicial notice of
11 the IMDB entry for the movie *21*; PUBG likewise objects to the corresponding exhibit to the LaFond
12 Declaration (LaFond Decl., Ex. 24).

### III.  CONCLUSION

Defendants' Request for Judicial Notice relies heavily on aspects of the infringing works that have been modified after the filing of this case.  Although referenced works may be the subject of judicial notice, the law does not allow an infringer to escape liability merely by removing or modifying the infringing features identified in a complaint.  Further, Defendants' Request fails to even inform the Court that these changes have been implemented compared to the versions referenced in the complaint.  Defendants' Request additionally sidesteps the Federal Rules of Evidence and the Federal Rules of Civil Procedure by seeking notice of hearsay opinion evidence via publications that contradict both each other and Defendants' summary of these opinions.  Consequently, the Court should deny Defendants' Requests for Judicial Notice as to Request Nos.

---

[1] Although NetEase addresses Exhibit 24 in argument, it is not listed in the items for which it requests judicial notice.  RJN at 1-3.

Exhibits 4–9, 16–21 and 24 and the corresponding paragraphs of and exhibits to the LaFond Declaration.

Date: August 7, 2018

SIDLEY AUSTIN LLP

By: */s/ Steven S. Baik*
Steven S. Baik (SBN 184622)
sbaik@sidley.com
Ryuk Park (SBN 298744)
ryuk.park@sidley.com
SIDLEY AUSTIN LLP
1001 Page Mill Road, Building 1
Palo Alto, CA 94304
Telephone: +1 650 565 7074
Facsimile: +1 650 565 7100

Rollin A. Ransom (SBN 196126)
rransom@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: +1 213 896 6047
Facsimile: +1 213 896 6600

Ketan V. Patel (pro hac vice)
ketan.patel@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: +1 212 839 5300
Facsimile: +1 650 839 5599

Amanda R. Farfel (SBN 288126)
afarfel@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: +1 310 595 9661
Facsimile: +1 310 595 9501

*Attorneys for Plaintiffs PUBG Corporation and PUBG Santa Monica, Inc.*