1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Claude M. Stern (Bar No. 96737)
2     claudestern@quinnemanuel.com
    Margret M. Caruso (Bar. No. 243473)
3     margretcaruso@quinnemanuel.com
    Mark Tung (Bar No. 245782)
4     marktung@quinnemanuel.com
    Michael F. LaFond (Bar No. 303131)
5     michaellafond@quinnemanuel.com
    555 Twin Dolphin Dr., 5th Fl.
6   Redwood Shores, California  94065
    Telephone:     (650) 801-5000
7   Facsimile:     (650) 801-5100

8   Attorneys for NetEase, Inc., NetEase Information
    Technology Corporation, and Hong Kong
9   NetEase Interactive Entertainment, Ltd.

10                  UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                        OAKLAND DIVISION

13

| | |
|---|---|
| 14  PUBG Corporation and PUBG Santa Monica, Inc. | Case No. 4:18-cv-02010-JSW |
| 15 | **REPLY BRIEF IN SUPPORT OF** |
| Plaintiffs, | **DEFENDANTS NETEASE, INC.,** |
| 16 | **NETEASE INFORMATION** |
| v. | **TECHNOLOGY CORPORATION, AND** |
| 17 | **HONG KONG NETEASE INTERACTIVE** |
| NetEase, Inc., NetEase Information | **ENTERTAINMENT, LTD.'S JOINT** |
| 18  Technology Corporation, and Hong Kong | **MOTION TO DISMISS** |
| NetEase Interactive Entertainment, Ltd. | |
| 19 | **Hearing Date:    September 7, 2018** |
| Defendants. | **Hearing Time:    9:00 AM** |
| 20 | **Courtroom:        5, 2nd Floor** |
| | **Judge:            The Hon. Jeffrey S. White** |

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.  PUBG'S EFFORTS TO HIDE THE WORKS AND GENRE FAIL.....................................1

  A.  Judicial Notice of the Current Versions of NetEase's Games Is Proper. ..................1

  B.  Allegations in PUBG's Brief Not Supported by Declaration Cannot Defeat NetEase's Request for Judicial Notice. .......................................................................3

  C.  Judicial Notice of the Battle Royale Genre is Proper...............................................4

II.  PUBG'S OPPOSITION CANNOT SAVE ITS COPYRIGHT CLAIM ............................6

  A.  PUBG's Similarity Analysis Fails To Filter Out Unprotectable Elements And Account For Differences. ..................................................................................6

    i.  PUBG Failed to Filter Out Gameplay Mechanics, Stock Expression, Scenes A Faire, And Merger of Ideas and Expression..................................6

    ii.  PUBG May Not Rely on Conclusory Allegations of Protectability..............9

    iii.  PUBG's Argument That Differences Do Not Matter Is Incorrect. .............12

  B.  PUBG's Attack On The Virtual Identity Standard Ignores Controlling Law..........14

    i.  The Ninth Circuit Has Repeatedly Affirmed Use of The Virtual Identity Standard When Analyzing Video Game Copyrights......................14

    ii.  PUBG's Use of Real-World Object Dictates Using Virtual Identity...........15

    iii.  PUBG's "Any Similarities" Standard Is Unsupported and Incorrect. .........16

  C.  PUBG's *Metcalf* Argument Fails. .........................................................................16

III.  PUBG'S OPPOSITION CANNOT SAVE ITS LANHAM ACT CLAIM .........................17

  A.  PUBG's Trade Dress Claim Is Improper Under *Dastar*. .......................................17

  B.  PUBG Has Failed to Allege Protectable Trade Dress..............................................19

IV.  PUBG'S § 17200 CLAIM FALLS ALONG WITH ITS LANHAM ACT CLAIM.............20

V.  PUBG'S PREEMPTED STATE LAW UNFAIR COMPETITION CLAIM FAILS..........22

VI.  CONCLUSION .............................................................................................................23

1

## **TABLE OF AUTHORITIES**

**Page(s)**

2

### **Cases**

3

*A White & Yellow Cab, Inc. v. Uber Techs., Inc.*,
    2017 WL 1208384 (N.D. Cal. Mar. 31, 2017) ................................................................. 22

4

*Aceves v. Allstate Ins. Co.*,
    68 F.3d 1160 (9th Cir. 1995).............................................................................................. 22

5

6

*Allen v. Acad. Games League of Am., Inc.*,
    89 F.3d 614 ................................................................................................................. 10, 11

7

*Am. Economy Ins. Co. v. Reboans, Inc.*,
    900 F. Supp. 1246 (N.D. Cal. 1994) ................................................................................. 23

8

9

*AngioScore, Inc. v. TriReme Med., LLC*,
    70 F. Supp. 3d 951 (N.D. Cal. 2014) ................................................................................ 21

10

*Anti-Monopoly, Inc., v. Gen. Mills Fun Grp.*,
    611 F.2d 296 (9th Cir. 1979).......................................................................................... 10, 11

11

12

*Apple Computer, Inc. v. Microsoft Corp.*,
    35 F.3d 1435 (9th Cir. 1994)......................................................................... 6, 10, 12, 14

13

*Aquawood, LLC v. Toys "R" Us-Delaware, Inc.*,
    2016 WL 10576620 (C.D. Cal. Mar. 10, 2016) ............................................................... 23

14

15

*Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*,
    2018 WL 1805516 (N.D. Cal. Apr. 16, 2018) ................................................................. 22

16

*Asetek Danmark A/S v. CMI USA, Inc.*,
    2014 WL 12644295 (N.D. Cal. Nov. 19, 2014) ................................................................. 5

17

18

*Basile v. Warner Bros. Entm't Inc.*,
    2016 WL 5867432 (C.D. Cal. Jan. 4, 2016).......................................................................... 1

19

*Benay v. Warner Bros. Entm't, Inc.*,
    607 F.3d 620 (9th Cir. 2010)............................................................................................ 13

20

21

*Bissoon-Dath v. Sony Computer Entm't Am., Inc.*,
    694 F. Supp. 2d 1071 (N.D. Cal. 2010) ..................................................................... 15, 17

22

*Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co. Ltd.*,
    149 F. Supp. 3d 1167 (N.D. Cal. 2015) ......................................................................... 9, 10

23

24

*Buggs v. Dreamworks, Inc.*,
    2010 WL 5790251 (C.D. Cal. Dec. 28, 2010) ................................................................. 16

25

*Capcom Co. v. MKR Grp., Inc.*,
    2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) .......................................................... i, 7, 13, 15

26

27

*Capcom U.S.A., Inc. v. Data E. Corp.*,
    1994 WL 1751482 (N.D. Cal. Mar. 16, 1994) ............................................... 8, 10, 15, 16

28

*Cavalier v. Random House, Inc.*,
    297 F.3d 815 (9th Cir. 2002) ............................................................................. 16

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ....................................................................................... 21

*Comedy III Prods., Inc. v. New Line Cinema*,
    200 F.3d 593 (9th Cir. 2000) ..........................................................i, 19, 22, 23

*Cory Van Rijn, Inc. v. California Raisin Advisory Bd.*,
    697 F. Supp. 1136 (E.D. Cal. 1987) .................................................................. 10

*Craigslist Inc. v. 3Taps Inc.*,
    942 F. Supp. 2d 962 (N.D. Cal. 2013) ............................................................... 18

*Dahl v. Toyota Motor Sales USA, Inc.*,
    2015 WL 1034342 (D. Nev. Mar. 10, 2015) ....................................................... 5

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) ..................................................................................i, 18, 19

*Data E. USA, Inc. v. Epyx, Inc.*,
    862 F.2d 204 (9th Cir. 1988) ........................................................................ 14, 15

*Deckers Outdoor Corp. v. J.C. Penney Co. Inc.*,
    45 F. Supp. 3d 1181 (C.D. Cal. 2014) .......................................................... 18, 20

*Diamond Foods v. Hottrix, LLC*,
    2016 WL 3880797 (N.D. Cal. July 18, 2016) .................................................... 20

*DocMagic Inc. v. Ellie Mae Inc.*,
    745 F. Supp. 2d 1119 (N.D. Cal. 2010) ............................................................ 19

*Doe ex rel. Kristen D. v. Willits Unified Sch. Dist.*,
    2010 WL 890158 (N.D. Cal. Mar. 8, 2010) ........................................................ 5

*Dream Games of Arizona, Inc. v. PC Onsite*,
    561 F.3d 983 (9th Cir. 2009) ....................................................................... 14, 15

*DuckHole Inc. v. NBC Universal Media LLC*,
    2013 WL 5797204 (C.D. Cal. Sept. 6, 2013) ...................................................... 5

*See v. Durang*,
    711 F.2d 141 (9th Cir. 1983) ......................................................................... 6, 13

*Durham Indus., Inc. v. Tomy Corp.*,
    630 F.2d 905 ...................................................................................................... 13

*EKB Textiles, Inc. v. Target Corp.*,
    2011 WL 13085924 (C.D. Cal. June 21, 2011) ................................................. 12

*English & Sons, Inc. v. Straw Hat Rests. Inc.*,
    2015 WL 4314364 (N.D. Cal. July 15, 2015) .................................................... 21

*Esplanade Prods., Inc. v. Walt Disney Co.,*
    2017 WL 5635027 (C.D. Cal. Nov. 8, 2017) ............................................. 16, 17

*Fenton v. Wells Fargo Home Mortg.,*
    2017 WL 1346672 (S.D. Cal. Apr. 12, 2017) ................................................... 4

*Fillmore v. Blumhouse Prods., LLC,*
    2017 WL 4708018 (C.D. Cal. July 7, 2017) ..................................................... 5

*First Brands Corp. v. Fred Meyer, Inc.,*
    809 F.2d 1378 (9th Cir. 1987) ........................................................................ 23

*Fitbug Ltd. v. Fitbit, Inc.,*
    78 F. Supp. 3d 1180 (N.D. Cal. 2015) ............................................................ 21

