QUINN EMANUEL URQUHART & SULLIVAN, LLP
Claude M. Stern (Bar No. 96737)
  claudestern@quinnemanuel.com
Margret M. Caruso (Bar. No. 243473)
  margretcaruso@quinnemanuel.com
Mark Tung (Bar No. 245782)
  marktung@quinnemanuel.com
Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, California 94065
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

Attorneys for Defendants,
Net Ease, Inc., NetEase Information Technology Corporation, and Hong Kong NetEase Interactive Entertainment, Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PUBG Corporation and PUBG Santa Monica, Inc.<br><br>Plaintiffs,<br><br>v.<br><br>NetEase, Inc., NetEase Information Technology Corporation, and Hong Kong NetEase Interactive Entertainment, Ltd.<br><br>Defendants. | Case No. 4:18-cv-02010-JSW<br><br>**NETEASE DEFENDANTS' ADMINISTRATIVE MOTION TO STAY MOTION TO DISMISS DETERMINATION PENDING OUTCOME OF RULE 11 DISPUTE** |

## I.  INTRODUCTION

NetEase has uncovered evidence demonstrating that numerous allegations in PUBG's Second Amended Complaint ("SAC") are false, including allegations PUBG relied upon in opposing NetEase's Motion to Dismiss.  While ordinarily these false allegations might be resolved using the procedures set forth in Rule 11 of the Federal Rule of Civil Procedure, that is not sufficient here due to NetEase's pending Motion to Dismiss the SAC.  NetEase believes that its Motion to Dismiss should be fairly decided based on a Rule11-compliant complaint and opposition—not on false representations claiming licensed, off-the-shelf artwork as PUBG's original creative expression, and false proclamations that NetEase used the phrase "Winner Winner Chicken Dinner" in its *Rules of Survival* game.

Because, due to the procedural "safe harbor" of Rule 11, NetEase will be unable to file a Rule 11 motion for several weeks, and the Court may rule on the Motion to Dismiss in the interim, NetEase requests that the Court stay its determination of NetEase's Motion to Dismiss until either (i) the resolution of a Rule 11 motion,to be promptly brought by NetEase, or (ii) PUBG corrects its Rule 11 problems by, pursuant to leave of Court, filing a Third Amended Complaint and amending its Opposition to NetEase's Motion to Dismiss.[1]

## II.  BACKGROUND

After PUBG filed the Second Amended Complaint, and after briefing was complete on NetEase's Motion to Dismiss, NetEase learned that PUBG's asserted work, *Battlegrounds*, used unoriginal, publicly available art that is licensed on a non-exclusive basis from third parties—the video game equivalent of stock photos or "clip art."  By investigating the websites of video game stock asset providers, NetEase learned that PUBG repeatedly alleged as its own original, creative work unoriginal art, licensed on a non-exclusive basis from third parties.  *Compare*, *e.g.*, SAC ¶¶23, 25, 32, 33, 57, 68, 71, 76, 89, 99, 102, 107, 121 *with* LaFond ¶¶ 2, 3, 4, 6.  These third parties include the Unreal Marketplace, which describes itself as an "e-commerce platform through which content creators using UE4 connect with developers by providing a wealth of game-ready content and code."  LaFond ¶ 5, Ex. C.  The discovery of the true facts of authorship

---

[1]   NetEase's proposal for a resolution of this dispute may be found in LaFond Ex. F.

1  and ownership immediately raised concerns about PUBG's Rule 11 basis for having included
2  these non-exclusively licensed assets in its SAC and identifying them as "unique, creative …
3  visual elements," and "individual works of creative expression that each individually constitute
4  copyrightable subject matter."   SAC ¶23, *et seq*.
5      On October 18, 2018, NetEase sent a letter to PUBG's counsel raising this issue, as well as
6  PUBG's false allegation that *Rules of Survival* used the phrase "Winner Winner Chicken Dinner."
7  LaFond Ex. D.   PUBG responded on October 23, 2018, and **did not deny** the use of unoriginal
8  images in the SAC, but nonetheless asserted that amendment of the SAC was not necessary.   *See*
9  LaFond Ex. E.   While NetEase is prepared to meet and confer further, it is not clear that the
10 Parties can reach a resolution before a ruling on the Motion to Dismiss.   *See, e.g.,* LaFond Ex. F.
11 Further, as PUBG may not unilaterally amend its complaint a third time without agreement from
12 NetEase or leave of Court (*see* Fed. R. Civ. P. 15), motion practice may now be unavoidable.

### III.   NETEASE WILL BE PREJUDICED IF ITS MOTION TO DISMISS IS ADJUDICATED BEFORE THE RULE 11 DISPUTE IS RESOLVED

PUBG's Opposition to NetEase's Motion to Dismiss relies extensively on SAC paragraphs that appear to violate Rule 11, including its false allegations about "Winner Winner Chicken Dinner" (SAC ¶81), upon which it places significant rhetorical weight.   Dkt. 66 at 18–19.

PUBG's Opposition also relies on its false allegations of creative expression and ownership.   For example, PUBG cited Paragraph 102 of the SAC in its Opposition (Dkt. 66 at 18), which alleges that "Defendants copied *PUBG's expressive depictions of the grenades* [in BATTLEGROUNDS]" (emphasis added; *see also* SAC ¶71) and shows two images:

| **Alleged *Battlegrounds* Grenade (SAC ¶102)** | ***Knives Out* Grenade (SAC ¶102)** |
|---|---|
| (image of grenade) | (image of Frag Grenade UI) |

But the grenade on the left is not "PUBG's expressive depiction[]."   Rather, it—like ***all*** of the grenades alleged in the SAC—is an off-the-shelf asset available for sale to the general public—

from the Unreal Marketplace.  *Compare* LaFond Ex. A *with* SAC ¶¶71, 102:



The resemblance in these images is uncanny.  For example, the smoke grenade art sold in the Unreal Marketplace depicts the same string of numbers as PUBG's allegedly "original" grenades: 008-831.  *Id.* Ex. A.  This art was licensed by PUBG, and is not its original expression.  Yet PUBG presented it as its own, alleging "each weapon has been stylized to make it distinct from actual real life weapons."  SAC ¶32.

