# Exhibit D

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100

WRITER'S DIRECT DIAL NO.
(650) 801-5002

WRITER'S EMAIL ADDRESS
claudestern@quinnemanuel.com

October 18, 2018

Steven S. Baik
Sidley Austin LLP
1001 Page Mill Road
Building 1
Palo Alto, CA 94304
(650) 565-7016
sbaik@sidley.com

Re:   Rule 11 Violations by PUBG in *PUBG Corporation, et al v. NetEase Inc., et al*

Dear Steve,

We write to you in the hopes of avoiding costly motion practice concerning numerous allegations in PUBG's Second Amended Complaint that appear to violate Rule 11 of the Federal Rules of Civil Procedure. Please confirm to us that you will immediately seek to amend the complaint, or let us know what factual basis you and PUBG are relying on for these allegations.

This is **not** a settlement communication; Federal Rule of Evidence 408 does not apply. This letter is evidentiary, and NetEase reserves the right to file this letter with the Court in order to demonstrate the date when NetEase apprised PUBG about the issues raised herein.

**PUBG's Second Amended Complaint Alleges That PUBG Has Copyright Rights in Images It Appears Not To Own.**

PUBG's Second Amended Complaint accuses NetEase of copying numerous images that PUBG did not create, and which PUBG cannot therefore assert in a copyright infringement lawsuit. "Under copyright law, only copyright owners and exclusive licensees of copyright may enforce a copyright or a license." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008). Accordingly, PUBG may only enforce rights in those elements of *Battlegrounds* in which it either owns the copyright or holds an exclusive license. As to elements incorporated into *Battlegrounds* for which PUBG merely has a **non**-exclusive license, PUBG has no right to assert infringement. *See U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1016 (9th Cir. 2012) ("[A] derivative author may own the copyright in material the author contributed to a preexisting work, but not in infringing material or material the author did not create.").

Based on our review of publicly available information, it appears that PUBG has asserted ownership and infringement of numerous elements found in *Battlegrounds* that are not original to it, that PUBG does not own, and to which PUBG does not have a non-exclusive license. Indeed, PUBG has publicly admitted to "using store-bought stuff," as a shortcut when creating *Battlegrounds*, and PUBG's Communications Lead, Ryan Rigney, has publicly defended PUBG's decision to incorporate assets purchased from the "asset store."[1]

Based on Netease's investigation, it appears that by "asset store" PUBG was referring to a variety of online stores, including both markets such as the Unreal Marketplace[2], and independent sellers such as Iron Belly Studios[3] and ChamferZone.[4] Because any assets purchased from these sources are subject to clear usage restrictions, PUBG cannot have acquired either ownership of those assets or an exclusive license for their use.[5] For example, Unreal Marketplace assets can be purchased by *any member of the public*.

The publicly available information we have seen reflects that PUBG included these third-party developed and purchased assets in *Battlegrounds* and is now asserting those same assets as a basis for the claims in its Second Amended Complaint. For example, PUBG accuses NetEase of copying the very "UMP9 submachine gun" that ChamferZone openly advertises it created—and allowed PUBG to use:



| **Purported "Original" UMP from SAC ¶99** | **Image from ChamferZone[6]** |
|---|---|

---

[1]  *See* Grayson, N. "No, PUBG Is Not An 'Asset Flip'", *Kotaku*, June 18, 2018, available at: https://steamed.kotaku.com/no-pubg-is-not-an-asset-flip-1826935848
[2]  https://www.unrealengine.com/marketplace/store
[3]  https://ironbellystudios.com/
[4]  https://chamferzone.com/3d-shop/
[5]  *See, e.g.* https://www.unrealengine.com/en-US/marketplace-faq?active=usage (explaining the limits of the license granted by sellers in the Unreal Marketplace)
[6]  *See* https://chamferzone.com/3d-shop/

ChampferZone's offer of this asset for $26 means that PUBG cannot own an exclusive license to (much less a copyright in) that model. Accordingly, PUBG's claim that the UMP constitutes "PUBG's . . . graphical expression," (SAC ¶99) lacks a factual basis under Rule 11.

It appears that PUBG purchased other guns it relies upon in the Second Amended Complaint from Iron Belly Studios:



| Purported "*Battlegrounds*" Images from SAC ¶¶68, 99 | Images from Iron Belly Studios[7] |
|---|---|
| "M416" Assault Rifle in BATTLEGROUNDS | |
| Micro Uzi submachine gun in BATTLEGROUNDS | |

The resemblance between PUBG's firearms and those sold by Iron Belly Studios is too uncanny to be a coincidence. Every detail of these firearms is identical: the slit in the assault rifle stock, the ridges along the gun barrels, the white lettering and switch above the rifle trigger, the unique hexagonal trigger guard on the Uzi, etc. PUBG has no legal right to assert these non-exclusively licensed assets against NetEase, and no factual basis to allege they are original creative works owned by PUBG.

Lest there be any confusion: time stamps on the ChamferZone and Iron Belly Studios websites, as well as the portfolios for those companies hosted on Sketchfab and at the Unreal Marketplace, reveal that each of these models dates to *2016*—well before PUBG's game was ever released to the public.  *E.g.*  https://sketchfab.com/models/41ac96e3ac9f4e69bc17e99f7a0b75ef  (listing publication date two years prior to September 2018).

