| | |
|---|---|
| Steven S. Baik (SBN 184622)<br>sbaik@sidley.com<br>Jinyung Lee (Bar No. 307222)<br>jinyung.lee@sidley.com<br>Ryuk Park (SBN 298744)<br>ryuk.park@sidley.com<br>SIDLEY AUSTIN LLP<br>1001 Page Mill Road<br>Building 1<br>Palo Alto, CA 94304<br>Telephone: (650) 565 7074<br>Facsimile: (650) 565 7100<br><br>Rollin A. Ransom (SBN 196126)<br>rransom@sidley.com<br>SIDLEY AUSTIN LLP<br>555 West Fifth Street<br>Los Angeles, CA 90013<br>Telephone: (213) 896 6047<br>Facsimile: (213) 896 6600 | Ketan V. Patel (*pro hac vice*)<br>ketan.patel@sidley.com<br>SIDLEY AUSTIN LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>Telephone: (212) 839 5300<br>Facsimile: (212) 839 5599<br><br>Amanda R. Farfel (Bar No. 288126)<br>afarfel@sidley.com<br>1999 Avenue of the Stars, 17th Floor<br>Los Angeles, CA 90067<br>Telephone: (310) 595-9661<br>Facsimile: (310) 595-9501 |

*Attorneys for Plaintiffs PUBG Corporation and PUBG Santa Monica, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PUBG Corporation and<br>PUBG Santa Monica, Inc.,<br><br>   Plaintiffs,<br><br>  vs.<br><br>NetEase, Inc., NetEase Information Technology Corporation and Hong Kong NetEase Interactive Entertainment Limited,<br><br>   Defendants. | Case No. 4:18-cv-02010-JSW<br><br>**PLAINTIFFS PUBG CORPORATION AND PUBG SANTA MONICA, INC.'S OPPOSITION TO DEFENDANTS' ADMINISTRATIVE MOTION TO STAY MOTION TO DISMISS DETERMINATION PENDING OUTCOME OF RULE 11 DISPUTE** |

**I.     INTRODUCTION**

Defendants' Administrative Motion to Stay ("Motion") boldly claims that a stay is necessary here because PUBG's Opposition to NetEase's Motion to Dismiss ("MTD Opp.") relies on "false allegations" made in PUBG's Second Amended Complaint ("SAC"). ECF No. 78 at 1 (Oct. 31, 2018). These "false allegations" relate to whether PUBG purposefully claimed and continues to assert copyright infringement of individual graphical depictions of certain elements obtained from third party sources. Defendants' Motion is baseless in all respects.

The SAC, a 157-page document, lays out NetEase's infringement of PUBG's copyrighted work. ECF No. 32 (May 24, 2018). In doing so, the SAC moves from the panaromic (similar islands, parachuting onto the island, etc.) to the minute details of copying (copying of attributes, such as hit point protection of armor), while also expressly referencing the selection and combination of multiple elements in the parties' respective works. For example, the SAC points out the similar selection and combination of weapons, armor, consumables, scenery, and buildings, *i.e.*, the building blocks that make up the whole. The SAC does not, however, allege infringement of solely the individual graphical depiction of an individual weapon, piece of armor, or consumable that may have been obtained from a third party; in all such instances, the SAC's claims are based on the broader work of authorship reflected in the selection and combination of items, functions, and attributes, and not any particular image standing alone. The SAC is therefore properly pled.

In any event, the Motion fails to identify specific instances of PUBG's purported "reliance" on "false allegations." Indeed, Defendants identify only two passages from PUBG's MTD Opp. that make only a passing reference to the purportedly objectionable allegations. ECF No. 78 at 2 (citing ECF No. 66 at 18-19). As a result, even if Defendants are correct that the SAC contains allegations in violation of Rule 11—it does not—the cited passages do not support a stay of the Court's decision on the motion to dismiss, in light of the ample independent bases for denying that motion.

Regardless, to cure any confusion caused by Defendants' incorrect reading of the SAC, PUBG notified Defendants that it is not asserting a claim of infringement based solely upon the graphical depiction of elements purchased from third parties, in the absence of an exclusive license, and further offered to amend the SAC accordingly. Although the parties met and conferred on

1

November 5, 2018, Defendants' counsel refused to accept PUBG's proposed amendments and have continued to threaten sanctions premised on their baseless allegations.