*French West, Inc. v. Macy's Inc.,*
    2013 WL 12133844 (C.D. Cal. Jan. 29, 2013) ................................................. 5

*Frybarger v. Int'l Bus. Machs. Corp.,*
    812 F.2d 525 (9th Cir. 1987) .................................................................... 14, 15

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.,*
    462 F.3d 1072 (9th Cir. 2006) ............................................................... 2, 3, 13

*Glassbaby, LLC v. Provide Gifts, Inc.,*
    2011 WL 2218583 (W.D. Wash. June 6, 2011) .............................................. 19

*Gorski v. The Gymboree Corp.,*
    2014 WL 3533324 (N.D. Cal. July 16, 2014) .............................................. 9, 10

*Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC,*
    2015 WL 3377662 (N.D. Cal. Feb. 24, 2015) ................................................ 22

*Herbert Rosenthal Jewelry Corp. v. Kalpakian,*
    446 F.2d 738 (9th Cir. 1971) .......................................................................... 13

*Identity Arts v. Best Buy Enter. Servs. Inc.,*
    2007 WL 1149155 (N.D. Cal. Apr. 18, 2007) ................................................ 13

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) .................................................................................... 22

*Inhale, Inc. v. Starbuzz Tobacco, Inc.,*
    2017 WL 4163990 (C.D. Cal. May 8, 2017) .................................................... 7

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005) .......................................................................... 2

*L.A. Printex Indus. v. Aeropostale, Inc.,*
    676 F.3d 841 (9th Cir. 2012) ............................................................. 13, 14, 16

*Law Offices of Mathew Higbee v. Expungement Assistance Servs.,*
    214 Cal. App. 4th 544 (2013) ........................................................................ 21

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) ................................................................................................ 16

*Loop AI Labs Inc. v. Gatti*,
  2016 WL 4474584 (N.D. Cal. Aug. 25, 2016) ........................................................................ 1

*Luxul Tech. Inc. v. Nectarlux, LLC*,
  78 F. Supp. 3d 1156 (N.D. Cal. 2015) .................................................................................. 20

*Mattel, Inc. v. MGA Entm't*,
  616 F.3d 904 (9th Cir. 2010) ................................................................................................ 16

*Mercado Latino, Inc. v. Indio Prods., Inc.*,
  2017 WL 1356315 (C.D. Cal. Apr. 11, 2017) ...................................................................... 20

*Metcalf v. Bochco*,
  294 F.3d 1069 (9th Cir. 2002) ........................................................................................ 16, 17

*Monet v. JPMorgan Chase Bank, N.A.*,
  2017 WL 3895790 (N.D. Cal. Sept. 5, 2017) ...................................................................... 20

*Morton & Bassett, LLC v. Organic Spices, Inc.*,
  2017 WL 1425908 (N.D. Cal. Apr. 21, 2017) ...................................................................... 20

*O'Connor v. Uber Techs., Inc.*,
  58 F. Supp. 3d 989 (N.D. Cal. 2014) .................................................................................... 22

*Olson v. Nat'l Broad. Co.*,
  855 F.2d 1446 (9th Cir. 1988) .............................................................................................. 16

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
  2016 WL 6393503 (N.D. Cal. Oct. 28, 2016) ...................................................................... 22

*Oracle USA, Inc. v. Rimini St., Inc.*,
  879 F.3d 948 (9th Cir. 2018) .................................................................................................. 3

*RDF Media Ltd. v. Fox Broad. Co.*,
  372 F. Supp. 2d 556 (C.D. Cal. 2005) ............................................................................ 19, 22

*Rentmeester v. Nike Inc.*,
  883 F.3d 1111 (9th Cir. 2018) ............................................................................... i, 6, 17, 23

*Rice v. Fox Broad. Co.*,
  330 F.3d 1177 (9th Cir. 2003) ........................................................................................ 13, 17

*Riscili v. Gibson Guitar Corp.*,
  605 F. Supp. 2d 558 (S.D.N.Y. 2009) ................................................................................ 5, 6

*Rottlund Co. v. Pinnacle Corp.*,
  2004 WL 1879983 (D. Minn. Aug. 20, 2004) ........................................................................ 8

*Salt Optics, Inc. v. Jand, Inc.*,
  2011 WL 13055856 (C.D. Cal. Mar. 4, 2011) ...................................................................... 23

*Sambonet Paderno Industrie, S.P.A. v. Sur La Table, Inc.*,
    2015 WL 4498795 (C.D. Cal. July 23, 2015) ...................................... 18

*Schneider v. California Dep't of Corr.*,
    151 F.3d 1194 (9th Cir. 1998) ........................................................ 4

*Segal v. Rogue Pictures*,
    2011 WL 11512768 (C.D. Cal. Aug. 19, 2011) .................................. 1

*Shame on You Prods., Inc. v. Elizabeth Banks*,
    120 F. Supp. 3d 1123 (C.D. Cal. 2015) ........................................ 17

*Shaw v. Lindheim*,
    919 F.2d 1353 (9th Cir. 1990) ...................................................... 12

*Sheldon v. MGM Pictures Corp.*,
    81 F.2d 49 (2d Cir. 1936) ............................................................ 13

*Silas v. Home Box Office, Inc.*,
    2016 WL 4251599 (C.D. Cal. July 25, 2016) .................................. 5

*Slep-Tone Entm't v. Wired for Sound*,
    845 F.3d 1246 (9th Cir. 2017) .................................................. i, 19

*Spry Fox LLC v. LOLApps Inc.*,
    2012 WL 5290158 (W.D. Wash. Sept. 18, 2012) ...................... 12, 15

*Straughter v. Raymond*,
    2011 WL 13176750 (C.D. Cal. Nov. 21, 2011) ............................ 5, 6

*Summit Mach. Tools Mfg. v. Victor CNC Sys's*,
    7 F.3d 1434 (9th Cir. 1993) ........................................................ 18

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ........................................................ 2

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) ...................................................... 14

*Thomson v. HMC Grp.*,
    2015 WL 11256775 (C.D. Cal. Oct. 29, 2015) .............................. 7

*Total Recall Techs. v. Luckey*,
    2016 WL 1070656 (N.D. Cal. Mar. 18, 2016). .............................. 21

*Touchpoint Commc'ns, LLC v. Dentalfone, LLC*,
    2015 WL 5918400 (W.D. Wash. Oct. 9, 2015) ........................ 18, 19

*UCAR Tech. (USA) Inc. v. Yan Li*,
    2018 WL 2555429 (N.D. Cal. June 4, 2018) ................................ 21

*United States v. Safran Grp., S.A.*,
    2017 WL 3670792 (N.D. Cal. Aug. 25, 2017) ................................ 4

*Van Ryzin v. CitiMortgage, Inc.*,
    2013 WL 1206807 (C.D. Cal. Mar. 22, 2013) ................................................................. 4

*Williams v. Cavalli*,
    2015 WL 1247065 (C.D. Cal. Feb. 12, 2015) ............................................................... 18

*Williams v. Gaye*,
    895 F.3d 1106 (9th Cir. 2018) ..................................................................................... 14

*X One, Inc. v. Uber Techs., Inc.*,
    2017 WL 878381 (N.D. Cal. Mar. 6, 2017) ................................................................ 12

*Zella v. E.W. Scripps Co.*,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) ........................................................ i, 2, 3, 5, 16

**Statutes**

California Business and Professions Code § 17200 ............................................................ 20

**Other Authorities**

4 Melville B. Nimmer & David Nimmer,
    *Nimmer on Copyright*, § 13.03[E][3][b][v] (2018) .............................................. 17

## SUMMARY OF ARGUMENT

In its opposition, PUBG concedes accusing NetEase of infringing features of *Battlegrounds* that are not protectable in copyright, PUBG fails to address numerous arguments raised by NetEase (despite extra pages of briefing), and PUBG admits that its unfair competition claims are dependent upon its Lanham Act claim. *See* Opp. 18 (admitting "'Winner Winner Chicken Dinner' . . . may not be independently copyrightable"); Opp., *generally* (failing to mention, or defend, PUBG's copyright claim over a gun it did not invent, as raised at Mot. 8–9); Opp. 22–23 ("PUBG's trade dress claim can form the basis of the UCL … claim[.]").  Overall, PUBG's Opposition fails to show substantial similarity, much less virtual identity, in protectable expression.  This requires dismissal of its copyright claim, and all its other claims, which merely repackage that one.

PUBG's assertion of unprotectable features is fatal at the motion to dismiss stage, because those features may not be considered under the Ninth Circuit's extrinsic test. *E.g.*, *Rentmeester v. Nike Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018).  Knowing it will lose on the merits, PUBG shifts gears and urges the Court not to compare the games on a motion to dismiss because NetEase's games are regularly updated—like all modern software.  But that argument is wrong; a plaintiff does not receive "a free pass to the summary judgment stage" just for "alleging copyright infringement in [an] ongoing work." *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1132 (C.D. Cal. 2007).  Once NetEase submitted the works at issue to the Court, PUBG bore the burden of identifying actionable similarities in protectable elements. *Capcom Co. Ltd. v. MKR Grp., Inc.*, 2008 WL 4661479, at *6 (N.D. Cal. Oct. 20, 2008).  PUBG failed to carry that burden.

Separately, PUBG's Lanham Act trade dress claim fails because it is simply a repackaged copyright claim, and thus impermissible under *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003), and *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 596 (9th Cir. 2000).  PUBG's opposition does not address *Comedy III*, and its attempt to distinguish *Dastar* as limited to "reverse passing off claims" is contrary to *Slep-Tone Entertainment v. Wired for Sound*, 845 F.3d 1246 (9th Cir. 2017).  Finally, PUBG's only defense of its unfair competition claims rests on its Lanham Act claim; once that claim fails, so do its unfair competition claims.