Similarly, in enumerating other supposedly "individual works of creative expression that each individually constitute copyrightable subject matter" (SAC ¶23), PUBG identifies "consumables, such as … first aid and medical kits" (*id.* ¶39), and alleges NetEase copied its first aid kits (*id.* ¶ 76).  But again, comparing the images of *Battlegrounds* alleged at Paragraph 107 with images sold in the Unreal Marketplace reveals that PUBG does not own those images either:

| Images from SAC ¶¶76, 107 | Unreal Marketplace (LaFond Ex. B) |
|---|---|
|  |  |

More examples are identified in NetEase's letter to PUBG, including a weapon that the marketplace provider specifically advertises as "used in Battlegrounds."  LaFond Dec. Ex. D.

NetEase provides these examples not to seek premature adjudication of a Rule 11 motion, but to illustrate the severity of the prejudice it faces if resolution of its Motion to Dismiss is not stayed.  This prejudice arises not just from the mere falsity of the allegations, but because the falsity goes to the fundamental viability of PUBG's SAC.  This is because "only copyright owners and exclusive licensees of copyright may enforce a copyright or a license."  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008).  PUBG cannot allege a copyright claim based on art it neither owns nor has an exclusive license to (as evidenced by continued availability for licensing).  *See* LaFond Exs. A, B.  Moreover, PUBG cannot evade this problem by adding new original content to licensed images, because "a derivative author may [not] own the copyright in … material the author did not create."  *See U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1016 (9th Cir. 2012).  Thus, the SAC's repeated comparisons of art PUBG does not own to NetEase's games undermine its entire copyright claim.

In situations such as these, the Court is empowered to enter a stay pending the outcome of a forthcoming Rule 11 motion.  *See, e.g.*, *Viper Networks, Inc. v. Rates Tech. Inc.*, 2009 WL 2151343, at *1 (S.D. Cal. July 17, 2009) ("RTI's *ex parte* motion to stay is GRANTED.  The action is stayed except for RTI's motions to transfer venue, for summary judgment and for Rule 11 sanctions. The stay will be lifted, if necessary, upon the filing of the Court's Order addressing RTI's motions."); *see also Bus. Guides v. Chromatic Commc'ns Enters., Inc.*, 119 F.R.D. 685, 690 (N.D. Cal. 1988) ("The court therefore stays the [dispute] and grants defendants thirty (30) days from the date of the filing of this order to file a motion for sanctions [pursuant to Rule 11].").

Such a stay is appropriate here, in light of the fundamental flaws in PUBG's copyright allegations.

## IV. PUBG's PROFFERED EXPLANATION IS INADEQUATE

When NetEase raised this issue with PUBG's counsel, PUBG responded by claiming that it is only alleging the infringement of the selection and arrangement of unprotectable elements. *See* LaFond Ex. E. This is simply not credible; the SAC clearly and unambiguously accuses NetEase of copying graphical depictions. *E.g.*, ¶71 ("The grenades in *ROS* are **depicted** similarly to the grenades in BATTLEGROUNDS. . . . On information and belief, Defendants copied PUBG's expressive depictions of the grenades identified above where other ***depictions*** could have been used."); ¶76 ("Each game has a similar assortment of such items, which are ***depicted*** similarly . . ."); ¶99 ("[B]oth ***depictions*** of this rifle share the same stock with an extended recoil pad.") (emphasis added in each). PUBG's SAC unambiguously, and repeatedly, accuses NetEase of copying the graphical depictions of artwork that PUBG does not own or have an exclusive license to, and which cannot form the basis of a copyright claim. *See also, e.g.,* SAC ¶¶23, 25, 32, 33, 57, 68, 89, 102, 107, 121. PUBG's proffered explanation is inconsistent with its own complaint; a stay of the pending Motion to Dismiss is appropriate until this issue is resolved.

## V. PUBG REFUSES TO AGREE TO A STAY

On October 29, 2018, counsel for NetEase contacted PUBG and requested a meet and confer to discuss the possibility of staying adjudication of NetEase's Motion to Dismiss pending the outcome of this dispute. LaFond Ex. F; *see also* Civil L.R. 7-11(a). PUBG's counsel represented that it objects to the filing of NetEase's "proposed stay motion and reserve all rights in that regard." LaFond Ex. F. PUBG's response did not agree to meet and confer on October 29 (the date NetEase offered) or provide any alternative dates. *Id*. Instead, PUBG demanded as a precondition of a meet and confer that NetEase provide a list of "specific amendments" to the SAC, ignoring the Rule 11 problems with its Opposition to NetEase's Motion to Dismiss. *Id*.

## VI. CONCLUSION

For the foregoing reasons, the Court should stay determination of NetEase's Motion to Dismiss (Dkt. 47) pending resolution of the Rule 11 issues raised herein.

| | | |
|---|---|---|
| 1 | DATED: October 30, 2018 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 2 | | |

By */s/ Claude M. Stern*
   Claude M. Stern
   Margret Caruso
   Mark Tung
   Michael LaFond
   *Attorneys for Defendants,*
   *NetEase, Inc., NetEase Information Technology Corporation, and Hong Kong NetEase Interactive Entertainment Limited*