PUBG's Rule 11 violations extend beyond the firearms relied upon in the Second Amended Complaint. It appears PUBG also purchased consumables that it has asserted against NetEase

---

[7]   *See* https://ironbellystudios.com/shop/?swoof=1&product_cat=unreal; *see also* https://sketchfab.com/models/41ac96e3ac9f4e69bc17e99f7a0b75ef.

3

from a third party:

| Purported "*Battlegrounds*" Image from SAC ¶76 | Images from Unreal Marketplace[8] |
|---|---|
|  | |

As with the firearms, these images date to *2016*, which eliminates the possibility that the marketplace assets were copied from PUBG. Accordingly, PUBG has no factual basis to assert: "Bandages, first aid kits and medical kits . . . are unique to BATTLEGROUNDS and are copyrightable visual and/or audio-visual works[.]". SAC ¶39.

It also appears that all three grenades identified in the Second Amended Complaint were purchased by PUBG from the Unreal Marketplace, and are not original:

| Purported "*Battlegrounds*" Image from SAC ¶71 | Images from Unreal Marketplace[9] |
|---|---|
|  | |

---

[8]   *See* https://www.unrealengine.com/marketplace/first-aid-set
[9]   *See* https://www.unrealengine.com/marketplace/classic-us-grenades

4

| **Purported "*Battlegrounds*" Image from SAC ¶71** | **Images from Unreal Marketplace[9]** |
|---|---|
| | |
| | |

These images were uploaded to the Unreal Marketplace in March of 2016—fully a year before *Battlegrounds* was released to the public—and again, the similarities to the images in the Second Amended Complaint are uncanny. For example, the bottom of the smoke grenades display the ***exact*** same string of numbers as the grenades in the asset store: 008-831. Having purchased these assets, PUBG cannot truthfully claim that these grenades were its original creation; nor can PUBG claim that it owns any copyrights in these grenades. Nonetheless, PUBG makes that assertion at several points in the Second Amended Complaint. *E.g.* SAC ¶¶32, 71 (referring to "PUBG's expressive depictions of the grenades"), 102 (same); *see also* SAC ¶118 ("repeat[ing] and realleg[ing] each and every allegation contained in paragraphs 1 through 117" in PUBG's copyright claim).

NetEase's investigation is ongoing, and further examples may also be found. But these examples are sufficient to establish that PUBG's allegations concerning the originality and ownership of the elements identified in the Second Amended Complaint either were not reasonably investigated or were made with knowledge of their falsity.

**PUBG's Generalizations About "Other Games" Are Unsubstantiated And Violate Rule 11.**

The Second Amended Complaint is also replete with factual contentions of unique, creative authorship by PUBG which are false. PUBG makes sweeping and unsubstantiated allegations regarding the purported uniqueness of *Battlegrounds*' when compared to other video and computer games without justification. To take a few examples, PUBG falsely asserts that *Battlegrounds* encompasses PUBG's unique expression because: "It provides the player with a dynamic and

5

interactive game-starting and location-selecting experience, *in contrast to conventional shooter games* in which characters spawn in pre-determined or random locations" (SAC ¶27, emphasis added); "*Unlike other computer games*, there is no music during gameplay" (SAC ¶45, emphasis added); "Whereas other video games *use only traditional military uniforms*, the availability of everyday clothing as well as military gear in both Battlegrounds and ROS furthers each game's conceit" (SAC ¶74, emphasis added); "The use of cookware as a melee weapon is *highly uncommon* in shooter type games" (SAC ¶101, emphasis added).  But these broad conclusory statements have no evidentiary support (and are demonstrably false), as PUBG would know if it had made any reasonable investigation into the vast range of games with which it seeks to draw a comparison.

**"Winner Winner Chicken Dinner" Does Not Appear in *Rules of Survival*.**

At Paragraph 81 of its Second Amended Complaint, PUBG alleges "[o]n information and belief, when a player emerges victorious at the end of [*Rules of Survival*], his or her screen displays 'WINNER WINNER CHICKEN DINNER.'"  However, this phrase does not appear in any version of *Rules of Survival* when a player wins the game.  The falsity of this allegation is particularly disturbing in light of PUBG's numerous other allegations concerning this phrase.  *See* SAC ¶82 ("Further, the *ROS* Facebook page uses imagery and advertisements that *evoke* the 'Winner Winner Chicken Dinner' messaging used in BATTLEGROUNDS").

\*   \*   \*

As stated above, it is our hope that NetEase will not be required to bring a Rule 11 motion to resolve this matter, and that PUBG will promptly and completely investigate all of its allegations and take all necessary steps to correct the falsehoods in the Second Amended Complaint—which may necessitate dismissing the lawsuit altogether, if PUBG's substantive allegations are all as unfounded as those identified here.

If we do not receive a response by **Wednesday, October 24, 2018**, we will prepare and serve a motion consistent with the procedures set forth in Rule 11.

Very truly yours,

Claude M. Stern

Claude Stern