## II.     DEFENDANTS FAIL TO MEET THE STANDARD FOR A STAY

When considering a motion to stay, courts generally "consider[] the following factors: (1) judicial economy; (2) the moving party's hardship; and (3) potential prejudice to the non-moving party." *Native Songbird Care & Conservation v. Fox*x, Case No. 13-cv-02265-JST, 2013 WL 5609320, at *3 (N.D. Cal. Oct. 11, 2013) (quoting *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1057 (S.D. Cal. 2007). Defendants ignore these factors and fail to articulate any prejudice or how it relates to the MTD. Instead, they simply allege that PUBG's MTD Opp. "relies extensively on SAC paragraphs that appear to violate Rule 11." ECF No. 78 at 2. It does not.

Defendants cite to only two passages in PUBG's MTD Opp. *Id*. First, Defendants assert that the Opp. relies on "false allegations about [Defendants' use of the phrase] 'Winner Winner Chicken Dinner' (SAC ¶ 81)."[1] *Id*. (citing ECF No. 66 at 18-19). The cited passage states that use of the phrase is relevant to infringement, as Defendants' "chicken" invocation is evidence that Defendants were copying BATTLEGROUNDS—a claim that is supported by numerous other allegations that Defendants do ***not*** dispute, including other language in SAC ¶ 81. *See* ECF No. 66 at 18 (copying of short phrases "is relevant to the infringement analysis, as it clearly reflects that Defendants were *copying BATTLEGROUNDS.*")*;* SAC ¶¶ 70-71 ("Defendants' decision to include a rubber chicken as a melee weapon in *ROS*" aims to "evok[e] the iconic 'Winner Winner Chicken Dinner' emblem of *BATTLEGROUNDS*"); 81 ("[I]n *ROS*, the final screen of the game for all players displays the bust of a chicken."); 82 (identifying advertisements with chicken imagery); 113 (identifying advertisements evoking the phrase "chicken dinner"). Regardless, NetEase fails to identify any prejudice to it if the Court rules on the MTD with or without the phrase included in the SAC.

---

[1] The screen shot depicting the phrase "Winner Winner Chicken Dinner" in SAC ¶ 81, to which Defendants object, was taken from a public source that PUBG believed to be authentic, and PUBG therefore made the allegation on information and belief. SAC ¶ 81. PUBG has offered to delete the reference from the SAC based upon NetEase's representation in its Motion that no versions of Defendants' games use the exact phrase. Motion at 1 ("false proclamation" of use of phrase); Decl. of Ketan V. Patel ("Patel Decl.") Ex. C at ¶ 81 (Proposed Amendments to SAC); *see also* Ex. A at 2 (prior offer to delete upon declaration). Defendants have thus far ignored PUBG's offer and did not raise this issue at the November 5, 2018 meet and confer. Patel Decl. ¶ 5.

2

PLAINTIFFS PUBG CORPORATION AND PUBG SANTA MONICA, INC.'S OPPOSITION TO DEFENDANTS' ADMINISTRATIVE MOTION TO STAY, CASE NO. 4:18-cv-02010 JSW

In the only other specific reference to PUBG's Opp., Defendants claim "PUBG cited Paragraph 102 of the SAC in its Opposition." ECF No. 78 at 2. The cited passage merely states that the MTD "ignore[s] the SAC's allegations that identify unique, creative choices that PUBG made respecting [weapons/vehicles/consumables/clothing/equipment/configuration], which Defendants then flagrantly copied." ECF No. 66 at 17-18 (citing SAC ¶¶ 67-71, 98-102). That statement is accurate. Regardless, Defendants do not explain why inclusion of this one particular paragraph in a string cite supports a stay, when PUBG's opposition is based upon many copyrightable elements.

As to the *relevant* factors when considering a motion to stay, each weighs against a stay here. First, judicial economy will not be served by a stay. Defendants' MTD is a case-dispositive motion. ECF No. 47 at 15 (Defendants requesting that "PUBG's complaint [] be dismissed in its entirety."). If the Court grants the MTD, it will eliminate the need to further litigate this case (and if the Court properly denies Defendants' MTD, NetEase may still proceed on its threatened Rule 11 motion).[2]

On the other hand, PUBG will suffer significant prejudice if a stay is granted. This litigation has already been delayed for a variety of reasons. *See*, *e.g.*, ECF No. 44 (to accommodate defense counsel's vacation schedule); ECF No. 55 (briefing and hearing schedule for Defendants' MTD). And further delay would cause further prejudice. Because of the pendency of Defendants' motion to dismiss, Defendants have not yet answered the complaint or asserted defenses, making it impossible for PUBG to assess or pursue the full range of required discovery. Accordingly, even if Defendants' accusations are accepted as true, Defendants' Motion to Stay should be denied.