## I.      PUBG'S EFFORTS TO HIDE THE WORKS AND GENRE FAIL

Much of PUBG's opposition is devoted to trying to hide facts from the Court, starting with the copies of *Rules of Survival* ("*RoS*") and *Knives Out* ("*KO*") that NetEase submitted with its Request For Judicial Notice ("RJN").  PUBG does not dispute the authenticity of those copies (*see* Opp. 6), and its ill-founded attempt to defeat NetEase's RJN fails.

### A.      Judicial Notice of the Current Versions of NetEase's Games Is Proper.

PUBG argues that if "the versions of *RoS* and *KO* relied upon in the SAC" are not the exact same versions that NetEase submitted to the Court, then the Court may not compare the works and reach the question of non-infringement on a motion to dismiss.  *See* Opp. 6-11.  PUBG cites no authority for its contention that software plaintiffs are immunized from motions to dismiss whenever the accused software has been updated.  Nor could it, as this would-be exception is contrary to basic principles of law governing motions to dismiss copyright claims.

It is black letter law that the Court may judicially notice the works at issue on a motion to dismiss.  *See, e.g.*, *Segal v. Rogue Pictures*, 2011 WL 11512768, at *3 & n.3 (C.D. Cal. Aug. 19, 2011) (granting "judicial notice of the works at issue in this case" and dismissing claim); *Basile v. Warner Bros. Entm't Inc.*, 2016 WL 5867432, at *2 (C.D. Cal. Jan. 4, 2016) ("[T]he Court takes judicial notice *sua sponte* of . . . [the] works at issue in this case[.]").  The current versions of *RoS* and *KO* are at issue here because PUBG's complaint expressly makes them so, plainly accusing "each version" of NetEase's games and expressly referencing "subsequent versions [of *Battlegrounds* released after 'the first early-access public beta version'] that are the subject of the copyright registration applications."  SAC ¶¶121, 122, 128, 133, 138, 25 n.2.  After receiving PUBG's opposition, however, NetEase sought to clarify the scope of the complaint.  *See* LaFond Declaration, submitted herewith, ¶2, Ex. A.  Tellingly, PUBG refused to stipulate that the current versions of NetEase's games are not accused by the SAC, and PUBG refused to respond to the query of NetEase's counsel as to whether PUBG construed its complaint to accuse the current versions of NetEase's games.  *See* LaFond Ex. A.  PUBG's refusal "to stipulate that the subject matter would not be raised" unequivocally confirms that the current versions of the works are not "truly irrelevant."  *Loop AI Labs Inc. v. Gatti*, 2016 WL 4474584, at *3 (N.D. Cal. Aug. 25, 2016).

Given the complaint's allegations that each version is infringing, any version can be considered by the Court on a motion to dismiss under the incorporation by reference doctrine. The doctrine extends to those cases where, as here, "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Contrary to PUBG's argument, the applicability of the incorporation by reference doctrine depends on a plaintiff's actual claims—not artfully worded arguments—because the doctrine's purpose is "to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based[.]" *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (internal quotation omitted). Because PUBG's complaint accuses all versions *RoS* and *KO*, judicial notice of the current versions is proper under the incorporation by reference doctrine.

Contrary to PUBG's suggestion that the Court must consider whatever unidentified version of the parties' games PUBG would prefer (Opp. 6), the Court is free to consider whatever authentic versions of the games NetEase submits. In cases involving ongoing works—where new episodes, versions, or volumes are released over time—a defendant may submit free-standing selections of the accused work (*e.g.*, a handful of complete episodes in a series) in support of a motion to dismiss, and then the burden shifts to the plaintiff to identify whatever other selections it wants the Court to consider. *See, e.g.*, *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072 (9th Cir. 2006); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124 (C.D. Cal. 2007) (granting motion to dismiss). For example, in *Zella v. E.W. Scripps Co.*, the plaintiff accused an entire television series of infringing its copyright in a script, and the defendants moved to dismiss and submitted eight episodes out of 150 episodes of the television series for the Court's review. *Id*. at 1128, 1132. In opposition, the plaintiff argued that other episodes among the remaining 142 might demonstrate infringement, even if the episodes submitted by the Defendant did not. *Id*. at 1132. The Court rejected this argument, explaining that because the plaintiffs "allege[d] that an entire show—made up of individual episodes—infringe[d] on their copyright," there was no need to review all 150 episodes. *Id*. As *Zella* noted, the Ninth Circuit endorsed this approach in *Funky*

1  *Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072 (9th Cir. 2006), where it affirmed non

2  infringement based on a review of just three episodes out of an entire series.

3        Like the plaintiff in *Zella*, PUBG accuses "each version" of *RoS* and *KO* of infringing

4  PUBG's copyrights, not just certain versions.  SAC ¶¶121, 122, 128, 133, 138.  Accordingly,

5  NetEase, like the *Zella* defendant, is entitled to put before the Court any of those versions, and

6  transfer to PUBG the burden to identify "the content of [*RoS* and *KO*] they believe most

7  substantially resemble[s] [*Battlegrounds*.]"  *Zella*, 529 F. Supp. 2d at 1132.  Copyright plaintiffs

8  are not entitled to "a free pass to the summary judgment stage" just because the defendant's work

9  changes over time.  *Id.*; *see also Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 955 (9th Cir.

10  2018) ("Even casual users of computers are familiar with regular software patches and updates

11  intended to correct glitches and to modify software in light of changing circumstances.").

12        PUBG suggests that it would be unfair to consider the current versions of the works

13  because, it asserts, they include newly added features.  Opp. 6–8.  As discussed above, this

14  fairness argument fails because PUBG accused all versions and bears the burden of showing the

15  requisite level of similarity of protected expression for all versions.  Moreover, with one

16  exception, PUBG does not argue that the current versions removed any of the 22 allegedly similar

17  features from *RoS* or *KO*.  *See* Opp. 6–11 (identifying only added features).  The one exception is

18  that the current version of *KO* replaced an accused feature, the jet plane, with helicopters (Opp. 7-

19  8)—a fact NetEase's moving papers addressed, and which does not change the analysis.  Mot. 10.

20  Thus, PUBG's argument about the supposed unfairness of relying on the current versions

21  identifies no meaningful reduction in alleged similarity of certain elements, just an increase in

22  differences.  This is not a ground for ignoring the submitted works.  Therefore, barring

23  amendment of the SAC to delete PUBG's current allegations that "each version" of *RoS* and *KO*

24  infringes PUBG's copyrights (SAC ¶¶121, 122, 128, 133, 138), the current versions of NetEase's

25  games are judicially noticeable and a proper subject for review.

26  **B.    Allegations in PUBG's Brief Not Supported by Declaration Cannot Defeat
           NetEase's Request for Judicial Notice.**

27  To defeat judicial notice, PUBG was required to submit *evidence* challenging the

authenticity of the works NetEase submitted to the Court.  *E.g.*, *Van Ryzin v. CitiMortgage, Inc.*, 2013 WL 1206807, at *3 (C.D. Cal. Mar. 22, 2013) (granting judicial notice because "[a] party can challenge a request for judicial notice by raising a reasonable dispute as to the authenticity of the documents and the facts contained within the documents. . . [and] Plaintiffs do not offer any evidence that would give rise to a reasonable dispute that the facts contained within those documents are false."); *cf. Fenton v. Wells Fargo Home Mortg.*, 2017 WL 1346672, at *3 (S.D. Cal. Apr. 12, 2017) (denying judicial notice based on declaration evidence); *United States v. Safran Grp., S.A.*, 2017 WL 3670792, at *7 (N.D. Cal. Aug. 25, 2017) (denying judicial notice based on declaration evidence).  PUBG has submitted no declaration—nor any other competent evidence—either challenging the authenticity of the works that NetEase submitted to the Court, or providing factual support for PUBG's attorney argument that NetEase has updated its games "solely to fabricate dissimilarities."  *See, e.g.*, Opp. at 6.[1]  Indeed, PUBG *does not dispute* that the works submitted by NetEase are authentic copies of "the current versions of *RoS* and *KO*[.]"  Opp. 6.  Accordingly, judicial notice of the submitted works is appropriate.

    **C.**    **Judicial Notice of the Battle Royale Genre is Proper.**

    PUBG accuses NetEase of "copying" stock elements that are common to the battle royale genre of games—but PUBG wants to hide their stock nature from the Court to avoid dismissal. Across four pages of briefing about "genre," PUBG (i) never denies that there is a battle royale genre of video games, (ii) never denies that *Battlegrounds* is part of that genre, and (iii) never offers an alternate definition of what constitutes stock expression within the battle royale genre. *See* Opp. 2–5.  Effectively, PUBG concedes that the battle royale genre exists and *Battlegrounds* is a part of it, and it offers no evidence that NetEase's description is inaccurate or unreliable.

    As explained in NetEase's RJN, "[c]ourts may also take judicial notice of generic elements of creative works and elements common to a genre." *Fillmore v. Blumhouse Prods., LLC*, 2017

---

[1]  PUBG's argument that NetEase has updated its games "solely to fabricate dissimilarities" is patently false, and the Court may not consider this argument because it relies on facts that are not alleged in PUBG's complaint.  *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may ***not*** look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis in original)).

1    WL 4708018, at *2 (C.D. Cal. July 7, 2017); Dkt. 47-2 at 4–6.  PUBG's arguments to the contrary

2    fail.  PUBG misstates the purpose for which NetEase has submitted the articles describing the

3    battle royale genre; NetEase is not asking the Court to take notice of "the truth of the matters

4    asserted" in the articles.  *Cf.* Opp. 3.  Instead, and consistent with established law, NetEase

5    submits the articles to prove that a given genre is commonly known.  *E.g.*, *Riscili v. Gibson Guitar*

6    *Corp.*, 605 F. Supp. 2d 558, 563 n.3 (S.D.N.Y. 2009) (citing articles in *The San Jose Mercury*

7    *News* and *The Pittsburgh Post-Gazette* to take judicial notice that Linkin Park is a "successful"

8    band in the "nu metal" genre); *Straughter v. Raymond*, 2011 WL 13176750, at *3 (C.D. Cal. Nov.