### III. DEFENDANTS MISCHARACTERIZE THE SAC

NetEase has gone to great lengths to mischaracterize the allegations in the SAC. *See* ECF No. 78 at 2-5. However, the clear language of the SAC shows that Defendants' arguments are not

---

[2] The cases Defendants cite are distinguishable. ECF No. 78 at 4. In each case, the stay *allowed* the court to dispose of the entire case based on the determination of a single issue. *Viper Networks, Inc. v. Rates Tech. Inc.*, Civil No. 09cv768 L(RBB), 2009 WL 2151343, at *1 (S.D. Cal. July 17, 2009) (staying all but a motion to transfer venue, a motion for summary judgment that was "dispositive of the entire case, *i.e.*, whether [plaintiff] has the legal capacity to sue" in that jurisdiction, and a motion for sanctions based on the jurisdictional issue); *Bus. Guides v. Chromatic Commc'ns Enters., Inc.*, 119 F.R.D. 685, 690-91 (N.D. Cal. 1988) (issuing a stay to permit defendants to file a motion for sanctions having *already decided* to adopt magistrate's report recommending the imposition of sanctions).

3
PLAINTIFFS PUBG CORPORATION AND PUBG SANTA MONICA, INC.'S OPPOSITION TO
DEFENDANTS' ADMINISTRATIVE MOTION TO STAY, CASE NO. 4:18-CV-02010 JSW

based in fact. The SAC does *not* claim that PUBG has a free-standing copyright interest in the graphical depiction of each and every element in the SAC. Instead, the SAC states that although BATTLEGROUNDS contains "numerous individual works of creative expression that each individually constitute copyrightable subject matter . . . the selection and arrangement of individual audio and visual elements in BATTLEGROUNDS constitutes copyrightable subject matter." SAC ¶ 23; *id.* ¶ 25 ("The copyrightable audiovisual aspects of [BATTLEGROUNDS] include individual and collective creative and artistic expressions within the game, including but not limited to the *following audio/visual/gameplay arrangement and look and feel*.") (emphasis added). As part of its enumeration of the copyrightable "audio/visual/gameplay arrangement," the SAC identifies aspects of *ROS* and *KO* that have a strikingly similar selection and combination of collections of weapons, consumables, and other items.³ *Id.* ¶¶ 26-50, 58-81, 90-111.

Defendants focus on the language of SAC paragraphs 71 and 102 that "Defendants' copied PUBG's *expressive depictions of the grenades* [in BATTLEGROUNDS]" to claim that the copying allegations in the SAC are limited solely to the visual appearance of each grenade. ECF No. 78 at 2-3 (emphasis in original). But the SAC repeatedly uses the term "expressive depictions" to include audio, visual, audio-visual and operational aspects of the elements at issue. *See*, *e.g.*, SAC ¶¶ 61 and 92 ("the *expressive depiction* of a pre-play area in BATTLEGROUNDS . . . encourages players to interact with [one] another, use weapons, and explore gameplay mechanics"); *see also* ¶¶ 76, 78, 107, 109. Indeed, in language ignored by Defendants, paragraph 71 specifically alleges that the grenades in *Rules of Survival* are "depicted similarly, operate similarly, and upon information and belief inflict the same level of damage" as those in BATTLEGROUNDS. *Id.* ¶ 71. Defendants also assert that PUBG claims copying based solely on the graphical depiction of certain consumables, ECF No. 78 at 3 & 5, but the actual language of the SAC again does not support their claims, as it

---

³ The SAC specifically alleges that the weapons, ammunition, grenades and items in BATTLEGROUNDS contain various actions, sounds, stylizations, and characteristics (such as damage, recoil, reload time, magazine size, range and blast radius). *Id.* ¶ 32. "All [of] these unique expressions of BATTLEGROUNDS weapons, weapon modifications, and ammunition are individually and/*or in combination with each other or with other elements of BATTLEGROUNDS* protectable copyrightable audio, visual and/or audio-visual works." *Id.* ¶ 33 (emphasis added).