9    21, 2011) (taking judicial notice of *Billboard* music charts to demonstrate certain genres).

10   PUBG's only proffered authority in opposition is *Asetek Danmark A/S v. CMI USA, Inc.*, 2014

11   WL 12644295 (N.D. Cal. Nov. 19, 2014), which ruled on a motion *in limine* and did not even

12   discuss judicial notice; it does not help PUBG.

13          PUBG asserts that examining articles to demonstrate the existence of a genre somehow

14   implicates the Rule 26 requirement for an "expert report."  Opp. 3.  But PUBG's unsupported

15   argument is incorrect.  *E.g.*, *Straughter*, 2011 WL 13176750, at *3 (judicial notice of Billboard

16   music charts did not require an expert report).  And none of the decisions PUBG relies on refused

17   to examine articles to take judicial notice of a genre.  *See* Opp. 3–4 (citing *Silas v. Home Box*

18   *Office, Inc.*, 2016 WL 4251599, at *7 (C.D. Cal. July 25, 2016) (declining to take judicial notice

19   of other works within a genre, not articles describing the genre); *Dahl v. Toyota Motor Sales USA,*

20   *Inc.*, 2015 WL 1034342, at *3 (D. Nev. Mar. 10, 2015) (declining to take judicial notice of "copies

21   of Google internet searches," about B.B. King's guitar, along with certain results from those

22   searches); *French West, Inc. v. Macy's Inc.*, 2013 WL 12133844, at *2 (C.D. Cal. Jan. 29, 2013)

23   (not discussing a judicial notice request); *Doe ex rel. Kristen D. v. Willits Unified Sch. Dist.*, 2010

24   WL 890158, at *2 (N.D. Cal. Mar. 8, 2010) (*granting*, in part, judicial notice of a relevant

25   document).[2]  Taking judicial notice of a genre based on articles describing that genre remains

---

[2]   PUBG also strangely cites to *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1129 (C.D. Cal. 2007) and *DuckHole Inc. v. NBC Universal Media LLC*, 2013 WL 5797204, at *4 (C.D. Cal. Sept. 6, 2013)—two decisions in which judicial notice was taken of genre elements.  *See* Opp. 5.

1    permissible.  *E.g.*, *Riscili*, 605 F. Supp. 2d at 563 n.3; *Straughter*, 2011 WL 13176750, at *3.

2         Finally, PUBG appears to argue that judicial notice of the battle royale genre is not

3    appropriate because the articles submitted by NetEase do not all recite identical aspects of the

4    battle royale genre.  Opp. 4-5.  PUBG offers no authority for this illogical position.

5         Moreover, even if PUBG had identified a legitimate basis to deny the RJN (it has not),

6    PUBG's complaint nonetheless fails the extrinsic test: PUBG's complaint and opposition

7    demonstrate a lack of sufficient similarity of protectable expression.  *See*, *infra* Section II.A.

8    **II.    PUBG'S OPPOSITION CANNOT SAVE ITS COPYRIGHT CLAIM**

9         **A.    PUBG's Similarity Analysis Fails To Filter Out Unprotectable Elements And
              Account For Differences.**

10        PUBG admits that "on a motion to dismiss" the Court applies the Ninth Circuit's extrinsic

11   test.  Opp. 1 (citing *Rentmeester v. Nike Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018)).  But PUBG

12   fails to apply the extrinsic test, which test requires "'filter[ing] out' the unprotectable elements of

13   [PUBG's] work" and then comparing the remaining protectable elements in the context of the

14   accused works.  *Rentmeester*, 883 F.3d at 1118; *See v. Durang*, 711 F.2d 141, 144 (9th Cir. 1983)

15   ("[I]t was entirely appropriate [for the district court] to view the individual similarities together

16   and in context[.]").  PUBG's opposition does neither.

17        **i.    PUBG Failed to Filter Out Gameplay Mechanics, Stock Expression,
              Scenes A Faire, And Merger of Ideas and Expression.**

18

19        PUBG does not dispute that the extrinsic test requires filtering out game mechanics, stock

20   expression, scenes a faire, and instances where rules or ideas "merge" with expression.  *Compare*

21   Mot. 2–6, *with* Opp., *generally*.  But PUBG's analysis fails to filter out these elements.  For

22   example, PUBG asserts "a shrinking white circle superimposed on the gameplay map" is

23   protectable because it is not "inherent" to the shrinking gameplay mechanic.  Opp. 17.  This

24   misapplies the extrinsic test.  The shrinking white circle on a map is an abstract expression of the

25   idea of a shrinking gameplay area, and thus unprotected merger of idea and expression.  *E.g.*,

26   *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994) (page of paper icon

27   represented the abstract idea of a document and was unprotected idea merged with expression).

28   And basic geometric shapes, like a white circle, are not protectable.  *Inhale, Inc. v. Starbuzz*

1     *Tobacco, Inc.*, 2017 WL 4163990, at *3 (C.D. Cal. May 8, 2017).

2         PUBG's failure to filter out any unprotectable *Battlegrounds* content extends to its analysis

3     of the images in the complaint.  For example, PUBG compares these buildings from the games:

| Building in *Battlegrounds* (Opp. 13) | Building in *Rules of Survival* (Opp. 13) |
|---|---|
|  |  |

9     However, PUBG fails to identify what aspects of these structures are allegedly protectable.  Nor

10     could PUBG have successfully done so, as "[u]nprotectable elements . . . [include] individual

11     standard [building] features, such as windows, doors, and other staple building components[.]"

12     *Thomson v. HMC Grp.*, 2015 WL 11256775, at *10 (C.D. Cal. Oct. 29, 2015); *see also Capcom*

13     *Co. v. MKR Grp., Inc.*, 2008 WL 4661479, at *10 (N.D. Cal. Oct. 20, 2008) (in the context of a

14     video game, "a rural two-story mall with a helipad on top" is unprotectable) ("*Capcom II*").  Thus,

15     PUBG cannot claim copyright protection for a stock two-story house with windows, a gabled roof,

16     and a garage.  Once those unprotectable elements are filtered out, PUBG is left with structures that

17     have different architectural styles, window styles, window placement, exterior materials, colors,

18     and landscaping, and which the player views through vastly different user interfaces.  PUBG's

19     only response is to claim that these differences are "modest."  Opp. 13.  These are not "modest"

20     differences in the eyes of copyright law—after filtration, the structures are completely different.

21         PUBG's other arguments are similarly deficient.  Describing the images below, PUBG

22     asserts that the buildings have the same number of sides and a "unique stairway."  Opp. 13.

| Building in *Battlegrounds* (Opp. 13) | Building in *Knives Out* (Opp. 13) |
|---|---|
|  |  |

28     But the differing general impressions, relative floor sizes, window styles, window placements,

colors, materials, landscaping, and stair configurations overwhelm the generic similarities.  Given the differences in expression, PUBG is essentially claiming a monopoly on two-story octagonal buildings.  But octagonal architectural elements, standing alone, are not protectable.  *E.g.*, *Rottlund Co. v. Pinnacle Corp.*, 2004 WL 1879983, at *14 (D. Minn. Aug. 20, 2004) ("the octagonal entrance, is neither original nor an expression of artistic merit.").

Likewise, PUBG complains that the "frying pan" in NetEase's games has "the same essential form[]" as in its game.  Opp. 14.  But PUBG fails to explain what form a frying pan would take other than a pan attached to a protruding handle—or identify any distinct allegedly copied features that adorn the standard frying pan appearing in NetEase's games.  While PUBG contends that both games feature use of the frying pan "as posterior armor when not in use" (*id.*), the pictures in PUBG's opposition demonstrate that NetEase's games show the frying pan as carried on the side, not over the posterior as in *Battlegrounds*:

| *Battlegrounds* (Opp. 14) | *Rules of Survival* (Opp. 14) | *Rules of Survival* (Opp. 14) |
| --- | --- | --- |



The final set of image comparisons PUBG offers are of crates appearing in the games:

| *Battlegrounds* (Opp. 17) | *Knives Out* (Opp. 17) | *Rules of Survival* (Opp. 17) |
| --- | --- | --- |

PUBG ignores that the crates appear to be made of different materials, with different designs (metal in *Battlegrounds*, wood in *KO*, and durable plastic in *RoS*).  Moreover, crates are real-world objects protected only against virtually identical copying.  *Capcom U.S.A., Inc. v. Data E. Corp.*, 1994 WL 1751482, at *14 (N.D. Cal. Mar. 16, 1994) ("*Capcom I*").

Finally, while PUBG contends that NetEase "ignor[ed]" various images from the

complaint (Opp. 13-14, 17-18), the comparison charts that NetEase submitted with its motion to dismiss addresses every gameplay image from the complaint.  *See* Dkts. 47-22, 47-23.  In sum, PUBG cannot identify similarities in protectable elements from images in its complaint.

### ii.     PUBG May Not Rely on Conclusory Allegations of Protectability.

Unable to identify similarity in protectable elements using game images, PUBG resorts to arguing that its conclusory allegations that any given feature of *Battlegrounds* "constitutes PUBG's unique and protectable expression . . . must be taken as true."  Opp. 16.  But conclusions of law, such as whether expression is protectable, are not credited on motions to dismiss.  *E.g.*, *Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co. Ltd.*, 149 F. Supp. 3d 1167, 1174 (N.D. Cal. 2015) (dismissing complaint where "Plaintiffs make conclusory statements that their characters are 'distinctive ... with names, distinctive physical appearances, clothing, weapons, traits, abilities, and ongoing stories.'"); *Gorski v. The Gymboree Corp.*, 2014 WL 3533324, at *5 (N.D. Cal. July 16, 2014) (dismissing copyright claim where "Gorski has not alleged sufficient facts to suggest that Gorski's designs can pass the extrinsic test for substantial similarity.").  PUBG cites no authority to support its argument that its conclusory allegations "must be taken as true."  Opp. 16.