identifies the range of elements and attributes that PUBG selected and which Defendants copied.[4]

In sum, any reasonable reading of the SAC shows that PUBG's claims are based on the totality of the expressive depiction of these elements—visually, auditorily, audio-visually and operationally—as well as their selection and combination.[5] *See Spry Fox LLC v. LOLApps Inc.*, No. 2:12-cv-00147-RAJ, 2012 WL 5290158, at *5 (W.D. Wash. Sept. 18, 2012).  Although Defendants' Motion ignores the existence of these allegations, the parties each previously acknowledged PUBG's "selection and arrangement" claims in the MTD briefing.  *See* ECF No. 47 at 10 (disputing selection and arrangement); ECF No. 66 at 19 ("Even if the individual elements are unprotectable, PUBG's selection, arrangement, and combination of those elements qualifies for copyright protection.").

### IV. DEFENDANTS HAVE REFUSED PUBG'S PROPOSED AMENDMENTS

PUBG offered to clarify any misunderstanding by confirming that "it is not asserting and will not seek to assert any claim of copyright infringement based upon an element purchased from a third party (without an exclusive), without significant modifications made by PUBG, based solely upon that element."  Patel Decl. Ex. A at 2.  PUBG also offered to file an amended complaint that clarifies any confusion Defendants may claim to have respecting the scope of PUBG's claim and, with the Court's leave, is willing to file now.  Patel Decl. Exs. B & C.  Nevertheless, Defendants continue to assert and pursue baseless sanctions claims, as they have throughout this litigation.

The rationale for the mandatory twenty-one day delay between service of a Rule 11 motion and its filing is to permit the parties to resolve the dispute without court intervention.  *See* Fed. R. Civ. P. 11.  Defendants have circumvented this requirement through their meritless motion to stay.  The fact that they persist notwithstanding PUBG's proposals that fully address their putative Rule 11 motion is powerful evidence of Defendants' improper motive.  Their Motion should be denied.

---

[4] *See, e.g.,* SAC ¶¶ 39 (Boosting - "[t]he expressions of the consumables' abilities to increase the health of a player, as well as increasing the player's boost level"); 76 ("Each game has a similar assortment of [consumables], which are depicted similarly, operate similarly, and, on information and belief, possess the same or similar statistics.").

[5] *See, e.g.,* SAC ¶¶ 23 ("[T]he selection and arrangement of individual audio and visual elements in BATTLEGROUNDS constitutes copyrightable subject matter."); 67 and 98 ("[T]he assortment of weapons and weapon types available in [each game] are substantially similar to those in BATTLEGROUNDS"); 69 and 100 ("[B]oth games offer similar assortments of magazines[,] stocks [and] scopes"); 76 and 107 ("Each game has a similar assortment of [consumables]").

| | |
|---|---|
| Dated: November 5, 2018 | By: */s/ Steve S. Baik* |

| | |
|---|---|
| Ketan V. Patel (*pro hac vice*)<br>ketan.patel@sidley.com<br>SIDLEY AUSTIN LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>Telephone: +1 212 839 5300<br>Facsimile: +1 650 839 5599<br><br>Amanda R. Farfel (SBN 288126)<br>afarfel@sidley.com<br>SIDLEY AUSTIN LLP<br>1999 Avenue of the Stars, 17th Floor<br>Los Angeles, CA 90067<br>Telephone: +1 310 595 9661<br>Facsimile: +1 310 595 9501 | Steven S. Baik (SBN 184622)<br>sbaik@sidley.com<br>Ryuk Park (SBN 298744)<br>ryuk.park@sidley.com<br>SIDLEY AUSTIN LLP<br>1001 Page Mill Road, Building 1<br>Palo Alto, CA 94304<br>Telephone: +1 650 565 7074<br>Facsimile: +1 650 565 7100<br><br>Rollin A. Ransom (SBN 196126)<br>rransom@sidley.com<br>SIDLEY AUSTIN LLP<br>555 West Fifth Street<br>Los Angeles, CA 90013<br>Telephone: +1 213 896 6047<br>Facsimile: +1 213 896 6600<br><br>*Attorneys for Plaintiffs PUBG Corporation and PUBG Santa Monica, Inc.* |