PUBG's conclusory allegations should not be credited.  For example, PUBG's conclusory allegations that the maps below are "similar" (SAC ¶ 62, 93; Opp. 14) ignores that every detail of each map is different—the roads, rivers, buildings, forests, mountains, islands, and sand areas are all in different locations.



| *Battlegrounds* SAC ¶ 62, 93 | *Knives Out* SAC ¶ 93 | *Rules of Survival* SAC ¶ 62 |

On a motion to dismiss for non-infringement, "the works themselves supersede and control any contrary allegations, conclusions or descriptions of the works as contained in the pleadings."  *Cory*

1   *Van Rijn, Inc. v. California Raisin Advisory Bd.*, 697 F. Supp. 1136, 1138 (E.D. Cal. 1987).

2   PUBG's conclusory allegations of similarity are thus superseded, and irrelevant.

3   PUBG next argues that its use of common, stock, real-world architecture, such as "rural

4   aqueducts, shipping containers, [] water cooling towers . . . a shooting range, ruins, roof decks,

5   and observation towers," is somehow protected.  Opp. 14.  But, PUBG's copyright does not

6   provide a monopoly in video game depictions of stock ports and countryside, and PUBG's

7   opposition is completely silent as to why the extrinsic test does not filter these out.  *See*, *id.*

8   Overall, PUBG's review of the 22 allegedly copyrightable elements identified in its

9   complaint reflects a fundamental misapplication of the law.  As the plaintiff, PUBG is required to

10  allege sufficient facts demonstrating its asserted expression is protectable.  *See Blizzard*, 149 F.

11  Supp. 3d at 1174; *Gorski*, 2014 WL 3533324, at *5.  Throughout its opposition, PUBG repeatedly,

12  and improperly, attempts to shift that burden to NetEase.  For example, NetEase's papers showed

13  that requiring players to "start with nothing" and collect items from spawn locations are

14  unprotectable "rules" (Mot. 6), like collecting $200 when a player "passes go" in *Monopoly*.  *See*

15  *Anti-Monopoly, Inc., v. Gen. Mills Fun Grp.*, 611 F.2d 296, 300 n.1 (9th Cir. 1979) (*Monopoly*

16  could not be protected in copyright); *see also Allen v. Acad. Games League of Am., Inc.*, 89 F.3d

17  614, 617–18 (game rules are generally unprotectable).  In its opposition, PUBG does not explain

18  why *Battlegrounds*' rules uniquely deserve protection; instead PUBG asserts that a conclusory

19  allegation in the complaint controls.  *See* Opp. 16.  That is not the law: PUBG's conclusory

20  allegations require supporting facts.  *Blizzard*, 149 F. Supp. 3d at 1174; *Gorski*, 2014 WL

21  3533324, at *5.  Unwaveringly, PUBG fails to provide them.

22  **Character attributes**.  PUBG's complaint alleges similarity in "a health (hit points) bar"

23  (SAC ¶60), which NetEase demonstrated to be unprotectable.  Mot. 5-6; *e.g.*, *Capcom I*, 1994 WL

24  1751482, at *8 ("[a]lmost all of the games, for example, have a vitality bar").  PUBG's opposition

25  shifts its argument, now pointing to "a heart with a plus symbol, which indicates regeneration, and

26  a running symbol indicating increased speed" (Opp. 15), but simple icons used to communicate

27  ideas are not protectable.  *Apple*, 35 F.3d at 1444.  PUBG also relies on the use of syringes and

28  energy drinks in both games, but ignores both the different and unique art used to express those

1    stock items in each game (*see* Dkts. 47-22 at 28–29; 47-23 at 23–24), and that the association of

2    an object with an effect is an unprotectable rule of the game—similar to permitting a player to

3    build a "hotel" once they own both "Boardwalk" and "Park Place" in *Monopoly*.  *Anti-Monopoly*,

4    611 F.2d at 300 n.1; *Allen*, 89 F.3d at 617–18.

5             **Pre-Game Lobby and Waiting Area.**  PUBG implicitly concedes NetEase's argument

6    that tutorials are not protectable (Mot. 6, Opp. 15), but argues that "while [the lobby] may allow

7    players to practice the controls," it also allows players to "talk to and interact with each other,

8    practice firing their weapon, and roam around the scene."  Opp. 15.  Unfortunately for PUBG, its

9    complaint alleges that *in other games* "[t]ypically, players wait in a lobby, where they can

10   potentially chat."  SAC ¶26.  Thus, PUBG's complaint contradicts its expedient assertion of

11   originality in its opposition.  PUBG also does not explain how players who "practice firing their

12   weapon, and roam around" (Opp. 15–16) are not simply practicing the weapons and movement

13   controls—in other words, experiencing an unprotectable tutorial.  Mot. 6.

14            **Air Jump.**  PUBG's defense of the air jump game mechanic (Opp. 16) misapplies

15   copyright law to game rules.  Rules are unprotectable because they are abstract ideas, which

16   cannot constitute copyrightable expression.  *Allen*, 89 F.3d at 617–18.  That a card game could set

17   the winning total at 20 or 22, does not make the "blackjack" rule of playing to 21 copyrightable,

18   because playing to 21 is an idea.  Likewise, PUBG's rule requiring players to parachute onto an

19   island does not magically achieve copyright protection simply because "there are various ways in

20   which players [could] appear," instead.  *Cf.* Opp. 16.  The *expression* of that game rule, such as the

21   design of the parachute, or the plane, or even the graphical user interface used to control the chute,

22   could be copyrightable, but as NetEase demonstrated, that expression is different in all of the

23   games at issue—a fact PUBG ignores.  *See* Mot. 7.

24            **Weapons/Vehicles/Consumables/Clothing/Equipment/Configuration.**  PUBG's only

25   defense of claiming copyright protection over weapons, vehicles, food, medicine, clothing, and

26   gear PUBG did not originally create is an appeal to conclusory allegations of "originality" in the

27   complaint.  *See* Opp. 17–18.  The only example of allegedly original work mentioned in PUBG's

28   opposition is the "sniper rifle cheek pad" (Opp. 18)—but patent records reveal that PUBG merely

1   copied a design that existed years before its game. *See* LaFond Ex. B.[3]

| *Battlegrounds* (SAC ¶69) | US Patent 9,726,444 | *Rules of Survival* (SAC ¶69) |
|---|---|---|
|  |  |  |

As raised in NetEase's motion (and not addressed by PUBG), the complaint expressly alleges that PUBG *intended* to copy real-world designs.  *See* SAC ¶32.  Having copied real world designs for its own in-game art, PUBG can hardly complain if NetEase does so, too.

**"Winner winner chicken dinner."**  PUBG concedes that this phrase is neither copyrightable nor original to PUBG, and it is thus unprotectable. Opp. 18.  However, relying on *Spry Fox LLC v. LOLApps Inc.*, 2012 WL 5290158 (W.D. Wash. Sept. 18, 2012), PUBG argues that it is nonetheless "relevant to the infringement analysis"—slyly omitting reference to which part of the infringement analysis.  Unprotectable elements may be considered during the Ninth Circuit's intrinsic test. *E.g.*, *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990); *see also Spry Fox LLC v. LOLApps Inc.*, 2012 WL 5290158, at *7 (W.D. Wash. Sept. 18, 2012) (performing both an intrinsic and extrinsic analysis).  But under the extrinsic test, which PUBG admits is the only test relevant on a motion to dismiss (Opp. 1), PUBG "may place ***no*** reliance upon any similarity in expression resulting from unprotectable elements." *Apple*, 35 F.3d at 1446 (internal quotation omitted).  Thus "winner winner chicken dinner" is irrelevant at this stage.[4]

**iii.    PUBG's Argument That Differences Do Not Matter Is Incorrect.**

NetEase's moving papers demonstrated numerous differences in protected elements between the games.  *See* Mot. 9; Dkts. 47-22, 47-23.  PUBG does not deny these differences, but

---

[3]   NetEase requests the Court take judicial notice of US Patent No. 9,726,444, which lists an application date of March 20, 2014, and is attached as Exhibit B to the concurrently submitted LaFond Declaration.  "Patents are matters of public record and the proper subject of judicial notice." *X One, Inc. v. Uber Techs., Inc.*, 2017 WL 878381, at *4 (N.D. Cal. Mar. 6, 2017).

[4]   PUBG's reliance on *EKB Textiles, Inc. v. Target Corp.*, 2011 WL 13085924, at *3 (C.D. Cal. June 21, 2011), is similarly unhelpful to its argument.  The *EKB* court found differences in unprotected elements, and similarities in protected elements (*id.*)—the exact opposite of PUBG's allegations.

1    instead argues (i) that they should not be considered on a motion to dismiss because they are in

2    subsequent versions of the works, which fails for the reasons discussed in Section I, and (ii) that

3    differences may not be considered as part of the extrinsic test, which is legally erroneous.

4           PUBG's only cited authority for the proposition that dissimilarities should be irrelevant is

5    *L.A. Printex Indus. v. Aeropostale, Inc*., 676 F.3d 841 (9th Cir. 2012), a fabric design case (which

6    the Ninth Circuit holds to be completely inapposite to video games, *see infra* n.6), and *Sheldon v.*

7    *MGM Pictures Corp.*, 81 F.2d 49 (2d Cir. 1936), a Second Circuit case from 1936 about a stage

8    play.[5]  Neither is good authority here.  Rather, when comparing how "protected [elements a]re

9    expressed. . . it [i]s entirely appropriate to view the individual similarities together ***and in***

10   ***context***[.]"  *See v. Durang*, 711 F.2d at 144 (emphasis added).  Accordingly, the Ninth Circuit

11   routinely affirms consideration of differences.  *E.g.*, *Benay v. Warner Bros. Entm't, Inc.,* 607 F.3d

12   620, 625 (9th Cir. 2010) ("We agree with the district court that '[w]hile on cursory review, these

13   similarities may appear substantial, a closer examination of the protectable elements … exposes

14   many more differences than similarities between [the works]'"); *Funky Films*, 462 F.3d at 1078

15   ("At first blush, these apparent similarities in plot appear significant; however, an actual reading of

16   the two works reveals greater, more significant differences … ."); *Rice v. Fox Broad. Co*., 330

17   F.3d 1177, 1117 n.4 (9th Cir. 2003) ("We also note that there are extensive differences in

18   production value between the two works."); *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446

19   F.2d 738, 741 (9th Cir. 1971) (noting "differences between defendants' and plaintiff's bees—

20   notably in the veining of the wings.").  Thus, it is improper to ignore differences in the works at

21   issue, as PUBG advocates.  As *Capcom II* explained when comparing the parties' works, a

22   "[p]laintiff cannot merely sweep aside" differences between the accused and asserted works.  2008

23   WL 4661479, at *9; *see also Identity Arts v. Best Buy Enter. Servs. Inc.*, 2007 WL 1149155, at

24   *15 (N.D. Cal. Apr. 18, 2007) (same).  PUBG cannot defeat NetEase's motion by "sweep[ing]

25   aside" glaring differences in the games' artwork, themes, and settings, including the color palettes

26   _____

27   [5]   Moreover, more recent Second Circuit law takes a different view.  *See, e.g.*, *Durham Indus.,*
     *Inc. v. Tomy Corp.,* 630 F.2d 905, 913 ("As a matter of logic as well as law, the more numerous
     the differences between two works the less likely it is that they will create the same aesthetic

28   impact so that one will appear to have been appropriated from the other.").

(purples and pinks in *KO*, turquoise and yellow in *RoS*), weather (*e.g.*, snow on the ground), and fanciful expression (science-fiction-esque guns in *RoS*, dragon themes in *KO*).  *See* Mot. 9-10; *see also* Dkts. 47-16, 47-17, 47-18, 47-19, 47-20, 47-21, 47-22, 47-23.

### B.   PUBG's Attack On The Virtual Identity Standard Ignores Controlling Law.

#### i.   The Ninth Circuit Has Repeatedly Affirmed Use of The Virtual Identity Standard When Analyzing Video Game Copyrights.

The only citation PUBG offers for its contention that virtual identity does not apply here is *Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004).  *See* Opp. 11-12.[6]  But the nature of the copyrighted works—music in the case of *Swirsky*—determines which standard is used.  "Musical compositions are not confined to a narrow range of expression . . . [and t]herefore, the [] copyright is not limited to only thin copyright protection, and the [plaintiff] need not prove virtual identity to substantiate their infringement action."  *Williams v. Gaye*, 895 F.3d 1106, 1120 (9th Cir. 2018).  In contrast, the Ninth Circuit has repeatedly affirmed the virtual identity standard for video games.  *E.g.*, *Frybarger v. Int'l Bus. Machs. Corp.*, 812 F.2d 525, 530 (9th Cir. 1987) ("based on the technical requirements of the videogame medium, [a video game copyright] may be protected only against virtually identical copying"); *Data E. USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 209 (9th Cir. 1988) (analyzing video game and ruling "there will be protection against nothing other than identical copying.").  Moreover, after *Swirsky,* the Ninth Circuit once again affirmed the application of the virtual identity standard to video games.  *See Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 989 (9th Cir. 2009) (affirming jury instructions that required plaintiff to show "that the accused screen displays are ***virtually identical*** to protected elements of corresponding screen displays of the" asserted video game (emphasis added)).  PUBG's disregard of Ninth Circuit authority regarding video games cannot save its claim.

---

[6] Relying on cases that examine works other than audio-visual works, much less video games, is a pervasive problem throughout PUBG's opposition.  For example, PUBG also repeatedly cites decisions about fabric designs (*e.g.,* Opp. 2, 18 (citing *LA Printex Indus.,* 676 F.3d 841), which are not subject to analytic dissection during the extrinsic test.  *See L.A. Printex*, 676 F.3d at 849 ("reject[ing] the argument that, in comparing fabric designs for copyright infringement, a court must dissect them into their separate components, and compare only those elements which are in themselves copyrightable." (internal quotation and markup omitted)).  But analytic dissection applies to video games.  *E.g.*, *Apple*, 35 F.3d at 1445 ("We have dissected videogames[.]").

1    Moreover, in those few instances where a court within this Circuit applied a standard other

2    than virtual identity to analyze a video game, the games at issue either told a narrative story using

3    fully developed characters (*e.g.*, *Bisson-Dath v. Sony Computer Entm't Am., Inc.*, 694 F. Supp.

4    2d 1071, 1081 (N.D. Cal. 2010); *Capcom II*, 2008 WL 4661479, at *7), or involved completely

5    fanciful expression depicting a sequence of events that could not occur in the real-world.  *E.g.*,

6    *Spry Fox*, 2012 WL 5290158, at *2 (depicting imaginary creatures such as "Yetis" and sequences

7    of events such as "Trees become Tents. Tents become Cabins and so on.").  But PUBG's game

8    has no narrative or plot, does not depict developed characters, and emulates real-world objects

9    performing real-world functions—***not*** fanciful fictional expression like "Yetis" "Imperial Bots,"

10   and a sequence of events where "grass" magically becomes a "cabin."  *Cf. Spry Fox*, 2012 WL

11   5290158, at *2.  Where games merely mimic the real-world without narrative—like PUBG's

12   game—the virtual identity standard predominates.  *E.g.*, *Capcom I*, 1994 WL 1751482, at *14;

13   *Frybarger*, 812 F.2d at 530; *Data E. USA*, 862 F.2d at 209; *Dream Games*, 561 F.3d at 989.

14          **ii.      PUBG's Use of Real-World Object Dictates Using Virtual Identity.**

15   PUBG's complaint admits that *Battlegrounds* mimics real-world objects, sounds, and

16   movements.  *See* Mot. 8-9; SAC ¶¶32, 44, 45, 64.  PUBG's opposition does not deny this—nor

17   could it, as PUBG has openly copied Thompson Submachine Guns, M16 rifles, ghillie suits and

18   myriad other items from the real world.  *Id.*; *see, generally* Opp. (failing to address NetEase's

19   arguments about of Tommy Guns, M16 rifles, or ghillie suits).  To paraphrase *Capcom I*: "The

20   advantage [PUBG] gained in relying on these stock [weapons] and standard [objects] is that they

21   are immediately recognizable and familiar to the player.  One of the risks consequent to this tactic,

22   however, is that much of [*Battlegrounds*] is left unprotectable from competitors' simulations."

23   *Capcom I*, 1994 WL 1751482, at *14.  PUBG's decision to copy real-world guns, vehicles, and

24   buildings leaves PUBG in the same position as the *Capcom I* plaintiff—subject to the virtual

25   identity standard.  *Id.* at *13.

26   PUBG argues that *Capcom I* "invoked the 'virtual identity' standard solely in connection

27   with the 'intrinsic test.'"  Opp. 12.  That is not a meaningful distinction, however, because "[t]he

28   standard for infringement—substantially similar or virtually identical—determined at the

1   'extrinsic' stage is applied at the 'intrinsic' stage." *Mattel, Inc. v. MGA Entm't*, 616 F.3d 904, 914

2   (9th Cir. 2010).  In other words, in *Capcom I* the virtual identity standard applied equally at the

3   intrinsic and extrinsic stages.  PUBG ignores this, just as it ignored NetEase's arguments about

4   PUBG's copying of real-world guns, vehicles, and objects.

5            **iii.      PUBG's "Any Similarities" Standard Is Unsupported and Incorrect.**

6            PUBG argues NetEase's "motion to dismiss must be denied if PUBG's complaint

7   identifies ***any set*** of 'articulable similarities' between 'specific expressive elements' of works."

8   Opp. 2 (emphasis added).  However, the authority PUBG relies upon, *LA Printex Industries*, 676

9   F.3d 841, contains no such language.  NetEase has been unable to find any cases supporting the

10  proposition that a plaintiff may simply allege "any set" of "articulable similarities" to survive a

11  motion to dismiss, and such a standard would contradict Ninth Circuit precedent.  *E.g.*, *Litchfield*

12  *v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984) (articulable set of "random similarities scattered

13  throughout the works" cannot be the basis for a copyright infringement claim); *Cavalier v.*

14  *Random House, Inc.*, 297 F.3d 815, 825 (9th Cir. 2002) (same); *Olson v. Nat'l Broad. Co.*, 855

15  F.2d 1446, 1450 (9th Cir. 1988) (same).  PUBG's unsupported, novel test must fail.

16            **C.      PUBG's *Metcalf* Argument Fails.**

17            Unable to show virtual identity in—or even substantial similarity of—protectable

18  elements, PUBG attempts to state a claim based on ***unprotectable*** elements relying on *Metcalf v.*

19  *Bochco*, 294 F.3d 1069 (9th Cir. 2002).  *See* Opp. 19-20.  This attempt speaks volumes because

20  *Metcalf* is the last refuge of any desperate copyright plaintiff.  "Many courts have been reluctant to

21  expand [*Metcalf*'s] concept [of finding protectable '[t]he particular sequence in which an author

22  strings a *significant* number of unprotectable elements'] beyond the clear-cut case presented in

23  *Metcalf*."  *Zella*, 529 F. Supp. 2d at 1137–38 (collecting cases); *see also Buggs v. Dreamworks,*

24  *Inc.*, 2010 WL 5790251, at *7 (C.D. Cal. Dec. 28, 2010) (collecting cases); *Esplanade Prods., Inc.*

25  *v. Walt Disney Co.*, 2017 WL 5635027, at *16 (C.D. Cal. Nov. 8, 2017) (collecting cases).  This

26  reluctance is due in part to *Metcalf*'s reasoning that the plaintiff's case was "strengthened

27  considerably" by the high degree of access the writer and star of the accused show were alleged to

28  have had to the asserted scripts.  294 F.3d at 1075.  This is what is known as the "inverse ratio

rule" (*i.e.*, the higher the showing of access, the lower the similarity required).  *E.g.*, *Rice*, 330 F.3d at 1178, 1179 & n.6 (explaining rule and noting *Metcalf*'s application of it).  But earlier this year, the Ninth Circuit confirmed the rule's inapplicability to determining actionable copying, holding the rule "assists only in proving copying, not in proving unlawful appropriation, the only element at issue in this case."  *Rentmeester*, 883 F.3d at 1124.  Thus, contrary to *Metcalf*'s reasoning, "[t]he showing of substantial similarity necessary to prove unlawful appropriation does not vary with the degree of access the plaintiff has shown."  *Id.*

Even assuming *Metcalf* permits claims based on similarity in purely unprotectable elements of PUBG's game (it does not), *Metcalf* requires a showing of striking similarity, which PUBG did not allege.  "Courts routinely decline to apply *Metcalf* when two works' unprotected elements are not arranged in a strikingly similar fashion."  *Esplanade*, 2017 WL 5635027, at *16.  "'[S]triking similarity' [] means that, in human experience, it is virtually impossible that the two works could have been independently created[.]"  *Shame on You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1170 (C.D. Cal. 2015) (internal quotation omitted).  The *Metcalf* court found striking similarity based on congruent narrative plots and fully developed characters.  294 F.3d at 1073–74 (describing love triangle and political subplot at inner city Los Angeles hospital, played out by strikingly similar, multi-facetted characters).  By contrast, *Battlegrounds*, *RoS*, and *KO* contain no similar narrative plots or fully developed protectable characters.  PUBG neither alleges nor argues otherwise.  *See generally* SAC.  "[A]bsent similarity in plot line (the sequence of the works), the fact that [] mood, setting, and pace [a]re comparable typically should not lead to liability."  4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 13.03[E][3][b][v] (2018); *see also Bissoon-Dath*, 694 F. Supp. 2d at 1081–92 (N.D. Cal. 2010) (similarity in unprotectable setting and characters insufficient for *Metcalf* to apply).  Therefore, the facts here do not satisfy *Metcalf*'s criteria.

## III.    PUBG'S OPPOSITION CANNOT SAVE ITS LANHAM ACT CLAIM

### A.    PUBG's Trade Dress Claim Is Improper Under *Dastar*.

PUBG's Lanham Act claim is essentially one for plagiarism, which is solely a concept of copyright law.  *E.g.*, *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33 (2003).

1  PUBG's opposition makes no effort to establish a different theory for its Lanham Act claim, nor

2  does it dispute that the games at issue are communicative works and non-tangible goods. *See id*.

3  ("The problem with . . . according special treatment to communicative products is that it causes

4  the Lanham Act to conflict with the law of copyright . . . ."); *compare* Mot. 11-12 (discussing

5  *Dastar*), *with* Opp. 20-21.  Accordingly, PUBG's claim fails under *Dastar*.

6       PUBG challenges *Dastar*'s preemptive effect on only one ground—that the Supreme

7  Court's holding is ostensibly limited to "reverse passing off" cases.  Opp. at 20.  But *Dastar*

8  provides no grounds to limit its application to "reverse passing off" cases where "the operative

9  issue remains the same: the false designation of origin—whatever origin that may be." *Deckers*

10  *Outdoor Corp. v. J.C. Penney Co. Inc.*, 45 F. Supp. 3d 1181, 1185 (C.D. Cal. 2014) (rejecting

11  argument that *Dastar* is limited to reverse passing off).  In other words, the distinction between

12  forward and reverse confusion cases does nothing to lessen the principal that the Lanham Act does

13  not protect works within "the spheres protected by, or intentionally left unprotected by, copyright

14  and patent law." *Summit Mach. Tools Mfg. v. Victor CNC Sys's*, 7 F.3d 1434, 1438 (9th Cir.

15  1993); *accord Touchpoint Commc'ns, LLC v. Dentalfone, LLC*, 2015 WL 5918400, at *4 (W.D.

16  Wash. Oct. 9, 2015).

17       Unlike the allegations of false designation of origin concerning communicative goods at

18  issue in *Dastar* and here, the facts of the cases PUBG relies on are highly distinguishable.

19  *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 978 (N.D. Cal. 2013) (cited in Opp. 21),

20  permitted a copyright claim concerning *content* copied from Craigslist and a Lanham Act claim

21  concerning use of Craigslist's *trademarked name*.  Both *Williams v. Cavalli*, 2015 WL 1247065

22  (C.D. Cal. Feb. 12, 2015) (cited at Opp. 20), and *Sambonet Paderno Industrie, S.P.A. v. Sur La*

23  *Table, Inc.*, 2015 WL 4498795, at *5 (C.D. Cal. July 23, 2015) (cited at Opp. 21) concerned

24  tangible, non-communicative goods: t-shirts and vegetable slicers, respectively.  Thus, the factual

25  circumstances of these cases compel a different result from *Dastar*.  Although those decisions also

26  distinguish the claims before them as not "reverse passing off" claims, that reasoning is

27  inconsistent with the Ninth Circuit's subsequent—controlling—opinion in *Slep-Tone Entm't v.*

28  *Wired for Sound*, which affirmed the dismissal of a forward confusion claim that "allege[ed]

1    possible confusion over the source of content" within a communicative, intangible good, based on

2    *Dastar. See* 845 F.3d 1246, 1249 (9th Cir. 2017) (quoting *Dastar*, 539 U.S. at 31-32).

3              **B.      PUBG Has Failed to Allege Protectable Trade Dress.**

4              PUBG's trade dress claim, which "repeats and realleges" the entirety of its copyright claim

5    (SAC ¶¶ 126–28; Mot. at 11), fails because it "is merely [a] repackaging [of] its copyright claims

6    in trademark causes of action." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 564

7    (C.D. Cal. 2005) (granting motion to dismiss); *see also Touchpoint Commc'ns*, 2015 WL

8    5918400, at *4 (dismissing counterclaim "[b]ecause defendant claims copyright protection for the

9    same design that entails its trade dress[.]"). *RDF Media* is instructive; the court dismissed the

10   Lanham Act claim where the plaintiff asserted both copyright and trade dress over a reality

11   television show entitled "Wife Swap," claiming that the audiovisual elements making up the work

12   constituted both copyrightable expression and trade dress. 372 F. Supp. 2d at 564. As *RDF*

13   *Media* explained, that theory "has been rejected on numerous occasions" because it requires

14   asserting trade dress protection over "elements [that] ***are*** the product," instead of separate

15   distinctive elements used to identify the product. *Id.* at 564 (citing, *inter alia*, *Comedy III Prods.,*

16   *Inc. v. New Line Cinema*, 200 F.3d 593 (9th Cir. 2000)). PUBG's claims are no different: PUBG's

17   game is "the product"—it is not a trade dress.

18             PUBG attempts to defend its threadbare trade dress claim on the grounds that functionality

19   is a factual issue that cannot be determined on a motion to dismiss. Opp. 21. This is not correct; a

20   trade dress claim must be plead clearly and provide some indication that the claim is non-

21   functional. *E.g.*, *Glassbaby, LLC v. Provide Gifts, Inc.*, 2011 WL 2218583, at *2 (W.D. Wash.

22   June 6, 2011) (motion to dismiss granted for failure to identify non-functionality). PUBG has

23   failed to clearly plead non-functional trade dress here, having muddled its allegations as to what is

24   its "product" and what is the product's "trade dress." By contrast, in PUBG's cited cases, the

25   plaintiff provided specific allegations from which non-functionality could be inferred. *See*

26   *DocMagic Inc. v. Ellie Mae Inc.*, 745 F. Supp. 2d 1119, 1141 (N.D. Cal. 2010) (claiming trade

27   dress over 3-column "table-like list" with specifically arranged borders and fields); *Mercado*

28   *Latino, Inc. v. Indio Prods., Inc.*, 2017 WL 1356315, at *1 (C.D. Cal. Apr. 11, 2017) (claiming

trade dress over die-cut label with unique "bullet" shape, specific black border, and alternating sizes and colors). PUBG's complaint contains no such allegations, and, unlike in those cases, the complaint explicitly pleads functionality. *E.g.*, SAC ¶47 (alleging "bombardment zone" serves the function of causing player interaction, while also claiming it is "secondary meaning" trade dress); *see also* Mot. 13 (giving other examples). Even *Diamond Foods v. Hottrix, LLC*, 2016 WL 3880797, at *12 (N.D. Cal. July 18, 2016), which PUBG cites, acknowledges that an assertion of non-functionality must be "based on allegations of specific expressive elements that … are unlike a realistic portrayal of popcorn." PUBG's conclusory allegation that its trade dress is "not functional" (SAC ¶127) is not sufficient at the motion to dismiss stage. *E.g. Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, 2015 WL 12731929, at *5 (C.D. Cal. May 8, 2015) ("Plaintiff does not support its conclusory allegation that the Bailey Button Boot Trade Dress is non-functional in the complaint, [so] the Court GRANTS the motion to dismiss[.]").

## IV.   PUBG'S § 17200 CLAIM FALLS ALONG WITH ITS LANHAM ACT CLAIM.

PUBG's cursory effort to defend its ancillary unfair competition claims fails. Because its trade dress claim must be dismissed, PUBG's unfair competition claims must also be dismissed. As stated in NetEase's motion, California Business and Professions Code § 17200 ("the UCL") "provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent, and each prong of the UCL provides a separate and distinct legal theory of liability" with unique requirements. *Monet v. JPMorgan Chase Bank, N.A.*, 2017 WL 3895790, at *7 (N.D. Cal. Sept. 5, 2017).

PUBG argues that it has established the "unlawful" prong because a violation of an underlying law "is a *per se* violation of the UCL." Opp. at 22 (citing *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1174 (N.D. Cal. 2015) and *Morton & Bassett, LLC v. Organic Spices, Inc.*, 2017 WL 1425908, at *10 (N.D. Cal. Apr. 21, 2017)). But because PUBG's trade dress infringement claim fails (see Section III), there can be no violation of the UCL. Mot. 14. Although the SAC also alleges that NetEase has "committed unlawful, unfair, and/or fraudulent business acts by copying" (SAC ¶133), PUBG implicitly concedes (by failing to respond to NetEase's argument at Mot. 14) that its copyright claim could not support a violation of

1    the UCL because it would be expressly preempted by the Copyright Act.[7]

2            PUBG argues that it has established the "unfair" prong because its trade dress claim brings

3    within the UCL's ambit "any conduct that 'significantly threatens or harms competition.'"  Opp. at

4    22 (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999)).

5    But "harm to competition, … is distinct from harm to a competitor."  *UCAR Tech. (USA) Inc. v.*

6    *Yan Li*, 2018 WL 2555429, at *7 (N.D. Cal. June 4, 2018); *see also Total Recall Techs. v. Luckey*,

7    2016 WL 1070656, at *5 (N.D. Cal. Mar. 18, 2016).  Both *UCAR* and *Total Recall* recognized that

8    copying a competitor's intellectual property—which is what PUBG accuses NetEase of doing—

9    may harm a competitor, but actually helps competition by bringing a new entrant into the market.

10   *E.g. Total Recall*, 2016 WL 1070656, at *5 ("If anything, Luckey's conduct *helped* competition by

11   bringing a new competitor into the market").  PUBG's cited authority, *English & Sons, Inc. v.*

12   *Straw Hat Rest's, Inc.*, 2015 WL 4314364, at *13 (N.D. Cal. July 15, 2015), is not to the contrary:

13   that decision only permitted a UCL claim to proceed because the plaintiff stated a Lanham Act

14   claim—which PUBG's complaint does not.  *See supra,* Section III.

15           The only truly anti-competitive allegation that PUBG can identify is the conclusory

16   allegations that NetEase "introduc[ed] . . . games to the marketplace at or below cost."

17   SAC ¶133.[8]  But PUBG does not distinguish the on-point authority from NetEase's moving papers

18   showing that "below cost" claims may not be alleged in a conclusory fashion.  *See* Mot. 14 (citing

19   *Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*, 2018 WL 1805516, at *11 (N.D.

20   Cal. Apr. 16, 2018) and *Eastman v. Quest Diagnostics Inc.*, 108 F. Supp. 3d 827, 838 (N.D. Cal.

---

21   [7]  PUBG's assertion that common law violations can support an "unlawful" UCL claim (Opp. 22)
22   is wrong.  A plaintiff who "does not go beyond alleging a violation of common law [] fails to state
     a claim under the unlawful prong of § 17200."  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622
23   F.3d 1035, 1044 (9th Cir. 2010).  PUBG's citation to *People v. E.W.A.P., Inc.* 106 Cal. App. 3d
     315 (1980) is unavailing because it pre-dates the Ninth Circuit's controlling decision in *Shroyer*.
24   *See Jones-Hamilton Co. v. Beazer Materials & Servs., Inc.*, 973 F.2d 688, 696 n.4 (9th Cir. 1992).

25   [8]  In a footnote, PUBG cites to *Law Offices of Mathew Higbee v. Expungement Assistance Servs.*,
     214 Cal. App. 4th 544, 561 (2013) and *AngioScore, Inc. v. TriReme Med., LLC*, 70 F. Supp. 3d
26   951, 962 (N.D. Cal. 2014) for the proposition that "injury to market share" can support UCL
     standing.  Opp. 23 n.7.  But PUBG does not allege "injury to market share"—instead, PUBG
27   alleges that NetEase "gain[ed] market share," (SAC ¶¶56, 88), and simply alleging a gain by the
     defendant is insufficient to state UCL standing.  *E.g.*, *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d
28   1180, 1197 (N.D. Cal. 2015) (gain by defendant insufficient without corresponding loss by
     plaintiff).

1    2015)).  PUBG also never explains its failure to allege the pricing of in-app purchases in *RoS* and

2    *KO*, despite references to in-app purchases in the images extracted in the complaint.  *See* Mot. 14;

3    SAC ¶82.  PUBG cannot possibly have alleged "below cost" sales when it does not allege the

4    prices at all.  *Id*.

5         Finally, PUBG argues that it has established a "fraudulent" UCL claim because consumer

6    confusion satisfies the reliance requirement.  Opp. 22.  That is wrong: PUBG was required to

7    plead its own reliance on a statement by NetEase in order to state a fraudulent UCL claim.  *See*

8    *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1002 (N.D. Cal. 2014).  PUBG does not

9    dispute NetEase's authority on this point, but instead cites *Openwave Messaging, Inc. v. Open-*

10   *Xchange, Inc.*, 2016 WL 6393503 (N.D. Cal. Oct. 28, 2016) and *Heartland Payment Sys., Inc. v.*

11   *Mercury Payment Sys., LLC*, 2015 WL 3377662 (N.D. Cal. Feb. 24, 2015) for the proposition that

12   "federal courts sitting in California disagree" on whether a plaintiff must plead its own reliance.

13   Opp. 23 (quoting *Heartland Payment*, 2015 WL 3377662 at *7).  Unfortunately for PUBG,

14   whether federal courts disagree is irrelevant: the California Supreme Court "imposes an actual

15   reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud

16   prong" (*In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009), and the California Supreme Court's

17   decisions are binding on this point.  *See Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1164 (9th Cir.

18   1995).  Having failed to plead its own reliance, PUBG's fraudulent UCL claim fails.  *See A White*

19   *& Yellow Cab, Inc. v. Uber Techs., Inc.*, 2017 WL 1208384, at *9 (N.D. Cal. Mar. 31, 2017)

20   (White, J.) (dismissing UCL claim because of plaintiff's failure to allege its own reliance).

21   **V.    PUBG'S PREEMPTED STATE LAW UNFAIR COMPETITION CLAIM FAILS.**

22        In its moving papers, NetEase cited *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d

23   593, 596 (9th Cir. 2000), for the proposition that PUBG cannot attempt to slice up its copyrighted

24   audio-visual work, *Battlegrounds*, into a collection alleged "trademarks" or trade dress—a

25   position that is uncontroversial in the Ninth Circuit.  *E.g.*, *RDF Media*, 372 F. Supp. 2d at 564

26   (applying *Comedy III* to trade dress); *see also* Mot. 15.  Under *Comedy III*, PUBG cannot state a

27   common law unfair competition claim, because excerpts of a copyrighted work cannot be recast as

28   "trade dress," and PUBG only identifies excerpts of a copyrighted work as trade dress.  *See* SAC

¶¶26–27, 29, 31, 38–39, 41, 46–50.  This is fatal to PUBG's common law unfair competition claim, which requires pleading distinct trademarks or trade dress.  *See* Mot. 15.  PUBG never even discusses *Comedy III*, and instead claims "[l]egions of cases" recognize Lanham Act claims are "equivalent" to common law unfair competition.  Opp. 23.  But rather than "legions," of decisions, PUBG only identifies two cases, both of which were decided ***before*** *Comedy III*, and neither of which stands for the proposition that a plaintiff may manufacture a trade dress claim by slicing up a copyrighted work.  *See id.* (citing *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir. 1987) and *Am. Economy Ins. Co. v. Reboans, Inc.*, 900 F. Supp. 1246, 1254–55 (N.D. Cal. 1994)).  Outdated case law addressing an unrelated argument does not save PUBG's common law unfair competition claim, which fails under *Comedy III*.[9]

Moreover, PUBG's argument to the contrary is centered on the false premise that its Lanham Act claim will survive preemption by the Copyright Act because it is premised on "passing off."  But, as NetEase has set out above, PUBG has no "well-pleaded passing off claim" that can avoid preemption by the Copyright Act.  *See Aquawood, LLC v. Toys "R" Us-Delaware, Inc.*, 2016 WL 10576620, at *3 (C.D. Cal. Mar. 10, 2016).  Accordingly, PUBG's common law unfair competition claim must fail.

## VI.   CONCLUSION

PUBG's complaint should be dismissed in its entirety with prejudice.  PUBG's opposition does not identify unpleaded facts that could save its claims.  As the works submitted to the Court for comparison confirm, amendment of PUBG's claims would be futile.  *See Rentmeester*, 883 F.3d at 1125.

---

[9]   PUBG's reliance on *Salt Optics, Inc. v. Jand, Inc.*, 2011 WL 13055856, at *3 (C.D. Cal. Mar. 4, 2011) (Opp. 5 n.5) is unwarranted because *Salt Optics* examined trade dress in an entire website—which it found was not eligible for copyright protection; it did not attempt to slice up a contiguous audio-visual work that is theoretically eligible for copyright protection to concoct a trade dress claim, as PUBG does here, which is what *Comedy III* prohibits.

1    DATED: August 24, 2018                QUINN EMANUEL URQUHART &
2                                          SULLIVAN, LLP

3

4                                          By  /s/ Claude M. Stern

5                                             Claude M. Stern (Bar No. 96737)
                                             claudestern@quinnemanuel.com
                                             Margret M. Caruso (Bar. No. 243473)
6                                            margretcaruso@quinnemanuel.com
                                             Mark Tung (Bar No. 245782)
7                                            marktung@quinnemanuel.com
                                             Michael F. LaFond (Bar No. 303131)
8                                            michaellafond@quinnemanuel.com
                                             QUINN EMANUEL URQUHART &
9                                            SULLIVAN, LLP
                                             555 Twin Dolphin Dr., 5th Fl.
10                                           Redwood Shores, California  94065
                                             Telephone:     (650) 801-5000
11                                           Facsimile:     (650) 801-5100

12                                           *Attorneys for NetEase, Inc., NetEase Information
                                             Technology Corporation, and Hong Kong
13                                           NetEase Interactive Entertainment Limited*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28